## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Christina Donahue, as Administratrix of the Estate of Angel McIntyre, deceased, Matthew Munafo, and Kristyanna Dellavecchia, | : : : : | JURY TRIAL DEMANDED |
| Plaintiffs, | : : | Civil Action No.: |
| v. | : : | |
| Borough of Collingdale, Borough of Darby, Borough of Collingdale Police Officer Colin Richers, individually and as a Police Officer for the Collingdale Police Department, Borough of Darby Police Officer Dante Lynch, individually and as a police officer for the Darby Police Department, Borough of Darby Police Officer Jake Lyons, individually and as a police officer for the Darby Police Department, and John Does 1-10, individually and as police officers for the Collingdale and Darby Boroughs Police Departments, | : : : : : : : : : : : : | |
| Defendants. | : | |

## COMPLAINT

Plaintiffs Christina Donahue ("Donahue"), as administratrix of the Estate of Angel McIntyre ("Angel"), deceased, Matthew Munafo ("Matthew"), and Kristyanna Dellavecchia ("Kristyanna," and collectively with Donahue and Matthew, each a "Plaintiff" and collectively the "Plaintiffs"), by and through their attorneys, Grant & Eisenhofer, P.A., assert the following complaint against Defendants Borough of Collingdale, Borough of Darby (together with Borough of Collingdale, the "Municipal Defendants"), Borough of Collingdale Police Officer Colin Richers, individually and as a police officer for the Collingdale Police Department ("Officer Richers"), Borough of Darby Police Officer Dante Lynch, individually and as a police officer for the Darby Police Department ("Officer Lynch"), Borough of Darby Police Officer Jake Lyons,

individually and as a police officer for the Darby Police Department ("Officer Lyons"), and John Does 1-10, individually and as police officers for the Darby Police Department, (Officer Richers, Officer Lynch, Officer Lyons and John Does 1-10 are collectively referred to as the "Police Officer Defendants"), and in support thereof, aver as follows:

## PARTIES

1.      Plaintiff Christina Donahue, as Administratrix of the Estate of Angel McIntyre, is and was at all material times a resident of Brookhaven, Pennsylvania.

2.      Plaintiff Matthew Munafo is and was at all material times a resident of Havertown, Pennsylvania.

3.      Plaintiff Kristyanna Dellavecchia is and was at all material times a resident of Brookhaven, Pennsylvania.

4.      Defendant Borough of Collingdale is a Municipality of the Commonwealth of Pennsylvania and a governmental authority that owns, operates, manages, directs, and controls the Collingdale Police Department, which employed police officers, including the Police Officer Defendants, and works closely with the police departments of neighboring municipalities, including Defendant Borough of Darby.

5.      Defendant Borough of Darby is a Municipality of the Commonwealth of Pennsylvania and a governmental authority that owns, operates, manages, directs, and controls the Darby Police Department, which employed police officers, including the Police Officer Defendants, and works closely with the police departments police departments of neighboring municipalities, including Defendant Borough of Collingdale.

6.      Defendant Police Officer Colin Richers was at all times relevant to this action an officer of the Collingdale Borough Police Department.  He is being sued both in his individual capacity and as a police officer for the Borough of Collingdale.

2

7. Defendant Police Officer Dante Lynch was at all times relevant to this action an officer of the Darby Borough Police Department. He is being sued both in his individual capacity and as a police officer for the Borough of Darby.

8. Defendant Police Officer Jake Lyons was at all times relevant to this action an officer of the Darby Borough Police Department. He is being sued both in his individual capacity and as a police officer for the Borough of Darby.

9. Defendants John Doe 1-10 were at all times relevant to this action officers of the Collingdale and Darby Borough Police Departments. They are being sued in both their individual capacities and as police officers for the Boroughs of Collingdale and Darby.

## JURISDICTION AND VENUE

10. This action is brought pursuant to 42 U.S.C. § 1983. Jurisdiction is based upon 28 U.S.C. §§ 1331 and 1343. Plaintiff further invokes the supplemental jurisdiction under 28 U.S.C. § 1367(a) to hear and decide claims under state law.

11. Venue is proper in this district under 28 U.S.C. § 1391(b) because the events giving rise to the claims asserted in this Complaint occurred in this judicial district.

## FACTUAL ALLEGATIONS

**AN EVENING WITH FRIENDS TURNS FATAL WHEN IT IS INTERRUPTED BY THE POLICE OFFICER DEFENDANTS' UNLAWFUL HIGH-SPEED PURSUIT**

12. On the evening of July 15, 2020, and entering into the early morning hours of July 16, 2020, Angel (age 18) and her sister Kristyanna (age 22), decided to go to Hog Island, a historic riverside area adjacent to the Philadelphia International Airport, with their friends Matthew (age 20) and Christopher Campetti ("Christopher," age 19). The group planned to spend a fun evening at Hog Island together listening to music, skipping rocks on the water, and taking some photographs of the night sky and airplanes.

13.     Angel, Matthew, Kristyanna, and Christopher drove to Hog Island that evening using two vehicles, a Honda driven by Matthew and another vehicle driven by Christopher. Angel rode in Christopher's vehicle, while Kristyanna rode in Matthew's vehicle.

14.     At approximately 12:40 a.m. on July 16, 2020, after enjoying the riverside at Hog Island, Angel, Matthew, Kristyanna, and Christopher decided to change locations and drive to a nearby Wawa convenience store to use the restrooms.

15.     Upon departing the Wawa, the group determined that Matthew and Christopher, each driving separate vehicles, would drive Kristyanna and Angel back to Kristyanna's residence, located at 953 Kingsman Road, Upper Chichester, Pennsylvania 19061, where Angel planned to spend the night.  At the relevant time, Angel lived with her mother at 2607 Edgmont Avenue, Brookhaven, Pennsylvania 19015.

16.     Angel therefore entered Matthew's vehicle (with Matthew as the driver and Angel as his front seat passenger), and Kristyanna entered Christopher's vehicle (with Christopher as the driver and Kristyanna as his front seat passenger).  Matthew and Angel drove off first in Matthew's vehicle, with Kristyanna and Christopher following Matthew's vehicle in Christopher's vehicle.

17.     Within ten minutes of the group's departure, they would be involved in a fatal collision that was the direct result of a needless, high-speed police pursuit improperly conducted by the Police Officer Defendants for the purpose of apprehending an individual who was suspected of traffic offenses.

18.     The Police Officer Defendants' improper and negligent high-speed pursuit of the traffic offense suspect directly caused the fatal collision between Matthew's vehicle and the vehicle of the traffic offense suspect.  As explained fully herein, the Police Officer Defendants' improper conduct thereby directly caused Angel's death at the scene of the accident, Matthew's

4

severe and life-altering injuries from the collision, and Kristyanna's severe emotional distress and trauma with resultant physical manifestations, as she was a first-hand witness of the collision and thus her sister's untimely and tragic death.

19.     Angel's final text message to Kristyanna, received approximately one minute before the collision, simply read "love you."

## THE POLICE OFFICERS DEFENDANTS UNLAWFULLY PURSUE ANTHONY JONES AT EXCESSIVE SPEEDS OVER SUSPECTED TRAFFIC OFFENSES

20.     On July 16, 2020, at approximately 12:45 a.m., Officer Richers was on duty as a uniformed patrol officer in the area of MacDade Boulevard and Chester Pike in Collingdale, Pennsylvania.

21.     Officer Richers was operating Collingdale Police Vehicle No. 7 when he allegedly observed a 2002 Ford Escape (the "Escape") sports utility vehicle (Pennsylvania License No. KJK-4056) with a broken left brake light.

22.     Officer Richers also allegedly observed a black male driver in the Escape, later identified as Anthony Howard Jones ("Jones"), and witnessed Jones turn the Escape left at the red light at MacDade Boulevard and Chester Pike.

23.     Also travelling inside the Escape with Jones were Lamaira Faust ("Faust"), Anaijah Solomon ("Solomon"), and Faust's three young children, all of whom were minors at the relevant time.

24.     One of the children travelling in the Escape—an infant—was seated on Faust's lap in the front passenger seat of the Escape. The other two children, ages three (3) and five (5), were seated in the rear passenger seats of the Escape with Solomon, though only one of these two minor children was seated in a child safety seat.

25.    Upon witnessing Jones turn left at the red light, Officer Richers activated his emergency lights to initiate a traffic stop.

26.    In response, Jones slowed down the speed of the Escape, but continued to drive a short distance, crossing into the adjacent Borough of Darby, and ultimately pulled into the parking lot of a McDonald's restaurant located at 101 S. MacDade Boulevard, Darby, Pennsylvania 19023.

27.    Officer Richers' vehicle proceeded to follow the Escape into the McDonald's parking lot.  Office Richers then exited his police vehicle and began to approach the front driver side window of the Escape.

28.    Upon information and belief, as Officer Richers approached the front driver side window of the Escape, he observed the two minor children seated in the back seats of the Escape and the infant seated in Faust's lap in the front passenger seat of the Escape.

29.    Officer Richers then ordered Jones to turn off the Escape's engine and exit the vehicle.

30.    In response to these commands, Jones yelled to Officer Richers, "I got my kids in the car," and began driving the Escape forward in the McDonald's parking lot.

31.    As Jones began to drive the Escape forward, Officer Lyons and Officer Lynch entered the McDonald's parking lot in clearly marked police vehicles to assist Officer Richers with the traffic stop.

32.    As the Escape was exiting the McDonald's parking lot, the vehicle made contact with the front end of Officer Lyons' police vehicle, at a low rate of speed, before continuing on to the westbound side of MacDade Boulevard.

33.     Upon information and belief, as the Escape contacted the front end of Officer Lyons' police vehicle, Officer Lyons observed the vehicle's occupants, including the infant seated in Faust's lap and the children in the rear seats.

34.     Officer Lynch, seeing the Escape travel onto MacDade Boulevard, immediately drove behind the vehicle; the lights and sirens of Officer Lynch's vehicle were active.

35.     The Escape, which was now traveling west on MacDade Boulevard, began to accelerate and travel at a high rate of speed.

36.     Thereafter, Officers Richers' and Lyons' respective vehicles followed Officer Lynch's vehicle in the pursuit of the Escape.  All three police vehicles were traveling at a high rate of speed on MacDade Boulevard.

37.     Also thereafter, and upon information and belief, John Does 1-10 joined in the pursuit, supervised the pursuit, and/or otherwise assisted in the pursuit of the Escape that was already ongoing.

38.     Upon information and belief, at this point in the ongoing pursuit, Officers Richers, Lynch, and/or Lyons advised the Police Officer Defendants (including John Does 1-10) that were also participating in, assisting, and/or supervising the pursuit, that there were passengers travelling in the Escape, including the two young children seated in the rear seats of the Escape, and the infant seated on Faust's lap in the front passenger seat of the vehicle.

39.     Also upon information and belief, the Police Officer Defendants knew or reasonably should have known that the infant seated on Faust's lap and one of the young children seated in a rear passenger seat were not seated or properly restrained in required child/infant safety seats.

40.     Jones was not the owner of the Escape, nor was the car registered to his name. Instead, the Escape was owned and registered to an individual named Tammy Harmon. Consequently, upon information and belief, throughout the duration of the improper high-speed police pursuit continuing until Jones' arrest after the collision, the Police Officer Defendants were unaware of Jones' identity.  Thus, upon information and belief, the only knowledge that the Police Officer Defendants had at the time of the improper high-speed police pursuit was that the driver of the Escape, whose identity was not known, had committed traffic offenses.

41.     As the pursuit continued, Jones drove the Escape approximately one mile at an increasingly high rate of speed, exceeding 80 miles per hour, and ran a red light at the intersection of MacDade Boulevard and Felton Avenue, Darby, Pennsylvania 19023.

42.     At this point in the pursuit, the Police Officer Defendants knew or should have known that their intentional high-speed pursuit of Jones was likely to injure innocent bystanders, including the children and infant present in the Escape, as well as any bystanders and/or other individuals in vehicles traveling on MacDade Boulevard or the intersecting roads.

43.     Indeed, during the course of the high-speed pursuit the Police Officer Defendants knew or should have known that they were presently subjecting the children in the vehicle to mental and physical trauma, and thus intended to cause said trauma by continuing their pursuit of Jones for traffic violations.

44.     Rather than terminate the pursuit, in conscious disregard of a great risk of harm during the course of the pursuit and contrary to the vehicle pursuit policies that were or should have been promulgated by their respective police departments, the Police Office Defendants continued to pursue Jones at the high rate of speed down MacDade Boulevard, in a mixed-use residential and commercial area with a speed limit of 25 miles per hour.

45. The Police Office Defendants also failed to keep their patrol vehicles at an appropriate and safe distance from the Escape, which increased both Jones' desire to flee and the risk of a catastrophic collision between the Escape and any other nearby vehicles and/or persons.

46. The pursuit continued at a high rate of speed for another mile before ending abruptly when Jones ran a red light at the intersection of MacDade Boulevard and West Oak Lane in Glenolden, Pennsylvania 19036.

47. In this intersection, at approximately 12:58 a.m., the Escape struck the front passenger side of a northbound Honda driven by Matthew and occupied by Angel (the "Collision").

48. The speed and force of the Collision crushed the front passenger side of the Honda into Angel's body, and caused Matthew to be ejected 50 feet from the vehicle onto the pavement.

49. A Forensic Science Unit Crash Reconstruction Report by the Delaware County Criminal Investigation Division concluded that at the time of the Collision the Escape was traveling between 84 and 94 miles per hour at the moment of impact.

50. Upon information and belief, the Police Officer Defendants were traveling at the same high-rate of speed as Jones, as their patrol cars kept pace with the Escape and/or closed in on the Escape during the pursuit.

51. Angel was ultimately pronounced dead at the scene of the Collision while still seated in the front passenger seat of the Honda.

52. Shortly after the Collision, Matthew was transported to Chester Crozer Hospital in grave condition.

53. Matthew's injuries included a septum pellucidum hemorrhage, left skull base fracture, left sphenoid sinus fracture, right temporal bone fracture extending into

9

temporomandibular joint, right clavicle fracture, right hemothorax, bilateral pulmonary contusions, a diffuse axonal injury of the brain, and abrasions and scarring all over his body.

54.     His acute care was complicated by ventilator dependent respiratory failure, fevers, leukocytosis, methicillin-susceptible Staphylococcus aureus ("MSSA") aspiration pneumonia, and agitation.

55.     The traumatic brain injury Matthew sustained as a result of the Collision resulted in a cognitive deficit, which impacts every aspect of his everyday life and, in particular, caused him to delay and alter his plans for future education.

56.     Matthew suffered and continues to suffer from severe personal injuries, and has been and continues to be forced to expend significant sums of money in an effort to treat his severe injuries that occurred as a result of the Collision.

57.     As a result of Matthew's aforesaid injuries that were directly caused by the Collision, Matthew has suffered and continues suffer great pain and mental anguish, and has and continues to be hindered from attending his normal and usual daily duties, functions, and occupations, all to his great detriment and loss.

58.     Kristyanna and Christopher's vehicle was directly behind Matthew's Honda, and was about to enter the intersection when the Collision took place.

59.     Thus, Kristyanna, who had just witnessed the Collision that had killed her sister, Angel, and who also was in very close proximity to the Collision, reasonably feared that she would be harmed in the Collision.

60.     Kristyanna, witnessing the Collision, exited Christopher's vehicle as soon as possible and ran to her sister Angel's side. Kristyanna reached Angel before trailing Police Officer Defendants could even exit their respective vehicles.

61.     As Kristyanna reached out to touch her sister Angel in the crushed Honda, one Police Officer Defendant yelled, "Back away, this is a crime scene!"

62.     Kristyanna suffers and continues to suffer from, *inter alia*, nightmares and night terrors, physical numbness in the hands and feet, chest pain and tightness, headaches, heavy eyes, flashbacks, post-traumatic stress disorder, trauma, anxiety, fear, mental harm, and other physical and mental conditions as a result of the Collision.

63.     Kristyanna has suffered and continues to suffer severe personal injuries and has and continues to be forced to expend various sums of money in an effort to treat these injuries as a result of the Collision.

64.     As a result of the aforesaid injuries, Kristyanna has suffered and continues to suffer great pain and mental anguish, and has and continues to be hindered from attending her normal and usual daily duties, functions, and occupations, all to her great detriment and loss.

### VEHICLE PURSUITS IN PENNSYLVANIA

65.     The Pennsylvania Vehicle Code requires police agencies within the Commonwealth to record all motor vehicle pursuits and report their data to the Pennsylvania State Police ("PSP"). *See* 75 Pa. C.S.A. §§ 6341-6345.

66.     The PSP must collect these reports, analyze the data, and compile and publish an annual summary of its findings.

67.     According to the 2020 Annual PSP Report, police departments across Pennsylvania reported 2,239 vehicle pursuits in 2020.[1]

---

[1] *See* 2020 Annual Report, prepared by the Pennsylvania State Police, Bureau of Research and Development, available at https://www.policepursuits.pa.gov/PDF/2020_Annual_Report.pdf (site last visited April 19, 2022).

68.     While traffic offenses were the most common reason for police officers to initiate a vehicle pursuit, less than half of all vehicle pursuits in Pennsylvania in 2020 ended with suspect apprehension during the pursuit.[2]

69.     61.23% of police officer pursuits ended when police discontinued them for various reasons, including an officer/supervisor's decision to end the pursuit, or because the violator stopped voluntarily.[3]

70.     Police were also most likely to terminate pursuits when a pursuit was initiated for a traffic offense.[4]

71.     The 2020 Annual PSP Report notes that "[t]he basic dilemma associated with high-speed police pursuits of fleeing individuals is deciding whether the benefits of potential apprehension outweigh the risks to police officers, the public, and the violator(s)."[5]

72.     Of the 2,239 pursuits that occurred throughout the Commonwealth in 2020, only one death of an uninvolved person is cited in the 2020 Annual Report. Upon information and belief, this death pertained to the Police Officer Defendants' pursuit of Jones and Angel's resultant death from the Collision.

### MUNICIPAL DEFENDANTS FAILED TO ADOPT, IMPLEMENT, AND ENFORCE PROPER VEHICLE PURSUIT POLICIES

73.     Pennsylvania law requires that police departments develop and implement a written emergency vehicle response policy governing the procedures under which a police officer should

---

[2] *Id.*

[3] *Id.*

[4] 44.47% of pursuits in 2020 stemming from a traffic offense were voluntarily terminated by police officers and/or police departments in Pennsylvania. *See supra* note 1.

[5] *Id.*

initiate, continue, and terminate a motor vehicle pursuit.[6] The policy may be the model policy

endorsed by a national or state organization or association of police chiefs or police officers.

74.     The Municipal Defendants were required to develop and implement vehicle pursuit

policies that encompassed the guidelines above and reasonably should have had policies that met

or exceeded endorsed model policies.

75.     Under 75 Pa. Con. Stat. § 6343(c), Pennsylvania police departments must, at a

minimum, adopt a pursuit policy with the following procedural elements:

> (1) Decision making criteria or principles for initiation of pursuit. These criteria or principles may include, but not be limited to:
>
> > (i) The potential for harm or immediate or potential danger to others if the fleeing individual or individuals escape.
> >
> > (ii) The seriousness of the offense committed or believed to have been committed by the individual or individuals attempting to flee.
> >
> > (iii) Safety factors that pose a risk to police officers, other motorists, pedestrians and other persons.
>
> (2) Responsibilities of the pursuing officers.
>
> (3) Responsibilities for the communications center.
>
> (4) Responsibilities of the field supervisor.
>
> (5) Traffic regulations during pursuit, including, but not limited to, the use of emergency equipment, audio signals and visual signals.
>
> (6) Pursuit tactics.

---

[6] 75 Pa. Con. Stat. § 6341 defines "pursuit" as "an active attempt by apprehend one or more occupants of a motor vehicle when the driver of the vehicle is resisting the apprehension by maintaining or increasing his speed or by ignoring the police officer's audible or visual signal to stop."

(7) Roadblock usage.

(8) Communication and coordination of pursuit protocol for interjurisdictional pursuit.

(9) Decision making criteria or principles for termination of pursuit. These criteria or principles may include, but not be limited to, safety factors that pose a risk to police officers, other motorists, pedestrians and other persons.

76.     The Municipal Defendants should have adopted, implemented, and enforced vehicle pursuit policies that encompassed some or all of the following guidelines:

a.  that acknowledgment, control, and supervision of a pursuit must be made by a supervising officer;

b.  that officers engaged in the pursuit must acknowledge and/or report the pursuit through police radio;

c.  that the supervising officer may terminate the pursuit at his/her discretion, and that any such decision to terminate is final and not subject to being countermanded;

d.  that, if no justification for the pursuit is given by the initiating officer or unit over police radio, it shall be the responsibility of all supervisors on the specific radio band, to immediately terminate the pursuit;

e.  that pursuits should be terminated as soon as a supervising officer believes it has become too dangerous;

f.  that during a pursuit, no more than two (2) marked police vehicles should pursue a suspect vehicle;

g.  that during a pursuit all other available sworn personnel should monitor police radio and be prepared to stop or divert pedestrian or vehicular traffic that may be in the path of an oncoming pursuit;

h.  that, to lessen the possibility of a collision should the fleeing vehicle suddenly stop or change direction, a "safe distance" should always be maintained between the pursued vehicle and the pursuing police vehicles;

i.  that a minimum of five (5) car lengths should always be maintained during any pursuit, and a greater distance may be necessary based upon the speed of the pursuit, road and weather conditions, the suspect vehicle's behavior (*i.e.*, how the

vehicle is being operated, etc.), the pursuing vehicle's characteristics, officer's driving experience/capabilities, or any other circumstances that may exist; and,

j.  that all vehicles engaged in a pursuit must have, and will operate the police vehicle with, emergency equipment (i.e., lights and sirens) activated continuously throughout the pursuit.

77.   Had the Municipal Defendants adopted, implemented, and enforced a proper pursuit policy, the Police Officer Defendants would not have pursued Jones and caused the collision and resultant injury and harm to Plaintiffs.

78.   Under an adequate pursuit policy, the vehicle pursuit of Jones would have only been justified if the Police Officer Defendants were:

a.  In close proximity to a suspect vehicle and believed a pursuit was necessary to prevent the death or serious bodily injury of another person, or

b.  In close proximity to a suspect vehicle and believed **both** that: 1) the pursuit was necessary to effect the arrest or prevent escape; **and** 2) the police officer had probable cause to believe that the person being pursued had committed or attempted a forcible felony or had probable cause to believe that the person being pursued possessed a deadly weapon, other than the vehicle itself.

79.   Upon information and belief, the Municipal Defendants negligently failed to adopt such policy or in the alternative, failed to properly implement and enforce such a policy.

80.   Upon information and belief, even if adequate policies were in place, the Municipal Defendants had a custom and practice of disregarding adopted vehicle pursuit policies. This is evident from, among other things, the Police Officer Defendants' conduct during their pursuit of Jones, which conduct failed to conform to any reasonable pursuit policy and fell far below the standard of care required of police officers involved in a vehicle pursuit.

81.   Upon information and belief, as evidenced, in part, by the Police Officer Defendants' actions and omissions during their pursuit of Jones, although the Municipal Defendants maintained or should have maintained adequate pursuit policies, the Municipal

Defendants' custom and practice was to consciously disregard, and thus to act with deliberate indifference, the policies they had or should have had in place and to sanction or condone, expressly or implicitly, their respective police officers' violations of the constitutional rights of bystanders when engaging in vehicle pursuits.

82.     Due to the Municipal Defendants' failure to properly enforce an adequate pursuit policy, or in the alternative, failure to adequately supervise police officers to ensure that their pursuit policy, if any existed, was properly followed, Plaintiffs sustained the damages set forth herein and Angel, at just eighteen years of age, tragically lost her life.

### THE POLICE OFFICER DEFENDANTS VIOLATED ESTABLISHED MODEL VEHICLE PURSUIT POLICIES

83.     Alternatively, as set forth herein, the Police Officer Defendants intentionally, willfully, recklessly, and/or negligently failed to adhere to policies and guidelines established by the Municipal Defendants' respective police departments.

84.     The Police Officer Defendants had no reason to believe that their decision to pursue Jones after he left the McDonald's parking lot was necessary to prevent the death or serious bodily injury of another person, as would be required by an adequate police pursuit policy.

85.     The Police Officer Defendants also did not have probable cause to believe that Jones had committed or had attempted to commit a forcible felony or that he possessed a deadly weapon other than the vehicle Jones was driving.

86.     As alleged above, upon information and belief, the Police Officer Defendants did not know Jones' identity at the time of their traffic stop and pursuit of Jones.  Also upon information and belief, at the time of this traffic stop and subsequent improper pursuit, the Police Officer Defendants were only aware that the driver of the Escape had committed traffic offenses.

16

87.     As a result of the Police Officer Defendants' improper pursuit, Plaintiffs sustained the damages set forth herein and Angel, at just eighteen years of age, tragically lost her life.

## COUNT I

**42 U.S.C. §1983 — 14TH AMENDMENT SUBSTANTIVE DUE PROCESS VIOLATION**
**All Plaintiffs Against the Police Officer Defendants**

88.     All preceding allegations are incorporated by reference as if fully set forth herein.

89.     Count I is alleged by all Plaintiffs against the Police Officer Defendants.

90.     The Police Officer Defendants initiated an improper vehicle pursuit that lasted for more than two miles, at speeds exceeding 80 to 90 miles per hour on a busy road, which pursuit was initiated and continued based upon mere traffic violations—a non-functioning brake light and an illegal left turn on red light.

91.     This improper police pursuit of Jones also occurred during the very early morning hours when it was dark outside, at a time when other motorists that were travelling on the same and/or nearby roads were likely less alert, tired, and/or with less visibility than daylight hours.

92.     The improper police pursuit of Jones also was initiated and continued despite that the Police Officer Defendants' knew or should have known that there were young children and an infant in the vehicle being pursued, and further that two of these three minors (one of the children seated in a rear seat of the Escape and an infant seated on the lap of the front seat passenger) were unrestrained in the vehicle as they were not in proper child / infant car seats.

93.     The Police Officer Defendants knew or should have known that by conducting, continuing, and failing to terminate the improper pursuit of Jones, as well as by failing to intervene to terminate this improper pursuit, the pursuit was certain to cause physical and mental injury to others, including the children in the Escape and other bystanders, including Plaintiffs.  The Police Officer Defendants thus intentionally disregarded the risk of these injuries by prioritizing the effort

17

to apprehend the driver of the Escape for mere traffic violations.  This decision by the Police Officer Defendants was despite the fact that their conduct could not possibly justify any government interest, much less the apprehension of, a suspected traffic offender.

94.     The Police Officer Defendants' conduct constitutes a state-created danger and was so egregious that it rises to a level that shocks the conscious.

95.     As a result of the above actions, the Police Officer Defendants caused Plaintiffs to be deprived of life and/or liberty, and have violated Plaintiffs' clearly established Fourteenth Amendment right under the United States Constitution to substantive due process of law.

## COUNT II

### 42 U.S.C. §1983 — MONELL LIABILITY
### All Plaintiffs Against the Municipal Defendants

96.     All preceding allegations are incorporated by reference as if fully set forth herein.

97.     Count II is alleged by all Plaintiffs against the Municipal Defendants.

98.     The Police Officer Defendants acted under the color of law, and under the authority of one or more interrelated *de facto* policies, practices, and/or customs of the Municipal Defendants' to violate Plaintiffs' rights as set forth herein.

99.     Prior to July 16, 2020, it was a *de facto* policy, practice, and/or custom of the Municipal Defendants, through their respective police departments, chiefs of police, mayors, and borough counsels, to inadequately supervise and train their police officers, including the Police Officer Defendants, concerning adequate vehicle pursuit policies and practices, thereby failing to adequately discourage constitutional violations on the part of their police officers. Upon information and belief, the Municipal Defendants did not require appropriate in-service training or re-training of police officers who were known to engage in improper, intentional, willful, reckless, and/or negligent vehicle pursuits.

18

100.    It was the *de facto* policy, practice, and/or custom of the Municipal Defendants, through their respective police departments, chiefs of police, mayors, and borough councils, to inadequately supervise and train their police officers, including the Police Officer Defendants, to intervene and/or report constitutional violations and misconduct committed by their fellow police officers.

101.    The Municipal Defendants, acting through their respective police departments, chiefs of police, mayors, and borough councils, have adopted and continue to maintain a recognized and accepted policy, custom, and/or practice of systematically engaging in dangerous and improper vehicle pursuits, without regard to the model and accepted vehicle pursuit policies and guidelines, which conduct has resulted in subjecting other persons, including innocent bystanders like Plaintiffs, to unjustifiable risks of property damage, personal injury, and death.

102.    The Municipal Defendants, acting through their respective police departments, chiefs of police, mayors, and borough councils, were fully aware of the dangers posed by vehicle pursuits and the resultant need for proper training and supervision of their police officers, but the Municipal Defendants were deliberately indifferent to those risks and failed to properly train and supervise their police officers regarding those risks.

103.    As a result of the above-described practices, policies, and/or customs, the Municipal Defendants' respective police officers, including the Police Officer Defendants, believed that their actions would not be properly monitored by supervisory police officers and/or other employees of the Municipal Defendants, and that this improper conduct would not be investigated or sanctioned, but would be tolerated and condoned by the Municipal Defendants.

104.    As a result of the above actions, the Municipal Defendants caused Plaintiffs to be deprived of life and/or liberty, and have therefore violated Plaintiffs' Fourteenth Amendment right under the United States Constitution to substantive due process of law.

### COUNT III

**PENNSYLVANIA STATE LAW — NEGLIGENCE**
**All Plaintiffs Against the Police Officer Defendants**

105.    All preceding allegations are incorporated by reference as if fully set forth herein.

106.    Count III is alleged by all Plaintiffs against the Police Officer Defendants.

107.    The negligence, carelessness, and/or recklessness of the Police Officer Defendants, acting alone, jointly, and/or in concert and conspiracy, acting at all times relevant hereto as police officers of Municipal Defendants' respective police departments, was the direct and proximate cause of the Collision and the injuries and damages sustained by Plaintiffs. This conduct consisted of, but was not limited to:

a.  Engaging in a high-speed pursuit when the Police Officer Defendants knew or should have known that the potential for serious bodily injury outweighed any government interest;

b.  Initiating the pursuit when the Police Officer Defendants knew or should have known that the potential for harm, danger, and/or serious bodily injury outweighed the seriousness of the traffic offenses that Officer Richers witnessed Jones commit;

c.  Failing to consider roadway conditions and time of day when initiating and continuing the pursuit;

d.  Failing to recognize and use alternative means to apprehend Jones;

e.  Failing to appropriately coordinate the apprehension of Jones amongst all Police Officer Defendants and with other members of the Municipal Defendants' respective police departments;

f.  Failing to appropriately coordinate, initiate, continue, and/or terminate an interjurisdictional pursuit;

g.  Failing to take reasonable action to increase the likelihood that MacDade Boulevard and any intersecting roads would be clear of traffic in the area of the pursuit;

h.  Failing to keep a proper lookout on the roadway for potential hazards to the vehicles that the Police Officer Defendants operated and to the subject of their pursuit;

i.  Driving at excessive speeds and by continuing the pursuit which encouraged Jones to continue fleeing in his respective vehicle (thereby prolonging the pursuit);

j.  Failing to use all auditory and visual alert systems, including vehicle horns, at the Police Officer Defendants' disposal to alert other vehicles nearby, including the vehicles that Plaintiffs were travelling in, of the pursuit;

k.  Failing to terminate the pursuit when the Police Officer Defendants knew or should have known that the potential for serious bodily injury outweighed any government interest;

l.  Failing to timely communicate facts about the nature and location of the pursuit to the Police Officer Defendants' respective police departments and supervising officers;

m.  Failing to follow, adhere to, and apply police department policies and guidelines regarding the initiation, continuance, and termination of a pursuit and safety during a pursuit;

n.  Failing to understand and/or follow the commands of the Police Officer Defendants' respective supervising officers concerning the pursuit and apprehension of Jones;

o.  Operating their police motor vehicles without due regard to the rights, safety, and position of surrounding vehicles, like those that Plaintiffs were travelling in; and,

p.  Violating the statutes of the Commonwealth of Pennsylvania governing the operation of motor vehicles on streets and highways, specifically, 75 Pa. C.S. §§ 3301, *et seq.*, and 3716.

108.  As a direct result of the negligent, careless, and/or reckless conduct of the Police Officer Defendants, each Plaintiff sustained damages, including those articulated herein.

## COUNT IV

**PENNSYLVANIA STATE LAW — RECKLESS DISREGARD OF SAFETY**
**All Plaintiffs Against the Police Officer Defendants**

109.  All preceding allegations are incorporated by reference as if fully set forth herein.

110.    Count IV is alleged by all Plaintiffs against the Police Officer Defendants.

111.    The Police Officer Defendants had knowledge of the extreme danger to which they subjected members of the public, including Plaintiffs, during the vehicle pursuit. They were aware of the inherent danger of a high-speed chase in that area. They were also aware that they were able to terminate the risk of harm by stopping or altering the pursuit.

112.    The Police Officer Defendants intentionally failed to adhere to their duties as police officers with respect to public safety and vehicle pursuits, as described above, knowing or having reason to know that their acts and omissions created an unreasonable and substantial risk of harm to members of the public, including Plaintiffs.

113.    The improper conduct of the Police Officer Defendants, as alleged herein, constituted the tort of reckless disregard of safety. *See*, §500m 2 Restatement of Torts, 2d.

114.    As a result of the Police Officer Defendants conduct, Plaintiffs suffered damages, including those articulated herein.

115.    The actions and conduct of the Police Officer Defendants exceeded the normal standards of decent conduct and were willful, malicious, oppressive, outrageous, and unjustifiable and thus compensatory and punitive damages are necessary and appropriate.

## COUNT V

### PENNSYLVANIA STATE LAW — NEGLIGENCE (VICARIOUS LIABILITY)
### All Plaintiffs Against the Municipal Defendants

116.    All preceding allegations are incorporated by reference as if fully set forth herein.

117.    Count V is alleged by all Plaintiffs against the Municipal Defendants.

118.    The Police Officer Defendants were the agents, servants, workmen, and employees of the Municipal Defendants, and at all relevant times were engaged in the service and the

22

performance of their duties as police officers employed by or as agents of the Municipal Defendants.

119.    On July 16, 2020, prior to and during the course of the pursuit, the Police Officer Defendants were operating vehicles owned by the Municipal Defendants and had the Municipal Defendants' permission to operate said vehicles.

120.    The negligence, carelessness, and/or recklessness of the Municipal Defendants, acting alone, jointly, and/or in concert and conspiracy, themselves and through their agents, including the Police Officer Defendants, and at all times relevant hereto acting within the scope of their employment with or agency from the Municipal Defendants, was the direct and proximate cause of the Collision and the injuries and damages sustained by Plaintiffs. That conduct consisted of, but was not limited to:

   a. Engaging in a high-speed pursuit when the Police Officer Defendants knew or should have known that the potential for serious bodily injury outweighed any government interest;

   b. Initiating the pursuit when the Police Officer Defendants knew or should have known that the potential for harm, danger, and/or serious bodily injury outweighed the seriousness of the traffic offenses that Officer Richers witnessed Jones commit;

   c. Failing to consider roadway conditions and time of day when initiating and continuing the pursuit;

   d. Failing to recognize and use alternative means to apprehend Jones;

   e. Failing to appropriately coordinate the apprehension of Jones amongst all Police Officer Defendants and with other members of the Municipal Defendants' respective police departments;

   f. Failing to appropriately coordinate, initiate, continue, and/or terminate an interjurisdictional pursuit;

   g. Failing to take reasonable action to increase the likelihood that MacDade Boulevard and any intersecting roads would be clear of traffic in the area of the pursuit;

h.  Failing to keep a proper lookout on the roadway for potential hazards to the vehicles that the Police Officer Defendants operated and to the subject of their pursuit;

i.  Driving at excessive speeds and by continuing the pursuit which encouraged Jones to continue fleeing in his respective vehicle (thereby prolonging the pursuit);

j.  Failing to use all auditory and visual alert systems, including vehicle horns, at the Police Officer Defendants' disposal to alert other vehicles nearby, including the vehicles that Plaintiffs were travelling in, of the pursuit;

k.  Failing to terminate the pursuit when the Police Officer Defendants knew or should have known that the potential for serious bodily injury outweighed any government interest;

l.  Failing to timely communicate facts about the nature and location of the pursuit to the Police Officer Defendants' respective police departments and supervising officers;

m.  Failing to follow, adhere to, and apply police department policies and guidelines regarding the initiation, continuance, and termination of a pursuit and safety during a pursuit;

n.  Failing to understand and/or follow the commands of the Police Officer Defendants' respective supervising officers concerning the pursuit and apprehension of Jones;

o.  Operating their police motor vehicles without due regard to the rights, safety, and position of surrounding vehicles, like those that Plaintiffs were travelling in; and,

p.  Violating the statutes of the Commonwealth of Pennsylvania governing the operation of motor vehicles on streets and highways, specifically, 75 Pa. C.S. §§ 3301, *et seq.*, and 3716.

121.  The Municipal Defendants are liable for the negligent, careless and/or reckless acts of their agents, servants, workmen and/or employees, the Police Officer Defendants, as set forth herein pursuant to the doctrine of *respondeat superior* and are thus liable to Plaintiffs for damages, including those articulated herein.

## COUNT VI

**PENNSYLVANIA STATE LAW — NEGLIGENCE (DIRECT LIABILITY)**
**All Plaintiffs Against the Municipal Defendants**

122.    All preceding allegations are incorporated by reference as if fully set forth herein.

123.    Count VI is alleged by all Plaintiffs against the Municipal Defendants.

124.    The negligence, carelessness, and/or recklessness of the Municipal Defendants, which was the direct and proximate cause of the incident and the injuries and damages sustained by Plaintiffs consists of, but is not limited to:

    a.   Failing to create, implement and/or enforce effective policies and guidelines concerning the initiation, continuation and termination of pursuits;

    b.   Failing to create, implement and/or enforce policies and guidelines concerning pursuits in accordance with 75 Pa. Con. Stat. § 6343(c) and/or that were in keeping with model policies endorsed by national or state organizations or associations of police chiefs or police officers;

    c.   Failing to effectively train, supervise and/or discipline police officers with respect to vehicle pursuit policies;

    d.   Failing to select and hire police officers that would competently adhere to vehicle pursuit policies;

    e.   Failing to discipline police officers who violated pursuit policies, thereby creating and fostering an environment in which police officers believed their violations of pursuit policies would be tolerated and/or condoned;

    f.   Permitting police officers to initiate pursuits when those officers knew or should have known that the potential for harm, danger and/or serious injury outweighed the seriousness of the suspected offense;

    g.   Failing to effectively intervene to terminate improper pursuits;

    h.   Failing to train and/or supervise police officers to consider roadway conditions and time when initiating and continuing a pursuit;

    i.   Failing to train police officers when it is appropriate to use alternative means in lieu of pursuit;

    j.   Failing to have the tools and equipment necessary for safe and effective pursuits;

k. Failing to train and/or supervise police officers regarding how to conduct a safe and effective interjurisdictional pursuit;

l. Failing to train, supervise and/or discipline police officers with respect to the dangers posed by driving at excessive speeds or taking actions that would cause a fleeing suspect to do the same;

m. Failing to train and/or discipline officers with respect to the effective use all auditory and visual alert systems at their disposal in police patrol vehicles; and

n. Failing to put an effective chain of command in place during the pursuit;

125. As a direct result of the negligent, careless, and/or reckless conduct of the Municipal Defendants, Plaintiffs sustained damages, including those detailed herein.

<u>**COUNT VII**</u>
**PENNSYLVANIA STATE LAW – WRONGFUL DEATH (42 Pa. C.S.A. § 8301 *et seq.*)**
**Plaintiff Donahue, as Administratrix of the Estate of Angel McIntyre, Against All Defendants**

126. All preceding allegations are incorporated by reference as if fully set forth herein.

127. Count VII is alleged by Plaintiff Christina Donahue, as Administratrix of the Estate of Angel McIntyre, against all Defendants.

128. Plaintiff Donahue brings this action on behalf of herself and as representative of the wrongful death beneficiaries of Angel McIntyre, pursuant to the Pennsylvania Wrongful Death Act, 42 Pa. C.S.A. § 8301 *et seq.*, and claims all damages recoverable under the Pennsylvania Wrongful Death Act.

129. The injuries sustained by Angel as set forth herein, including, but not limited to, her death, were directly and proximately caused by the intentional, willful, reckless, careless and/or negligent conduct of Defendants, as set forth herein.

130. As a direct and proximate result of the intentional, willful, reckless, careless, and/or negligent conduct of all Defendants, Angel's wrongful death beneficiaries suffered, are suffering,

and will continue to suffer damages, injuries, and losses, including, but not limited to, a loss of financial support and contributions beneficiaries would have received from Angel, including monies which Angel would have provided for items such as clothing, food, shelter, medical care, education, entertainment, recreation, and gifts.

131.    As a direct and proximate result of the intentional, willful, reckless, careless and/or negligent conduct of Defendants, Angel's wrongful death beneficiaries have been, continue to be and will in the future be wrongfully deprived of sums of monies which Angel would have contributed to their support.

132.    As a direct and proximate result of intentional, willful, reckless, careless and/or negligent conduct of Defendants, Angel's wrongful death beneficiaries have been caused to suffer the aforesaid damages, for which Plaintiff Christina Donahue, as Administratrix of the Estate of Angel McIntyre, here makes claim.

## <u>COUNT VIII</u>

**PENNSYLVANIA STATE LAW — SURVIVAL ACT (42 Pa. C.S.A. § 8302 *et seq.*)**
**Plaintiff Donahue, as Administratrix of the Estate of Angel McIntyre, Against All Defendants**

133.    All preceding allegations are incorporated by reference as if fully set forth herein.

134.    Count VIII is alleged by Plaintiff Donahue, as Administratrix of the Estate of Angel McIntyre, against all Defendants.

135.    Plaintiff brings this action on behalf of the Estate of Angel McIntyre pursuant to the Survival Statute of the Commonwealth of Pennsylvania Act, 42 Pa. C.S.A. § 8302 *et seq.*, and claims all damages recoverable thereunder.

136.    The injuries sustained by Angel as set forth herein, including, but not limited to, her death, were proximately caused by the intentional, willful, reckless, careless, and/or negligent conduct of Defendants.

27

137.     As a direct and proximate result of the intentional, willful, reckless, careless, and/or negligent conduct of Defendants, Angel suffered extreme pain and suffering, extreme mental anguish, serious disabling and permanent injuries, including death, as described herein and, loss of earnings throughout her life expectancy, for which Plaintiff Donahue, as Administratrix of the Estate of Angel McIntyre, here makes claim.

## COUNT IX

**STATE LAW — NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**
**Plaintiff Kristyanna Against the Police Officer Defendants**

138.     All preceding allegations are incorporated by reference as if fully set forth herein.

139.     Count IX is alleged by Plaintiff Kristyanna against the Police Officer Defendants.

140.     At the moment of the Collision, as described herein, Kristyanna was (1) a bystander about to enter the intersection where the Collision took place and thus in the zone of danger; (2) a witness to the collision that killed her sister, Angel; and (3) reasonably believed, as a result of the emotional shock from a contemporaneous observance of the Collision, that she might be injured as a result of the Collision.

141.     The negligence, carelessness, and/or recklessness of the Police Officer Defendants, acting alone, jointly, and/or in concert and conspiracy, as set forth herein, was the direct and proximate cause of the Collision.

142.     As a direct and proximate result of the negligence, carelessness, and/or recklessness of the Police Officer Defendants, acting alone, jointly, and/or in concert and conspiracy, Plaintiff sustained severe emotional and psychological injuries, with resultant physical manifestations of said injuries, and here makes claim.

**COUNT X**

**STATE LAW — OUTRAGEOUS CONDUCT CAUSING
SEVERE EMOTIONAL DISTRESS
Plaintiff Kristyanna Against the Police Officer Defendants**

143.    All preceding allegations are incorporated by reference as if fully set forth herein.

144.    Count X is alleged by Plaintiff Kristyanna against the Police Officer Defendants.

145.    The Police Officer Defendants, acting alone, jointly, and/or in concert and conspiracy, by extreme and outrageous conduct, intentionally or recklessly caused severe emotional distress to Kristyanna.

146.    The acts and omissions of the Police Officer Defendants, as alleged in the preceding paragraphs, constitute the tort of Outrageous Conduct Causing Severe Emotional Distress, all to Kristyanna's great detriment and loss.

147.    As a result of the Police Officer Defendants' conduct, Kristyanna suffered physical injuries, pain and suffering, emotional distress, and related financial losses.

148.    The actions and conduct of the Police Officer Defendants exceeded the normal standards of decent conduct and were willful, oppressive, outrageous, and unjustifiable and thus compensatory and punitive damages are necessary and appropriate.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs Christina Donahue, as Administratrix of the Estate of Angel McIntyre, deceased, Matthew Munafo, and Kristyanna Dellavecchia, respectfully request that the Court enter judgment in their favor and against Defendants on all counts of the complaint, and award relief as follows:

A.  Compensatory damages against the Defendants, jointly and severally, in an amount to be determined at trial;

B.  Punitive damages against the individual Police Officer Defendants for

their conduct in an amount to be determined at trial, in order that such award will deter similar prohibited behavior by defendants and other law enforcement officers in the future;

C. Pre-judgment and post-judgment interest and recovery of Plaintiffs' costs, including reasonable attorneys' fees pursuant to 42 U.S.C. §1988 and 42 U.S.C. §1920, against Defendants, jointly and severally; and

D. Any and all other relief to which Plaintiffs may be entitled.

Respectfully Submitted,

Dated: May 3, 2022

Adam J. Gomez
Steven A. Medina
**Grant & Eisenhofer P.A.**
123 Justison Street
Wilmington, DE 19801
302-622-7086
agomez@gelaw.com
smedina@gelaw.com

Irene R. Lax
**Grant & Eisenhofer P.A.**
485 Lexington Avenue, 29th Floor
New York, NY 10017
646-722-8501
ilax@gelaw.com

*Attorneys for Plaintiffs Christina Donahue, as Administratrix of the Estate of Angel McIntyre, deceased, Matthew Munafo, and Kristyanna Dellavecchia*