**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CHRISTINA DONAHUE, AS ADMINISTRATRIX** | : | |
| **OF THE ESTATE OF ANGEL MCINTYRE,** | : | |
| **DECEASED, MATTHEW MUNAFO, AND** | : | |
| **KRISTYANNA DELLAVECCHIA** | : | **No. 22-1695** |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **BOROUGH OF COLLINGDALE, BOROUGH OF** | : | |
| **DARBY, BOROUGH OF COLLINGDALE POLICE** ` | : | |
| **OFFICER COLIN RICHERS, INDIVIDUALLY** | : | |
| **AND AS A POLICE OFFICER FOR COLLINGDALE** | : | |
| **POLICE DEPARTMENT, BOROUGH OF DARBY** | : | |
| **POLICE OFFICER DANTE LYNCH,** | : | |
| **INDIVIDUALLY AND AS A POLICE OFFICER FOR** | : | |
| **THE DARBY POLICE DEPARTMENT, BOROUGH** | : | |
| **OF DARBY POLICE OFFICER JAKE LYONES,** | : | |
| **INDIVIDUALLY AND AS A POLICE OFFICER FOR** | : | |
| **THE DARBY POLICE DEPARTMENT, AND JOHN** | : | |
| **DOES 1-10, INDIVIDUALLY AND AS POLICE** | : | |
| **OFFICERS FOR THE COLLINGDALE AND DARBY** | : | |
| **BOROUGHS POLICE DEPARTMENTS** | : | |
| **Defendants.** | : | |

---

## <u>ORDER</u>

AND NOW, this          day of                         , 2022, upon consideration of the Motion

to Dismiss Plaintiffs' Complaint by the Defendants, Borough of Collingdale and Colin Richers,

pursuant to Federal Rule of Procedure 12(b)(6), 12(e) and 12(f) and Plaintiffs' response thereto,

it is hereby **ORDERED and DECREED** that the Motion is **GRANTED** and the Complaint of

Plaintiffs is **DISMISSED.**

BY THE COURT:

_____

**MICHAEL M. BAYLSON, U.S.D.J.**

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CHRISTINA DONAHUE, AS ADMINISTRATRIX** | : | |
| **OF THE ESTATE OF ANGEL MCINTYRE,** | : | |
| **DECEASED, MATTHEW MUNAFO, AND** | : | |
| **KRISTYANNA DELLAVECCHIA** | : | **No. 22-1695** |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **BOROUGH OF COLLINGDALE, BOROUGH OF** | : | |
| **DARBY, BOROUGH OF COLLINGDALE POLICE `** | : | |
| **OFFICER COLIN RICHERS, INDIVIDUALLY** | : | |
| **AND AS A POLICE OFFICER FOR COLLINGDALE** | : | |
| **POLICE DEPARTMENT, BOROUGH OF DARBY** | : | |
| **POLICE OFFICER DANTE LYNCH,** | : | |
| **INDIVIDUALLY AND AS A POLICE OFFICER FOR** | : | |
| **THE DARBY POLICE DEPARTMENT, BOROUGH** | : | |
| **OF DARBY POLICE OFFICER JAKE LYONES,** | : | |
| **INDIVIDUALLY AND AS A POLICE OFFICER FOR** | : | |
| **THE DARBY POLICE DEPARTMENT, AND JOHN** | : | |
| **DOES 1-10, INDIVIDUALLY AND AS POLICE** | : | |
| **OFFICERS FOR THE COLLINGDALE AND DARBY** | : | |
| **BOROUGHS POLICE DEPARTMENTS** | : | |
| **Defendants.** | : | |

---

## MOTION OF DEFENDANTS, BOROUGH OF COLLINGDALE AND OFFICER COLIN RICHERS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT UNDER FEDERAL RULES OF CIVIL PROCEDURE 12(b)(6), 12 (f) and Rule 8

Moving Defendants, Borough of Collingdale and Officer Colin Richers, by and through

their attorneys, Holsten Associates, P.C. and Suzanne McDonough, Esquire, pursuant to Federal

Rules of Civil Procedure 12(b)(6), 12(f) and Rule 8 respectfully, bring this Motion to Dismiss all

claims against the Borough of Collingdale and Officer Richers as to all Plaintiffs and submit the

attached Memorandum of Law in support thereof incorporated herein by reference.

For the reasons that follow, the Moving Defendants, Borough of Collingdale and Officer Colin Richers, respectfully request that the Motion to Dismiss be granted and the proposed Order entered or that alternative relief be granted under Rule 12(e).   Oral argument is requested.

Respectfully submitted,

**HOLSTEN ASSOCIATES, P.C.**

**BY:**   *Suzanne McDonough*
**SUZANNE MCDONOUGH, ESQUIRE**
**Attorney for above named Defendants, Borough of Collingdale and Officer Colin Richers**

2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CHRISTINA DONAHUE, AS ADMINISTRATRIX | : | |
| OF THE ESTATE OF ANGEL MCINTYRE, | : | |
| DECEASED, MATTHEW MUNAFO, AND | : | |
| KRISTYANNA DELLAVECCHIA | : | No. 22-1695 |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| BOROUGH OF COLLINGDALE, BOROUGH OF | : | |
| DARBY, BOROUGH OF COLLINGDALE POLICE ` | : | |
| OFFICER COLIN RICHERS, INDIVIDUALLY | : | |
| AND AS A POLICE OFFICER FOR COLLINGDALE | : | |
| POLICE DEPARTMENT, BOROUGH OF DARBY | : | |
| POLICE OFFICER DANTE LYNCH, | : | |
| INDIVIDUALLY AND AS A POLICE OFFICER FOR | : | |
| THE DARBY POLICE DEPARTMENT, BOROUGH | : | |
| OF DARBY POLICE OFFICER JAKE LYONES, | : | |
| INDIVIDUALLY AND AS A POLICE OFFICER FOR | : | |
| THE DARBY POLICE DEPARTMENT, AND JOHN | : | |
| DOES 1-10, INDIVIDUALLY AND AS POLICE | : | |
| OFFICERS FOR THE COLLINGDALE AND DARBY | : | |
| BOROUGHS POLICE DEPARTMENTS | : | |
| Defendants. | : | |

---

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF DEFENDANTS,**
**BOROUGH OF COLLINGDALE AND OFFICER COLIN RICHERS,**
**TO DISMISS PLAINTIFFS' COMPLAINT UNDER FEDERAL RULES OF**
**CIVIL PROCEDURE 12(b)(6), 12 (f) AND RULE 8**

**I.      INTRODUCTION AND FACTUAL BACKGROUND**

This is a federal civil rights action brought under 42 U.S. C. §1983 filed on May 3, 2022, alleging a state created danger theory of liability against the Borough of Collingdale and their Officer Colin Richers and another Borough and their Officers arising out of a police pursuit that ended tragically in the death of Angel McIntyre and serious injury to Matthew Munafo when a fleeing motorist hit their vehicle.  There are also ancillary state negligence and intentional tort claims asserted.  The Complaint is attached hereto as Exhibit A.

The Complaint states that Officer Colin Richer was a Police Officer on duty for Collingdale and saw a 2002 Ford Escape with a broken left brake light. (Ex. A. ¶¶21-22). When Richer observed that vehicle then turn left at a red light, he activated his emergency lights to initiate a traffic stop. (Ex. A, ¶¶21-22, 25). In response, the vehicle slowed down, crossed into Darby and pulled into a McDonald's parking lot. (Ex. A, ¶26). Richer followed the vehicle into the parking lot, exited his vehicle and began to approach the then stopped vehicle. (Ex. A, ¶27). Richer ordered Jones to turn off the Escape's engine and exit the vehicle but in response he fled forward from the parking lot. (Ex. A, ¶30). As Jones drove forward, Darby Borough Officers Lyons and Lynch entered the parking lot to assist Richers. (Ex. A, ¶31).

As the Escape was exiting the lot, the vehicle made contact with the front of Lyons' police vehicle at a low rate of speed before continuing westbound on MacDade. (Ex. A, ¶32). Officer Lynch immediately drove behind the vehicle with lights and sirens active. (Ex. A, ¶34). The Escape began to accelerate and travel at a high rate of speed with Richers and Lyons' respective vehicles following Officer Lynch's vehicle in pursuit of the vehicle, all at a high rate of speed. (Ex. A, ¶36). Plaintiffs allege that all Officers knew that there were young children in the fleeing vehicle, an infant in the front seat and other young children in the rear and knew or should have known they were without safety restraints. (Ex. A, ¶¶28, 33, 38). The fleeing motorist, later identified as Jones, drove the Escape one mile at an increasingly high speed, exceeding 80 miles an hour, and ran a red light at MacDade and Felton in Darby. (Ex. A, ¶41). The pursuit continued for another mile before Jones ran a red light at MacDade and West Oak Lane and struck the front passenger side of the vehicle driven by Matthew Manufo and occupied by Angel McIntrye. (Ex. A, ¶¶46-47). McIntyre was pronounced dead at the scene of the accident and Manufo was seriously injured. (Ex. A, ¶¶51, 54-55). The speed of the Escape was

2

determined to be 84 to 94 mph on impact and it is alleged police were traveling at the same speed to keep pace and/or to close in.  (Ex. A, ¶¶49-50).  Angel's sister, Kristyanna, was in a vehicle directly behind Matthew's and witnessed the collision that killed her sister and also feared she would be harmed by the collision.  (Ex. A, ¶¶58-59).  She ran to her sister before the trailing Police Officers could exit their vehicles but was turned away by an Officer who yelled to "Back away, this is a crime scene."  (Ex. A, ¶¶60- 61).

## II.   <u>STANDARD OF REVIEW</u>

The Federal Rules of Civil Procedure provide for the dismissal of an action for failure of the pleading to "… state a claim upon which relief can be granted…"  F.R.C.P. 12(b) (6).  The purpose of a Motion to Dismiss pursuant to the aforesaid Rule is to test the legal sufficiency of Plaintiff's Complaint.  <u>Sturm vs. Clark</u>, 835 F.2d 1009, 1011 (3rd Cir 1987).  In determining whether to grant a Motion to Dismiss under this Rule, the court must accept "as true the facts alleged in the Complaint and all reasonable inferences that can be drawn from them."  <u>Unger vs. National Residence Matching Program</u>, 928 F.2d 1392, 1394-95 (3rd Cir. 1991).

Dismissal is appropriate on a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) if, reading the Complaint in the light most favorable to the Plaintiff, and accepting all factual allegations as true, no relief could be granted under any "reasonable reading of the Complaint."  <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 233 (3d Cir.2008).  It is well settled that a Complaint must be dismissed even if the claim to relief is "conceivable," because a Plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).  "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to

draw the reasonable inference that the Defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, --- U.S. ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).

While the Court will accept <u>well-pleaded</u> facts as true for the purpose of the Motion, "a Court need not credit a Complaint's bald assertions or legal conclusions when deciding a Motion to Dismiss." <u>Morse vs. Lower Merion School District</u>, 132 F.3d 902, 906 (3rd Cir. 1987). (citations omitted). To prevent dismissal, all civil complaints must now set out 'sufficient factual matter' to show that the claim is facially plausible." <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210 (3d Cir. 2009), quoting <u>Iqbal,</u> 556 U.S. at 678.  Accordingly, in ruling upon a Motion under F.R.C.P. 12(b)(6), the Courts consistently reject "legal conclusions", "unsupported conclusions", "unwarranted inferences", "unwarranted deductions", or "sweeping legal conclusions cast in the form of factual allegations." <u>Id</u>. at 906(n) (8).

## III.   <u>ARGUMENT</u>

### A.   <u>MOTION TO STRIKE SCURRILOUS, IMPERTINENT MATTER</u>

Under Rule 12(f), a Court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).  The purpose of a motion to strike is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." <u>Zaloga v. Provident Life & Acc. Ins. Co. of Am.,</u> 671 F. Supp. 2d. 623, 633 (M.D. Pa. 2009). "Immaterial matter is that which has no essential or important relationship to the claim for relief . . . Scandalous matter has been defined as that which improperly casts a derogatory light on someone, most typically on a party to the action." <u>Id.</u> Motions to strike are decided on the pleadings alone. <u>Id.</u>  The Court will strike allegations that have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues. <u>N. Penn. Transfer, Inc. v. Victaulic Co. of Am.,</u> 859 F. Supp.

154, 158-59 (E.D. Pa.1994)).  Impertinent matter is that which does not pertain or is unnecessary to the issues in question.  <u>Donnelly v. Commonwealth Fin. Sys., Inc.</u> No. 3:07-CV-1881, 2008 WL 762085, at *4 (M.D. Pa. Mar. 20, 2008).  Whereas, immateriality is generally defined as "any matter having no value in developing the issues of a case.  <u>In re Catanella & E.F. Hutton & Co., Inc. Sec. Litig.</u>, 583 F. Supp. 1388, 1400 (E.D. Pa. 1984).  While Motions to Strike are not favored, they are appropriate where "…the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues in the case. <u>Natale v. Winthrop Res. Corp.</u>, 2008 WL 2758238, at *14 (E.D. Pa. 2008).

Here, the first 17 pages of the Complaint, paragraphs 1 through 87, are alleged to be "Factual Allegations."  Right from the start there are allegations in these paragraphs about children alleged to be in the fleeing vehicle, allegations as to what Officers involved in the pursuit allegedly knew about them, the likelihood of injuring them, and alleged trauma that was caused to these children who are notably not plaintiffs in the pursuit.[1]  The paragraphs at issue are 23, 24, 28, 30, 38, 39, 42 and 43.  Next, in paragraphs 65 to 72, Plaintiffs cite to state statutes concerning Pennsylvania State Police reports on vehicle pursuits and statistics unrelated to this litigation and which could not be considered facts in this case or related to this litigation and which should not need to be responded to by answering defendants who have no data so as to know if they are even accurate.  Clearly these types of allegations have no place in a short and concise summary of the facts of this particular case that does not involve the State Police or anything related to their regulations.

Next are Paragraphs 74 to 78 that contain no facts but are expansive opinions and conclusions of Plaintiffs through their counsel citing to statutes, alleged guidelines and policies

---

[1] Awareness of children in the fleeing vehicle is categorically denied but at this stage must be accepted as true and thus the Motion to Strike the allegations.

that they allege should have been adopted or followed, quoting verbatim and prolifically from City of Philadelphia Police Directives 9.4, et seq. presumably obtained through a pending unrelated lawsuit before Judge Surrick against the City of Philadelphia, <u>Clark v. Merrell</u>, 19-1579, where all the City directives cited are included with the <u>Clark</u> complaint which actually involves such directives.   The allegations citing to the City Directives at great length in multiple paragraphs are wholly irrelevant to the lawsuit against the Borough of Collingdale, are mere opinions and conclusions of the Plaintiffs who essentially adopt the City of Philadelphia Directives and then set them forth as "facts" to which answering Borough individual and municipal defendants are expected to respond.   There is no allegation that the City Directives quoted from <u>Clark</u> are, or ever were, the policies or directives of either of the Boroughs in this case and the allegations simply do not belong in the Complaint.   Finally, the Plaintiffs go on in paragraphs 80 to 85 to allege that the Defendants "violated established model vehicle pursuit policies" and again cite to the City of Philadelphia Directives specifically in paragraphs 84 and 85 as if they are controlling law of the case.   Again, this type of pleading citing irrelevant Directives is not a short and concise summary of the facts of the case, and moreover, are not facts at all but rather impertinent, irrelevant material designed to prejudice the defense. Therefore, Moving Defendants request that the Complaint be dismissed and any amended pleading not include the objectionable paragraphs or the offensive **allegations couched as "facts" of this case.**

### B.  <u>MOTION TO DISMISS AS VIOLATIVE OF RULE 8</u>

Under Federal Rule of Civil Procedure 8(a)(2), "[a]pleading that states a claim for relief must contain a short and plain statement of the claim showing that the pleader is entitled to relief."   This Complaint is not the short or plain statement envisioned and the claims are

conclusory containing extraneous, irrelevant information which complicates the parties' ability to understand the claims and particularly difficult for the individual defendant to understand the allegations against him so as to frame a qualified immunity defense to which he is entitled to do early on.  The Rule requires that "Each allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1); Scibelli v. Lebanon Cnty., 219 F. App'x 221, 222 (3d Cir. 2007).  "Taken together," Rules 8(a) and 8(d)(1) "underscore the emphasis placed on clarity and brevity by the federal pleading rules." Binsack v. Lackawanna Cty. Prison, 438 F. App'x 158, 160 (3d Cir. 2011) (citing In re: Westinghouse Sec. Litig., 90 F.3d 696, 702 (3d Cir. 1996) (citation omitted)).  For the same reasons as set forth in the Motion to Strike, clearly the allegations in this Complaint are redundant, conclusory, and include personal opinions about the Defendants' alleged knowledge and motivations and quote extraneous matter that is inappropriate to the case.

### C.   MOTION TO DISMISS COUNT I - 14TH AMENDMENT  SUBSTANTIVE DUE PROCESS CLAIM  - AGAINST OFFICER COLIN RICHERS

In Count I, Plaintiffs charge Officer Richers in his individual and official capacity of violating constitutional rights of the Plaintiffs under 42 U.S.C. §1983.  In support of this claim, in paragraphs 90 through 94, Plaintiffs allege that the Officer initiated an improper vehicle pursuit that lasted for more than two miles, at speeds exceeding 80 to 90 miles per hour, on a busy road, and that the pursuit was initiated and continued based upon "mere traffic violations" involving a non-functioning light and going through a red light.  (Ex. A, ¶¶90-91).  The only other additional facts from the Complaint reveal that the motorist was actually stopped for the brake light at the McDonald's by Officer Richers, but when the Officer approached that vehicle, the operator fled onto MacDade Blvd. after striking a Borough of Darby occupied Police vehicle on its way over and sped off at a high rate of speed.  (Ex. A, ¶¶27-33).  Accepting as true, Plaintiffs' distance and speed calculations for this motion (2 miles at 80-90 mph), the entirety of

the pursuit before the tragic accident, in which no police vehicle is said to have been involved, was 80 to 90 seconds.  Other than a conclusory opinion that the road was busy after 1 a.m. on that morning, there is no support for that claim other than the presence of the two Plaintiffs' vehicles at the accident intersection, one of which was not involved in the accident.  Much is made of the Plaintiffs' claim that the pursuit "continued" when Officer Defendants "knew or should have known" that there were young children and an infant in the vehicle being pursued, and further that two of these three minors (one of the children seated in a rear seat of the Escape and an infant seated on the lap of the front seat passenger) were unrestrained in the vehicle as they were not in proper child/infant car seats.  However, the occupants of the fleeing vehicle are not plaintiffs/parties in the lawsuit and allegations concerning them do not lend any support to Plaintiffs' allegations about an unconstitutional pursuit in which the fleeing motorist struck the vehicle with his while eluding the police after having left the scene of an accident.  Clearly, the objective of the Plaintiffs is to craft a rule of law that Officers are vicariously liable for the unconscionable behavior of a fleeing motorist, particularly incredulous given Plaintiffs' allegations concerning the children within the vehicle, more indicative of the dangerous mindset of the motorist eluding the police and willing to sacrifice the children when a normal motorist would have had more reason to stop for the police.

Specifically, Plaintiffs claim that Richers violated Plaintiffs' substantive due process rights under a "state-created danger" theory of liability.  The Court of Appeals for the Third Circuit, applying <u>Lewis</u>, has upheld denials of substantive due process claims brought by an innocent bystander injured during a police vehicular pursuit.  <u>Davis v. Township of Hillside</u>, 190 F.3d 167 (3d Cir. 1999); <u>Fagan v. City of Vineland</u>, 22 F.3d 1296, 1299-1300, 1307-08 (3d Cir. 1994) (en banc)(majority opinion utilizes the shocks the conscience standard).

The Third Circuit applies a four-part test for determining whether a plaintiff has raised a viable state-created danger claim, i.e., a municipal entity may be held liable for the constitutional violations of its employees if: (1) the harm suffered was foreseeable and fairly direct; (2) the individual acted with "a degree of culpability that shocks the conscience"; (3) some relationship existed between the government and the plaintiff which made the plaintiff a foreseeable victim, not just a member of the general public; and (4) the affirmative use of authority in some way created the danger or made others more vulnerable than if the government actor had not acted. Johnson v. City of Phila., 975 F.3d 394, 400,403 (3d Cir. 2020) (citing Sauers v. Borough of Nesquehoning, 905 F.3d 711, 717 (3d Cir. 2018).  In this case, the Plaintiffs must demonstrate that the conduct of the Officer was "so egregious, so outrageous that it may fairly be said to shock the contemporary conscience."  Cty. Of Sacramento v. Lewis, 523, U.S. 833, 847 n. 8 (1998)[2].  Given the circumstances of the "high-speed automobile chase aimed at apprehending a suspected offender" plaintiffs must show "a purpose to cause harm unrelated to the legitimate object of arrest." Id. At 836.

Plaintiffs' Complaint does not allege that Officer Richers had any intent or purpose to cause this unrelated harm and there are no facts that could support such a theory.  "[T]he level of culpability required to shock the conscience increases as the time state actors have to deliberate decreases." Sanford v. Stiles, 456 F.3d 298, 306 (3d Cir. 2006)). "[A]lthough intent to cause harm must be found in a 'hyperpressurized environment,' where officials are afforded the luxury of a greater degree of deliberation and have time to make 'unhurried judgments,' deliberate indifference is sufficient to support an allegation of culpability." Id. (emphasis in original) (quoting Sanford, 456 F.3d at 306).  ... In between these two extremes lies an intermediate

---

[2] The pursuit in Lewis involved 1.3 miles and 70 seconds at 8:30 in the evening and involved the Officer striking the vehicle.

standard: "[W]here the circumstances require a state actor to make something less exigent than a 'split-second' decision but more urgent than an 'unhurried judgment,' i.e., a state actor is required to act 'in a matter of hours or minutes,' a court must consider whether a defendant disregarded a 'great risk of serious harm rather than a substantial risk.'" Id. (quoting Sanford, 456 F.3d at 306); see Johnson v. City of Philadelphia, 975 F.3d 394, 401 (3d Cir. 2020).

There are no facts here that Officer Richers' vehicle was the first car pursing the vehicle after the offender's accident with the police vehicle at the point at which he began his dangerously high-speed flight, no information as to how far behind the vehicle Richers' vehicle was and there is no claim that Richers did not have lights or sirens on or that he was operating his vehicle recklessly in any way or caused any collision.  The allegations are limited to Richers simply being in the pursuit itself at the speed and distance alleged.  On the basis of the facts alleged, Plaintiffs' claim that Richers' conduct shocks the conscience must be rejected and there is no viable state-created danger claim.  Even under the most liberal standard that could conceivably be based on the Sauer decision, Plaintiffs do not state a cause of action for an unlawful unconstitutional police chase, and to hold otherwise would prevent police from ever pursing fleeing suspects should they drive dangerously away from the police.  To assume that the accident would not have occurred if the police had gone away or become invisible to the motorist once he fled the McDonald's parking lot and that in those 70 seconds the fleeing motorist would have ceased his high speed flight is baseless conjecture.

### D.  ALL OFFICIAL CAPACITY CLAIMS AGAINST OFFICER RICHERS SHOULD BE DISMISSED

Officer Richers moves to dismiss the claims against him in his official capacity on the basis that public officials named in their official capacities are not persons within the meaning of §1983 and these claims are in essence claims against the municipality that are appropriately

addressed in a municipal liability claim against the Borough under the requirements of <u>Monell v.</u>
<u>New York City Department of Social Services</u>, 436 U.S. 658 (1978) and are redundant,   "It
is *not* a suit against the official personally, for the real party in interest is the entity." <u>Kentucky v.</u>
<u>Graham</u>, 473 U.S. 159, 166 (1985). It "is functionally a suit against the public entity that
employs them," and therefore redundant. <u>Cuvo v. De Biasi,</u> 169 F.App'x 688. 693 (3d Cir. 2006)
(affirming dismissal of duplicative claims).

### E.  OFFICER RICHERS IS ENTITLED TO DISMISSAL OF THE ACTION BASED ON QUALIFIED IMMUNITY

Under the facts and law of this case, Officer Richers is entitled to qualified immunity for
any mistakes in judgment or miscalculations involved in this case even if a constitutional
violation were to be found.  The Third Circuit in <u>Sauers v. Borough of Nesquehoning</u>, 905 F.3d
711 (3d Cir. 2018), provided little guidance to Police Officers involved in making police pursuits
in general but specifically only addresses situations where there are unhurried decisions and a
dangerous pursuit initiated by an Officer, not the suspect, and where the operation of the police
vehicle was itself reckless and caused, and was involved in, the accident.  The Court did not, and
could not, change the controlling law of <u>Cnty. of Sacramento v. Lewis</u>, 523 U.S. 833, 854
(1998), applicable to this case that requires conscious shocking behavior and an intent to harm on
the part of the Officer even when viewed under the <u>Sauers</u> rationale.

In the <u>Sauers</u> case, unlike the present case, the offender was not even fleeing from the
police nor driving through the street at a dangerously high rate of speed.  On the contrary, it was
the Officer in <u>Sauers</u> who was inexplicably operating his vehicle at speeds over 100 mph to try to
catch up with a summary offender who did not even know he was being pursued by the Officer.
In sharp contrast, in this case, unlike in <u>Sauers</u>, the motorist knew he was being pursued by
Officer Richers, initially stopped and then engaged in bizarre and active flight behavior fleeing

the scene of an accident in the McDonald's parking lot after hitting a police cruiser and fleeing at

a high speed onto MacDade Boulevard.  Neither the Collingdale Officer, nor any other, unlike in

Sauers, operated a police vehicle in a manner that demonstrated a conscious disregard of a great

risk of serious harm and no police vehicle was involved in the tragic accident in this case in any

way.  The facts and situation involved in Sauers are totally inapposite, and no reasonable police

officer would have believed that the pursuit in this circumstance of the fleeing motorist operating

his vehicle at the dangerous speed was unlawful.

It is well settled in Supreme Court precedent that "high-speed chases with no intent to

harm suspects physically or to worsen their legal plight do not give rise to liability under the

Fourteenth Amendment, redressible by action under §1983." Cnty. of Sacramento v. Lewis, 523

U.S. 833, 854 (1998).  A year later, the Third Circuit similarly held that "[t]he critical factor in

determining whether Fourteenth Amendment liability for a high-speed chase may be imposed is

whether the officer's conduct can be found to shock the conscience, for which the evidence must

show intent to harm the suspect physically."  Davis v. Twp. of Hillside, 190 F.3d 167, 171 (3d

Cir. 1999) (emphasis added).  As previously mentioned, none of Plaintiffs' allegations with

respect to the Officer's conduct rise to the level of actions that "shocks the conscience" or are

suggestive of the required specific intent to harm, rather than a generalized risk of harm to the

public.

A clearly established right is one that is so apparent that "every reasonable official would

understand that what he is doing is unlawful." James v. N.J. State Police, 957 F.3d 165, 169 (3d

Cir. 2020) (citing Dist. of Columbia v. Wesby, 138 S. Ct. 577, 589 (2018)).  Absent existing

precedent that places "the statutory or constitutional question beyond debate," James v. N.J.

State Police, 957 F.3d 165, 169 (3d Cir. 2020) (citing Dist. of Columbia v. Wesby, 138 S. Ct.

577, 589 (2018)).   Indeed, the right must be defined with a "high 'degree of specificity'" to be clearly established.  Wesby, Supra at 590 (quoting Mullenix v. Luna, 577 U.S. 7, 13 (2015) (per curiam)).   The Supreme Court has issued several decisions in the past few years warning courts against defining clearly established law at a high level of generality.  Brosseau v. Haugen, 543 U.S. 194 (2004); Mullenix v. Luna, 136 S. Ct. 305 (2015).   Thus, only controlling precedent in the relevant jurisdiction can place a constitutional question beyond debate.  Wilson v. Layne, 526 U.S. 603, 617 (1999).   In this case, conscious shocking behavior and an intent to harm must be manifested, and no facts in this case would support denying qualified immunity to Officer Richers.

### F.  PLAINTIFFS FAIL TO SET FORTH A VIABLE MUNICIPAL LIABILITY CLAIM IN COUNT II

Simply setting forth broad allegations as to "other similar incidents" involving defendants are "patently speculative" and conclusory and insufficient and conclusory allegations regarding a failure to train, supervise, discipline, or terminate officers, simply alleging past similar violations of constitutional rights are also insufficient to state a Monell claim where plaintiffs, as here, do not specify what exactly the custom or policy was that allegedly caused the injuries, did not identify the relevant municipal decision maker responsible for that policy, and have not alleged facts to show a pattern of similar violations by untrained employees); Collins v. Borough of Trainer, No. 13-cv-7613, 2014 U.S. Dist. LEXIS 89233, 2014 WL 2978312, at *5 (E.D. Pa. July 1, 2014) (finding that complaint only plead conclusory allegations insufficient to state a Monell claim where plaintiff alleged that "Defendants developed and maintained policies, practices, procedures and customs exhibiting deliberate indifference to the Constitutional rights of persons . . . which caused violations of Plaintiff's constitutional and other rights as

aforesaid."). See also <u>Jacobs v. Palmer</u>, No. 14-cv-5797, 2015 U.S. Dist. LEXIS 28853, @015 WL 1033294, at *5-6 (E.D. Pa. Mar. 10, 2015), Opinions of Baylson, J.

The operative paragraphs of Count II charge:

"99.   Prior to July 16, 2020, it was a *de facto* policy, practice, and/or custom of the Municipal Defendants, through their respective police departments, chiefs of police, mayors, and borough counsels, to inadequately supervise and train their police officers, including the Police Officer Defendants, concerning adequate vehicle pursuit policies and practices, thereby failing to adequately discourage constitutional violations on the part of their police officers. Upon information and belief, the Municipal Defendants did not require appropriate in-service training or re-training of police officers who were known to engage in improper, intentional, willful, reckless, and/or negligent vehicle pursuits.

100.   It was the *de facto* policy, practice, and/or custom of the Municipal Defendants, through their respective police departments, chiefs of police, mayors, and borough councils, to inadequately supervise and train their police officers, including the Police Officer Defendants, to intervene and/or report constitutional violations and misconduct committed by their fellow police officers.

101.   The Municipal Defendants, acting through their respective police departments, chiefs of police, mayors, and borough councils, have adopted and continue to maintain a recognized and accepted policy, custom, and/or practice of systematically engaging in dangerous and improper vehicle pursuits, without regard to the model and accepted vehicle pursuit policies and guidelines, which conduct has resulted in subjecting other persons, including innocent bystanders like Plaintiffs, to unjustifiable risks of property damage, personal injury, and death.

102.   The Municipal Defendants, acting through their respective police departments, chiefs of police, mayors, and borough councils, were fully aware of the dangers posed by vehicle pursuits and the resultant need for proper training and supervision of their police officers, but the Municipal Defendants were deliberately indifferent to those risks and failed to properly train and supervise their police officers regarding those risks.

103.   As a result of the above-described practices, policies, and/or customs, the

14

Municipal Defendants' respective police officers, including the Police Officer Defendants, believed that their actions would not be properly monitored by supervisory police officers and/or other employees of the Municipal Defendants, and that this improper conduct would not be investigated or sanctioned, but would be tolerated and condoned by the Municipal Defendants."

Municipal liability under 42 U.S.C. §1983 is governed by <u>Monell v. Department of Social Services</u>, 436 U.S. 658 (1978).  In this case, Plaintiffs have not pled sufficient facts to establish that a municipal policy or custom was the cause of the alleged constitutional violations.  To properly plead a Monell claim, a plaintiff must allege sufficient facts showing that a municipal policymaker established a policy or custom that was the moving force behind the constitutional violation experienced. See <u>Monell</u>, 436 U.S. at 694.  A policy is only made when a decision-maker with final authority to establish municipal policy issues an official proclamation, policy, or edict.  <u>Wright v. City of Philadelphia</u>, 685 Fed. Appx. 142, 146 (3d Cir. 2017) (citing <u>Andrews v. Philadelphia</u>, 895 F.2d 1469, 1480 (3d Cir. 1990)).  Custom, however, is not specifically endorsed or authorized by law.  <u>Id.</u>  Rather, custom results from policymakers' "acquiescence in a longstanding practice or custom, which constitutes the `standard operating procedure' of the local government entity." <u>Id.</u> (quoting <u>Jett v. Dallas Indep. Sch. Dist.</u>, 491 U.S. 701, 737 (1989).  There are no facts asserted in this regard and all we are given are broad unsupported conclusions.

To establish municipal liability under §1983 based on a failure-to-train theory, a plaintiff "must identify a failure to provide specific training that has a causal nexus with [his] injuries and must demonstrate that the absence of that specific training can reasonably be said to reflect a deliberate indifference to whether the alleged constitutional deprivations occurred." <u>Gilles v. Davis</u>, 427 F.3d 197, 207 n.7 (3d Cir. 2005) (quoting <u>Reitz v. Cnty. of Bucks</u>, 125 F.3d 139, 145 (3d Cir. 1997)). "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a

15

municipal actor disregarded a known or obvious consequence of his action." Connick, 131 S. Ct. at 1360 (citation omitted).

However, where, as here, there is an absence of factual assertions concerning the specific type of training allegedly not provided, and how this was causally related to the constitutional injury, the claim is deficient as a matter of law. See Bradshaw v. Twp. of Middleton, 145 F. App'x 763, 768 (3d Cir. 2005) (affirming the dismissal of a §1983 failure-to-train claim where plaintiffs failed to "identify any examples of specific training that the Township failed to provide," and it therefore could not "be said that the need for more or additional training [was] so obvious as to constitute deliberate indifference on the part of the Township"); Pahler v. City of Wilkes-Barre, 31 F. App'x 69, 72 (3d Cir. 2002) (affirming the dismissal of a §1983 failure-to-train claim where the plaintiff "ma[de] no allegation that establishe[d] his injuries were ca[u]sed by the defendants' deliberately indifferent failure to train the City's officers"); See also Grazier ex rel. White v. City of Philadelphia, 328 F.3d 120,125 (3rd Cir. 2003).

In Grazier, the Court noted that it would be insufficient to prove that the injury may have been averted if an officer had better or more training. Rather, the Court noted, it was necessary for liability to be premised upon an *identified deficiency* in the training program closely related to the ultimate injury. Id. In Carswell v. Borough of Homestead, 381 F.3d 235, 244 (3d Cir.2004), the Third Circuit held that in a failure to train claim a plaintiff is obligated to identify a municipal policy or custom that amounts to deliberate indifference, which typically requires proof of a pattern of underlying constitutional violations, **and** must also demonstrate that the inadequate training caused a constitutional violation. See also Small v. City of Philadelphia 2007 WL 674629, 9 (E.D.Pa.). There is no factual predicate in this case that would meet this test.

Therefore, the claim against the municipality cannot stand.  Further, there are no specific factual averments concerning the conclusion of prior misconduct by Officer Richers or any other Collingdale Officer.  There is no assertion that Richers was not properly trained and certified as a graduate of a Pennsylvania police academy, or that Richers did not have the MPOETC training as required by Pennsylvania State law with yearly updates on law and proper police practice or that his credentials were ever revoked.

In Pennsylvania, Municipal Police are trained and certified under the Municipal Police Officer Education and Training Commission ("MPOETC").  See 37 Pa. Code §203.11(a)(1)-(11).  This training that requires graduation from an accredited police academy is followed by yearly mandatory training by the Commonwealth Commission. See Id. §203.13(b)(1); Id. §203.13(c)(1); Id. §203.52.  Here, there is no specification as to what different training was constitutionally required, and Plaintiffs fail to state a viable municipal liability claim.

**G.  <u>STATE LAW NEGLIGENCE CLAIMS IN COUNTS III AND V ARE BARRED BY GOVERNMENTAL IMMUNITY</u>**

Under the governing law of the Commonwealth for state law claims, the Political Subdivision Tort Claims Act ("Tort Claims Act"), 42 Pa.C.S. §§8541-8542, a local governmental agency is generally immune from liability in tort for damages caused by its acts or the acts of its officials and employees.  42 Pa.C.S. §8541.  The Legislature has waived this grant of immunity only when two distinct conditions are satisfied: (1) the damages would be recoverable under statutory or common law against a person unprotected by governmental immunity; and (2) the negligent act of the local agency or its employees which caused the injury falls within one of enumerated exceptions to immunity.  42 Pa.C.S. §8542(a).5 *See generally* <u>White v. School District of Philadelphia</u>, 718 A.2d 778, 779 (Pa. 1998).  For purposes of governmental immunity, the term "negligent acts" does not include "acts or conduct which

constitutes a crime, actual fraud, actual malice or willful misconduct." 42 Pa.C.S. §8542(a)(2). [3]

The allegations of negligence set forth in the Complaint in paragraph 107 as to Richers are:

    a. Engaging in a high-speed pursuit when the Police Officer Defendants knew or should have known that the potential for serious bodily injury outweighed any government interest;

    b. Initiating the pursuit when the Police Officer Defendants knew or should have known that the potential for harm, danger, and/or serious bodily injury outweighed the seriousness of the traffic offenses that Officer Richers witnessed Jones commit;

    c. Failing to consider roadway conditions and time of day when initiating and continuing the pursuit;

    d. Failing to recognize and use alternative means to apprehend Jones;

    e. Failing to appropriately coordinate the apprehension of Jones amongst all Police Officer Defendants and with other members of the Municipal Defendants' respective police departments;

    f. Failing to appropriately coordinate, initiate, continue, and/or terminate an interjurisdictional pursuit;

    g. Failing to take reasonable action to increase the likelihood that MacDade Boulevard and any intersecting roads would be clear of traffic in the area of the pursuit;

    h. Failing to keep a proper lookout on the roadway for potential hazards to the vehicles that the Police Officer Defendants operated and to the subject of their pursuit;

    i. Driving at excessive speeds and by continuing the pursuit which encouraged Jones to continue fleeing in his respective vehicle (thereby prolonging the pursuit);

    J. Failing to use all auditory and visual alert systems, including vehicle horns, at the Police Officer Defendants' disposal to alert other vehicles nearby, including the vehicles that Plaintiffs were travelling in, of the pursuit;

    k. Failing to terminate the pursuit when the Police Officer Defendants knew or should have known that the potential for serious bodily injury outweighed any government interest;

---

[3] The recognized exceptions are following: (1) vehicle liability; (2) the care, custody, or control of personal property; (3) the care, custody, or control of real property in the possession of the local agency; (4) trees, traffic controls and street lighting; (5) utility service facilities; (6) streets; (7) sidewalks; and (8) the care, custody, or control of animals. 42 Pa.C.S. §8542(b)(1)-(8).

1.  Failing to timely communicate facts about the nature and location of the pursuit to the Police Officer Defendants' respective police departments and supervising officers;

m.  Failing to follow, adhere to, and apply police department policies and guidelines regarding the initiation, continuance, and termination of a pursuit and safety during a pursuit;

n.  Failing to understand and/or follow the commands of the Police Officer Defendants' respective supervising officers concerning the pursuit and apprehension of Jones;

o.  Operating their police motor vehicles without due regard to the rights, safety, and position of surrounding vehicles, like those that Plaintiffs were travelling in; and,

p.  Violating the statutes of the Commonwealth of Pennsylvania governing the operation of motor vehicles on streets and highways, specifically, 75 Pa. C.S. §§ 3301, *et seq.,* and 3716.

None of the averments contain actual facts supporting the conclusions and none involve the operation of the motor vehicle by the Officer which is a prerequisite for stating a cause of action under the motor vehicle exception to the Tort Claims Act but involve only claims of negligent decision making.  There is no averment that Officer Richers was not using lights and sirens, that he did not have his patrol vehicle under control or that he used any type of police maneuver to cause an accident or lacked permission to pursue the offender.  There is also no argument that he violated any local or state law or the policies or directives of the Borough.  Jewell v. Ridley Twp., 497 Fed. Appx. 182 (3d Cir. 2012), affirming summary judgment for Ridley Township finding that the pursuit was appropriate and Officers were not negligent despite catastrophic injury to an innocent automobile passenger injured by the fleeing offender's vehicle.  Therefore, he is immune from this negligence action.  These same allegations against the Officer are made against the municipality in Count V (vicarious liability) which is not a separate cause of action and fails for the same reasons.  Further, Richers would be entitled to the defense of official immunity from suit because his actions were within the course and scope of his employment as a

19

Police Officer.  The Tort Claims Act grants employees immunity from suit for their official acts.

See 42 Pa. C.S. § 8546.

§ 8546. Defense of official immunity provides:

In any action brought against an employee of a local agency for damages on account of an injury to a person or property based upon claims arising from, or reasonably related to, the office or the performance of the duties of the employee, the employee may assert on his own behalf, or the local agency may assert on his behalf:
**(1)** Defenses which are available at common law to the employee.
**(2)** The defense that the conduct of the employee which gave rise to the claim was authorized or required by law, or that he in good faith reasonably believed the conduct was authorized or required by law.
**(3)** The defense that the act of the employee which gave rise to the claim was within the policymaking discretion granted to the employee by law. For purposes of this subsection, all acts of members of the governing body of a local agency or of the chief executive officer thereof are deemed to be within the policymaking discretion granted to such person by law.

The only exception to the immunity would be in §8550 of the Judicial Code governing

actions where willful misconduct of a local agency's employee is asserted.  That section states:

In any action against a local agency or employee thereof for damages on account of an injury caused by the act of the employee in which it is judicially determined that the act of the employee caused the injury and that such act constituted a crime, actual fraud, actual malice or willful misconduct, the provisions of sections 8545 (relating to official liability generally), 8546 (relating to defense of official immunity), 8548 (relating to indemnity) and 8549 (relating to limitation on damages) shall not apply.

Under 42 Pa.C.S. §8550, "willful misconduct" is construed to mean "willful misconduct

aforethought" and is synonymous with "intentional tort." Orange Stones Co. v. City of Reading,

87 A.3d 1014, 1023 (Pa. Cmwlth. 2014) (citations omitted).  It is well-settled that where a

plaintiff has averred willful misconduct on the part of local agency employees, section

8542(a)(2) of the Tort Claims Act, 42 Pa.C.S. §8542(a)(2), bars recovery from the local agency

because liability may be imposed on a local agency only for negligent acts.  In addition, §8550 of

the [Judicial Code], 42 Pa.C.S. §8550, does not create an exception to §8542(a)(2), and, as a

result, a local agency may not be held liable for the willful misconduct of its employees.  In order

to overcome the defense of governmental immunity, a plaintiff's claims against a local agency must sound in negligence and must fall within one of the eight enumerated exceptions to local agency immunity set forth in §8542(b) of the Tort Claims Act, 42 Pa.C.S. §8542(b).  Orange Stones, supra at 1022 (emphasis added) (citations omitted).  In this case, there is no factual pattern that could conceivably suggest that the Officer was engaged in intentional or willful misconduct and the negligence action should be dismissed.

Therefore, both the employee and the municipality are entitled to immunity from liability in this where there was no negligent operation of the vehicle and where the employee is entitled to official immunity.

### H.  THERE IS NO RECOGNIZED TORT IN PENNSYLVANIA FOR RECKLESS DISREGARD OF SAFETY AS ALLEGED IN COUNT IV

As a matter of law, under Pennsylvania law, recklessness is not a separate tort, and there is no tort recognized under the Restatement (Second) of Torts § 500 for reckless regard for safety as is alleged in Count IV of the Complaint.  See Archibald v. Kemble, 971 A.2d 513, 518-19 (Pa. Super. Ct. 2009), allocatur denied, 989 A.2d 914 (2010).  Recklessness has never been considered as a separate tort.  See Archibald v. Kemble, supra. ("[The trial judge] erred in concluding that [the plaintiff's cause of action [a recklessness claim] was not subsumed within the negligence count pled in their Complaint.");  M.U. v. Downingtown High Sch. East, 103 F. Supp. 3d 612, 629 (E.D. Pa. 2015).  Nor does the immunity statute recognize such claims as a separate cause of action.  42 P.S. §8541, et seq.  Under the Restatement, Courts utilize the theory in determining issues of wanton and willful misconduct but not as a separate tort.  See Archibald v. Kemble, supra.

### I.   PLAINTIFF FAILS TO STATE A CAUSE OF ACTION FOR MUNICIPAL LIABILITY IN COUNT VI

The Political Subdivision Tort Claims Act does not permit claims for municipal liability akin to Monell type liability claims such as failures or deficiencies in policies, practices, training and supervision and such fail to state a cause of action against the governmental entity as a matter of law.  Pennsylvania courts have consistently rejected arguments that claims involving negligent supervision, failure to supervise or negligent policies and procedures fall within an exception to local government immunity.  See Mascaro v. Youth Study Ctr., 514 Pa. 351, 523 A.2d 1118 (1987); Farber v. Pennsbury Sch. Dist., 131 Pa. Commw. 642, 571 A.2d 546 (1990).

### J.   COUNTS VII AND VIII FOR WRONGFUL DEATH AND SURVIVAL ARE NOT SEPARATE CAUSES OF ACTION

"Wrongful death and survival act claims are not substantive causes of action; rather, they provide a means of recovery for unlawful conduct that results in death." Sullivan v. Warminster Twp., 2010 WL 2164520, at *6 (E.D. Pa. May 27, 2010); see 42 Pa. Cons. Stat. Ann. § 8301(a) ("An action may be brought . . . to recover damages for the death of an individual caused by the wrongful act or neglect or unlawful violence or negligence of another if no recovery for the same damages claimed in the wrongful death action was obtained by the injured individual during his lifetime and any prior actions for the same injuries are consolidated with the wrongful death claim so as to avoid a duplicate recovery"); 42 Pa. Cons. Stat. Ann. § 8302 ("All causes of action or proceedings, real or personal, shall survive the death of the plaintiff or of the defendant, or the death of one or more joint plaintiffs or defendants.").  Therefore, as the statutory claims are not causes of action, the separate Counts pled by Plaintiffs should be dismissed as the allegations are only pertinent to damages recoverable under the statutes.

**K.  COUNT IX CLAIMS OF KRISTYANNA DELLAVECCCHIA FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS AND IN COUNT X FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS ARE BARRED BY THE TORT CLAIMS ACT**

Plaintiff Kristyanna Dellavecchia's claims for negligent and intentional infliction of emotional distress are not cognizable under the Tort Claims Act.[4]  There are no facts that would support any claims of intentional torts committed by Officer Richers and no facts that would invalidate his defense of official immunity.  She was not involved in the motor vehicle accident and her claims do not fall within any of the narrow exceptions to the Tort Claims Act, and there is no factual basis for any claim of willful misconduct under §8550 of the Act as previously outlined at length in section G infra.  Therefore, these claims must be dismissed.

**IV.  CONCLUSION**

For the reasons which are set forth more fully above, the Borough of Collingdale and Officer Colin Richers, respectfully request that the Court grant the Motion and dismiss the action against the Borough of Collingdale and Officer Colin Richers or grant such alternative relief as the Court deems just and warranted under the circumstances.

---

[4] There is a suggestion that there was a conspiracy among the Officers but no factual basis supports such an assertion. To bring a civil conspiracy claim under Pennsylvania law, a plaintiff must allege the following: (1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage.  General Refractories Company v. Fireman's Fund Insurance Company, 337 F.3d 297, 313 (3d Cir. 2003); see Strickland v. University of Scranton, 700 A.2d 979, 987-988 (Pa.Super. 1997). Proof of malice, i.e., an intent to injure, is essential in proof of a conspiracy." Thompson Coal Co. v. Pike Coal Co., 488 Pa. 198, 211, 412 A.2d 466, 472 (1979) (citations omitted).  Skipworth by Williams v. Lead Indus. Ass'n, Inc., 547 Pa. 224, 690 A.2d 169, 174 (Pa. 1997)

Respectfully submitted,
**HOLSTEN ASSOCIATES, P.C.**

**BY:**   *Suzanne McDonough*
        **SUZANNE MCDONOUGH, ESQUIRE**
        **Attorney ID No.  29394**
        **115 N. Jackson Street**
        **Media, PA  19063**
        **(610) 566-7183**
        **Attorney for Moving Defendants, Borough of Collingdale and Officer Richers**

## <u>CERTIFICATE OF SERVICE</u>

I, Suzanne McDonough, Esquire, counsel for Defendants,  Borough of Collingdale and Officer Colin Richers, hereby state  that a true and correct copy of the within **Motion to Dismiss and Memorandum of Law in Support of same** was served upon the following individual via ECF electronic mail, this 19th  day of May, 2022

> **ADAM GOMEZ, ESQ.**
> GRANT & EISENHOFER PA
> 123 S. JUSTISON STREET
> 6TH FLOOR
> WILMINGTON, DE 19801
>
> Attorney for Plaintiffs

> Respectfully submitted,
> **HOLSTEN ASSOCIATES, P.C.**
>
> *Suzanne McDonough*
> _____
> **Suzanne McDonough, ESQUIRE**
> **Attorney ID No. 29394**
> **115 N. Jackson Street**
> **Media, PA  19063**
> **(610) 566-7183**
> **Attorney for Moving Defendants,**
> **Borough of Collingdale and Officer Colin Richers**

# EXHIBIT "A"

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Christina Donahue, as Administratrix of the Estate of Angel McIntyre, deceased, Matthew Munafo, and Kristyanna Dellavecchia, | : : : : | JURY TRIAL DEMANDED |
| Plaintiffs, | : : | Civil Action No.: |
| v. | : : : | |
| Borough of Collingdale, Borough of Darby, Borough of Collingdale Police Officer Colin Richers, individually and as a Police Officer for the Collingdale Police Department, Borough of Darby Police Officer Dante Lynch, individually and as a police officer for the Darby Police Department, Borough of Darby Police Officer Jake Lyons, individually and as a police officer for the Darby Police Department, and John Does 1-10, individually and as police officers for the Collingdale and Darby Boroughs Police Departments, | : : : : : : : : : : : : | |
| Defendants. | : | |

## COMPLAINT

Plaintiffs Christina Donahue ("Donahue"), as administratrix of the Estate of Angel McIntyre ("Angel"), deceased, Matthew Munafo ("Matthew"), and Kristyanna Dellavecchia ("Kristyanna," and collectively with Donahue and Matthew, each a "Plaintiff" and collectively the "Plaintiffs"), by and through their attorneys, Grant & Eisenhofer, P.A., assert the following complaint against Defendants Borough of Collingdale, Borough of Darby (together with Borough of Collingdale, the "Municipal Defendants"), Borough of Collingdale Police Officer Colin Richers, individually and as a police officer for the Collingdale Police Department ("Officer Richers"), Borough of Darby Police Officer Dante Lynch, individually and as a police officer for the Darby Police Department ("Officer Lynch"), Borough of Darby Police Officer Jake Lyons,

individually and as a police officer for the Darby Police Department ("Officer Lyons"), and John

Does 1-10, individually and as police officers for the Darby Police Department, (Officer Richers,

Officer Lynch, Officer Lyons and John Does 1-10 are collectively referred to as the "Police Officer

Defendants"), and in support thereof, aver as follows:

**PARTIES**

1.      Plaintiff Christina Donahue, as Administratrix of the Estate of Angel McIntyre, is

and was at all material times a resident of Brookhaven, Pennsylvania.

2.      Plaintiff Matthew Munafo is and was at all material times a resident of Havertown,

Pennsylvania.

3.      Plaintiff Kristyanna Dellavecchia is and was at all material times a resident of

Brookhaven, Pennsylvania.

4.      Defendant Borough of Collingdale is a Municipality of the Commonwealth of

Pennsylvania and a governmental authority that owns, operates, manages, directs, and controls the

Collingdale Police Department, which employed police officers, including the Police Officer

Defendants, and works closely with the police departments of neighboring municipalities,

including Defendant Borough of Darby.

5.      Defendant Borough of Darby is a Municipality of the Commonwealth of

Pennsylvania and a governmental authority that owns, operates, manages, directs, and controls the

Darby Police Department, which employed police officers, including the Police Officer

Defendants, and works closely with the police departments police departments of neighboring

municipalities, including Defendant Borough of Collingdale.

6.      Defendant Police Officer Colin Richers was at all times relevant to this action an

officer of the Collingdale Borough Police Department.  He is being sued both in his individual

capacity and as a police officer for the Borough of Collingdale.

2

7.      Defendant Police Officer Dante Lynch was at all times relevant to this action an officer of the Darby Borough Police Department. He is being sued both in his individual capacity and as a police officer for the Borough of Darby.

8.      Defendant Police Officer Jake Lyons was at all times relevant to this action an officer of the Darby Borough Police Department. He is being sued both in his individual capacity and as a police officer for the Borough of Darby.

9.      Defendants John Doe 1-10 were at all times relevant to this action officers of the Collingdale and Darby Borough Police Departments. They are being sued in both their individual capacities and as police officers for the Boroughs of Collingdale and Darby.

## JURISDICTION AND VENUE

10.     This action is brought pursuant to 42 U.S.C. § 1983. Jurisdiction is based upon 28 U.S.C. §§ 1331 and 1343. Plaintiff further invokes the supplemental jurisdiction under 28 U.S.C. § 1367(a) to hear and decide claims under state law.

11.     Venue is proper in this district under 28 U.S.C. § 1391(b) because the events giving rise to the claims asserted in this Complaint occurred in this judicial district.

## FACTUAL ALLEGATIONS

### AN EVENING WITH FRIENDS TURNS FATAL WHEN IT IS INTERRUPTED BY THE POLICE OFFICER DEFENDANTS' UNLAWFUL HIGH-SPEED PURSUIT

12.     On the evening of July 15, 2020, and entering into the early morning hours of July 16, 2020, Angel (age 18) and her sister Kristyanna (age 22), decided to go to Hog Island, a historic riverside area adjacent to the Philadelphia International Airport, with their friends Matthew (age 20) and Christopher Campetti ("Christopher," age 19). The group planned to spend a fun evening at Hog Island together listening to music, skipping rocks on the water, and taking some photographs of the night sky and airplanes.

3

13.     Angel, Matthew, Kristyanna, and Christopher drove to Hog Island that evening using two vehicles, a Honda driven by Matthew and another vehicle driven by Christopher. Angel rode in Christopher's vehicle, while Kristyanna rode in Matthew's vehicle.

14.     At approximately 12:40 a.m. on July 16, 2020, after enjoying the riverside at Hog Island, Angel, Matthew, Kristyanna, and Christopher decided to change locations and drive to a nearby Wawa convenience store to use the restrooms.

15.     Upon departing the Wawa, the group determined that Matthew and Christopher, each driving separate vehicles, would drive Kristyanna and Angel back to Kristyanna's residence, located at 953 Kingsman Road, Upper Chichester, Pennsylvania 19061, where Angel planned to spend the night.  At the relevant time, Angel lived with her mother at 2607 Edgmont Avenue, Brookhaven, Pennsylvania 19015.

16.     Angel therefore entered Matthew's vehicle (with Matthew as the driver and Angel as his front seat passenger), and Kristyanna entered Christopher's vehicle (with Christopher as the driver and Kristyanna as his front seat passenger).  Matthew and Angel drove off first in Matthew's vehicle, with Kristyanna and Christopher following Matthew's vehicle in Christopher's vehicle.

17.     Within ten minutes of the group's departure, they would be involved in a fatal collision that was the direct result of a needless, high-speed police pursuit improperly conducted by the Police Officer Defendants for the purpose of apprehending an individual who was suspected of traffic offenses.

18.     The Police Officer Defendants' improper and negligent high-speed pursuit of the traffic offense suspect directly caused the fatal collision between Matthew's vehicle and the vehicle of the traffic offense suspect.  As explained fully herein, the Police Officer Defendants' improper conduct thereby directly caused Angel's death at the scene of the accident, Matthew's

4

severe and life-altering injuries from the collision, and Kristyanna's severe emotional distress and trauma with resultant physical manifestations, as she was a first-hand witness of the collision and thus her sister's untimely and tragic death.

19.     Angel's final text message to Kristyanna, received approximately one minute before the collision, simply read "love you."

## THE POLICE OFFICERS DEFENDANTS UNLAWFULLY PURSUE ANTHONY JONES AT EXCESSIVE SPEEDS OVER SUSPECTED TRAFFIC OFFENSES

20.     On July 16, 2020, at approximately 12:45 a.m., Officer Richers was on duty as a uniformed patrol officer in the area of MacDade Boulevard and Chester Pike in Collingdale, Pennsylvania.

21.     Officer Richers was operating Collingdale Police Vehicle No. 7 when he allegedly observed a 2002 Ford Escape (the "Escape") sports utility vehicle (Pennsylvania License No. KJK-4056) with a broken left brake light.

22.     Officer Richers also allegedly observed a black male driver in the Escape, later identified as Anthony Howard Jones ("Jones"), and witnessed Jones turn the Escape left at the red light at MacDade Boulevard and Chester Pike.

23.     Also travelling inside the Escape with Jones were Lamaira Faust ("Faust"), Anaijah Solomon ("Solomon"), and Faust's three young children, all of whom were minors at the relevant time.

24.     One of the children travelling in the Escape—an infant—was seated on Faust's lap in the front passenger seat of the Escape. The other two children, ages three (3) and five (5), were seated in the rear passenger seats of the Escape with Solomon, though only one of these two minor children was seated in a child safety seat.

5

25.     Upon witnessing Jones turn left at the red light, Officer Richers activated his emergency lights to initiate a traffic stop.

26.     In response, Jones slowed down the speed of the Escape, but continued to drive a short distance, crossing into the adjacent Borough of Darby, and ultimately pulled into the parking lot of a McDonald's restaurant located at 101 S. MacDade Boulevard, Darby, Pennsylvania 19023.

27.     Officer Richers' vehicle proceeded to follow the Escape into the McDonald's parking lot. Office Richers then exited his police vehicle and began to approach the front driver side window of the Escape.

28.     Upon information and belief, as Officer Richers approached the front driver side window of the Escape, he observed the two minor children seated in the back seats of the Escape and the infant seated in Faust's lap in the front passenger seat of the Escape.

29.     Officer Richers then ordered Jones to turn off the Escape's engine and exit the vehicle.

30.     In response to these commands, Jones yelled to Officer Richers, "I got my kids in the car," and began driving the Escape forward in the McDonald's parking lot.

31.     As Jones began to drive the Escape forward, Officer Lyons and Officer Lynch entered the McDonald's parking lot in clearly marked police vehicles to assist Officer Richers with the traffic stop.

32.     As the Escape was exiting the McDonald's parking lot, the vehicle made contact with the front end of Officer Lyons' police vehicle, at a low rate of speed, before continuing on to the westbound side of MacDade Boulevard.

33.     Upon information and belief, as the Escape contacted the front end of Officer Lyons' police vehicle, Officer Lyons observed the vehicle's occupants, including the infant seated in Faust's lap and the children in the rear seats.

34.     Officer Lynch, seeing the Escape travel onto MacDade Boulevard, immediately drove behind the vehicle; the lights and sirens of Officer Lynch's vehicle were active.

35.     The Escape, which was now traveling west on MacDade Boulevard, began to accelerate and travel at a high rate of speed.

36.     Thereafter, Officers Richers' and Lyons' respective vehicles followed Officer Lynch's vehicle in the pursuit of the Escape.  All three police vehicles were traveling at a high rate of speed on MacDade Boulevard.

37.     Also thereafter, and upon information and belief, John Does 1-10 joined in the pursuit, supervised the pursuit, and/or otherwise assisted in the pursuit of the Escape that was already ongoing.

38.     Upon information and belief, at this point in the ongoing pursuit, Officers Richers, Lynch, and/or Lyons advised the Police Officer Defendants (including John Does 1-10) that were also participating in, assisting, and/or supervising the pursuit, that there were passengers travelling in the Escape, including the two young children seated in the rear seats of the Escape, and the infant seated on Faust's lap in the front passenger seat of the vehicle.

39.     Also upon information and belief, the Police Officer Defendants knew or reasonably should have known that the infant seated on Faust's lap and one of the young children seated in a rear passenger seat were not seated or properly restrained in required child/infant safety seats.

7

Case 2:22-cv-01695   Document 1   Filed 05/03/22   Page 8 of 30

40.     Jones was not the owner of the Escape, nor was the car registered to his name. Instead, the Escape was owned and registered to an individual named Tammy Harmon. Consequently, upon information and belief, throughout the duration of the improper high-speed police pursuit continuing until Jones' arrest after the collision, the Police Officer Defendants were unaware of Jones' identity.  Thus, upon information and belief, the only knowledge that the Police Officer Defendants had at the time of the improper high-speed police pursuit was that the driver of the Escape, whose identity was not known, had committed traffic offenses.

41.     As the pursuit continued, Jones drove the Escape approximately one mile at an increasingly high rate of speed, exceeding 80 miles per hour, and ran a red light at the intersection of MacDade Boulevard and Felton Avenue, Darby, Pennsylvania 19023.

42.     At this point in the pursuit, the Police Officer Defendants knew or should have known that their intentional high-speed pursuit of Jones was likely to injure innocent bystanders, including the children and infant present in the Escape, as well as any bystanders and/or other individuals in vehicles traveling on MacDade Boulevard or the intersecting roads.

43.     Indeed, during the course of the high-speed pursuit the Police Officer Defendants knew or should have known that they were presently subjecting the children in the vehicle to mental and physical trauma, and thus intended to cause said trauma by continuing their pursuit of Jones for traffic violations.

44.     Rather than terminate the pursuit, in conscious disregard of a great risk of harm during the course of the pursuit and contrary to the vehicle pursuit policies that were or should have been promulgated by their respective police departments, the Police Office Defendants continued to pursue Jones at the high rate of speed down MacDade Boulevard, in a mixed-use residential and commercial area with a speed limit of 25 miles per hour.

45.     The Police Office Defendants also failed to keep their patrol vehicles at an appropriate and safe distance from the Escape, which increased both Jones' desire to flee and the risk of a catastrophic collision between the Escape and any other nearby vehicles and/or persons.

46.     The pursuit continued at a high rate of speed for another mile before ending abruptly when Jones ran a red light at the intersection of MacDade Boulevard and West Oak Lane in Glenolden, Pennsylvania 19036.

47.     In this intersection, at approximately 12:58 a.m., the Escape struck the front passenger side of a northbound Honda driven by Matthew and occupied by Angel (the "Collision").

48.     The speed and force of the Collision crushed the front passenger side of the Honda into Angel's body, and caused Matthew to be ejected 50 feet from the vehicle onto the pavement.

49.     A Forensic Science Unit Crash Reconstruction Report by the Delaware County Criminal Investigation Division concluded that at the time of the Collision the Escape was traveling between 84 and 94 miles per hour at the moment of impact.

50.     Upon information and belief, the Police Officer Defendants were traveling at the same high-rate of speed as Jones, as their patrol cars kept pace with the Escape and/or closed in on the Escape during the pursuit.

51.     Angel was ultimately pronounced dead at the scene of the Collision while still seated in the front passenger seat of the Honda.

52.     Shortly after the Collision, Matthew was transported to Chester Crozer Hospital in grave condition.

53.     Matthew's injuries included a septum pellucidum hemorrhage, left skull base fracture, left sphenoid sinus fracture, right temporal bone fracture extending into

temporomandibular joint, right clavicle fracture, right hemothorax, bilateral pulmonary contusions, a diffuse axonal injury of the brain, and abrasions and scarring all over his body.

54.     His acute care was complicated by ventilator dependent respiratory failure, fevers, leukocytosis, methicillin-susceptible Staphylococcus aureus ("MSSA") aspiration pneumonia, and agitation.

55.     The traumatic brain injury Matthew sustained as a result of the Collision resulted in a cognitive deficit, which impacts every aspect of his everyday life and, in particular, caused him to delay and alter his plans for future education.

56.     Matthew suffered and continues to suffer from severe personal injuries, and has been and continues to be forced to expend significant sums of money in an effort to treat his severe injuries that occurred as a result of the Collision.

57.     As a result of Matthew's aforesaid injuries that were directly caused by the Collision, Matthew has suffered and continues suffer great pain and mental anguish, and has and continues to be hindered from attending his normal and usual daily duties, functions, and occupations, all to his great detriment and loss.

58.     Kristyanna and Christopher's vehicle was directly behind Matthew's Honda, and was about to enter the intersection when the Collision took place.

59.     Thus, Kristyanna, who had just witnessed the Collision that had killed her sister, Angel, and who also was in very close proximity to the Collision, reasonably feared that she would be harmed in the Collision.

60.     Kristyanna, witnessing the Collision, exited Christopher's vehicle as soon as possible and ran to her sister Angel's side. Kristyanna reached Angel before trailing Police Officer Defendants could even exit their respective vehicles.

61.     As Kristyanna reached out to touch her sister Angel in the crushed Honda, one Police Officer Defendant yelled, "Back away, this is a crime scene!"

62.     Kristyanna suffers and continues to suffer from, *inter alia*, nightmares and night terrors, physical numbness in the hands and feet, chest pain and tightness, headaches, heavy eyes, flashbacks, post-traumatic stress disorder, trauma, anxiety, fear, mental harm, and other physical and mental conditions as a result of the Collision.

63.     Kristyanna has suffered and continues to suffer severe personal injuries and has and continues to be forced to expend various sums of money in an effort to treat these injuries as a result of the Collision.

64.     As a result of the aforesaid injuries, Kristyanna has suffered and continues to suffer great pain and mental anguish, and has and continues to be hindered from attending her normal and usual daily duties, functions, and occupations, all to her great detriment and loss.

## VEHICLE PURSUITS IN PENNSYLVANIA

65.     The Pennsylvania Vehicle Code requires police agencies within the Commonwealth to record all motor vehicle pursuits and report their data to the Pennsylvania State Police ("PSP"). *See* 75 Pa. C.S.A. §§ 6341-6345.

66.     The PSP must collect these reports, analyze the data, and compile and publish an annual summary of its findings.

67.     According to the 2020 Annual PSP Report, police departments across Pennsylvania reported 2,239 vehicle pursuits in 2020.[1]

---

[1] *See* 2020 Annual Report, prepared by the Pennsylvania State Police, Bureau of Research and Development, available at https://www.policepursuits.pa.gov/PDF/2020_Annual_Report.pdf (site last visited April 19, 2022).

68.     While traffic offenses were the most common reason for police officers to initiate a vehicle pursuit, less than half of all vehicle pursuits in Pennsylvania in 2020 ended with suspect apprehension during the pursuit.[2]

69.     61.23% of police officer pursuits ended when police discontinued them for various reasons, including an officer/supervisor's decision to end the pursuit, or because the violator stopped voluntarily.[3]

70.     Police were also most likely to terminate pursuits when a pursuit was initiated for a traffic offense.[4]

71.     The 2020 Annual PSP Report notes that "[t]he basic dilemma associated with high-speed police pursuits of fleeing individuals is deciding whether the benefits of potential apprehension outweigh the risks to police officers, the public, and the violator(s)."[5]

72.     Of the 2,239 pursuits that occurred throughout the Commonwealth in 2020, only one death of an uninvolved person is cited in the 2020 Annual Report. Upon information and belief, this death pertained to the Police Officer Defendants' pursuit of Jones and Angel's resultant death from the Collision.

## MUNICIPAL DEFENDANTS FAILED TO ADOPT, IMPLEMENT, AND ENFORCE PROPER VEHICLE PURSUIT POLICIES

73.     Pennsylvania law requires that police departments develop and implement a written emergency vehicle response policy governing the procedures under which a police officer should

---

[2] *Id.*
[3] *Id.*
[4] 44.47% of pursuits in 2020 stemming from a traffic offense were voluntarily terminated by police officers and/or police departments in Pennsylvania. *See supra* note 1.
[5] *Id.*

initiate, continue, and terminate a motor vehicle pursuit.[6] The policy may be the model policy endorsed by a national or state organization or association of police chiefs or police officers.

74.    The Municipal Defendants were required to develop and implement vehicle pursuit policies that encompassed the guidelines above and reasonably should have had policies that met or exceeded endorsed model policies.

75.    Under 75 Pa. Con. Stat. § 6343(c), Pennsylvania police departments must, at a minimum, adopt a pursuit policy with the following procedural elements:

> (1) Decision making criteria or principles for initiation of pursuit. These criteria or principles may include, but not be limited to:
>
>> (i) The potential for harm or immediate or potential danger to others if the fleeing individual or individuals escape.
>>
>> (ii) The seriousness of the offense committed or believed to have been committed by the individual or individuals attempting to flee.
>>
>> (iii) Safety factors that pose a risk to police officers, other motorists, pedestrians and other persons.
>
> (2) Responsibilities of the pursuing officers.
>
> (3) Responsibilities for the communications center.
>
> (4) Responsibilities of the field supervisor.
>
> (5) Traffic regulations during pursuit, including, but not limited to, the use of emergency equipment, audio signals and visual signals.
>
> (6) Pursuit tactics.

---

[6] 75 Pa. Con. Stat. § 6341 defines "pursuit" as "an active attempt by apprehend one or more occupants of a motor vehicle when the driver of the vehicle is resisting the apprehension by maintaining or increasing his speed or by ignoring the police officer's audible or visual signal to stop."

(7) Roadblock usage.

(8) Communication and coordination of pursuit protocol for interjurisdictional pursuit.

(9) Decision making criteria or principles for termination of pursuit. These criteria or principles may include, but not be limited to, safety factors that pose a risk to police officers, other motorists, pedestrians and other persons.

76.     The Municipal Defendants should have adopted, implemented, and enforced vehicle pursuit policies that encompassed some or all of the following guidelines:

a.   that acknowledgment, control, and supervision of a pursuit must be made by a supervising officer;

b.   that officers engaged in the pursuit must acknowledge and/or report the pursuit through police radio;

c.   that the supervising officer may terminate the pursuit at his/her discretion, and that any such decision to terminate is final and not subject to being countermanded;

d.   that, if no justification for the pursuit is given by the initiating officer or unit over police radio, it shall be the responsibility of all supervisors on the specific radio band, to immediately terminate the pursuit;

e.   that pursuits should be terminated as soon as a supervising officer believes it has become too dangerous;

f.   that during a pursuit, no more than two (2) marked police vehicles should pursue a suspect vehicle;

g.   that during a pursuit all other available sworn personnel should monitor police radio and be prepared to stop or divert pedestrian or vehicular traffic that may be in the path of an oncoming pursuit;

h.   that, to lessen the possibility of a collision should the fleeing vehicle suddenly stop or change direction, a "safe distance" should always be maintained between the pursued vehicle and the pursuing police vehicles;

i.   that a minimum of five (5) car lengths should always be maintained during any pursuit, and a greater distance may be necessary based upon the speed of the pursuit, road and weather conditions, the suspect vehicle's behavior (*i.e.*, how the

vehicle is being operated, etc.), the pursuing vehicle's characteristics, officer's driving experience/capabilities, or any other circumstances that may exist; and,

    j.   that all vehicles engaged in a pursuit must have, and will operate the police vehicle with, emergency equipment (i.e., lights and sirens) activated continuously throughout the pursuit.

77.    Had the Municipal Defendants adopted, implemented, and enforced a proper pursuit policy, the Police Officer Defendants would not have pursued Jones and caused the collision and resultant injury and harm to Plaintiffs.

78.    Under an adequate pursuit policy, the vehicle pursuit of Jones would have only been justified if the Police Officer Defendants were:

    a.   In close proximity to a suspect vehicle and believed a pursuit was necessary to prevent the death or serious bodily injury of another person, or

    b.   In close proximity to a suspect vehicle and believed **both** that: 1) the pursuit was necessary to effect the arrest or prevent escape; **and** 2) the police officer had probable cause to believe that the person being pursued had committed or attempted a forcible felony or had probable cause to believe that the person being pursued possessed a deadly weapon, other than the vehicle itself.

79.    Upon information and belief, the Municipal Defendants negligently failed to adopt such policy or in the alternative, failed to properly implement and enforce such a policy.

80.    Upon information and belief, even if adequate policies were in place, the Municipal Defendants had a custom and practice of disregarding adopted vehicle pursuit policies. This is evident from, among other things, the Police Officer Defendants' conduct during their pursuit of Jones, which conduct failed to conform to any reasonable pursuit policy and fell far below the standard of care required of police officers involved in a vehicle pursuit.

81.    Upon information and belief, as evidenced, in part, by the Police Officer Defendants' actions and omissions during their pursuit of Jones, although the Municipal Defendants maintained or should have maintained adequate pursuit policies, the Municipal

Defendants' custom and practice was to consciously disregard, and thus to act with deliberate indifference, the policies they had or should have had in place and to sanction or condone, expressly or implicitly, their respective police officers' violations of the constitutional rights of bystanders when engaging in vehicle pursuits.

82.     Due to the Municipal Defendants' failure to properly enforce an adequate pursuit policy, or in the alternative, failure to adequately supervise police officers to ensure that their pursuit policy, if any existed, was properly followed, Plaintiffs sustained the damages set forth herein and Angel, at just eighteen years of age, tragically lost her life.

## THE POLICE OFFICER DEFENDANTS VIOLATED ESTABLISHED MODEL VEHICLE PURSUIT POLICIES

83.     Alternatively, as set forth herein, the Police Officer Defendants intentionally, willfully, recklessly, and/or negligently failed to adhere to policies and guidelines established by the Municipal Defendants' respective police departments.

84.     The Police Officer Defendants had no reason to believe that their decision to pursue Jones after he left the McDonald's parking lot was necessary to prevent the death or serious bodily injury of another person, as would be required by an adequate police pursuit policy.

85.     The Police Officer Defendants also did not have probable cause to believe that Jones had committed or had attempted to commit a forcible felony or that he possessed a deadly weapon other than the vehicle Jones was driving.

86.     As alleged above, upon information and belief, the Police Officer Defendants did not know Jones' identity at the time of their traffic stop and pursuit of Jones.  Also upon information and belief, at the time of this traffic stop and subsequent improper pursuit, the Police Officer Defendants were only aware that the driver of the Escape had committed traffic offenses.

16

87.     As a result of the Police Officer Defendants' improper pursuit, Plaintiffs sustained the damages set forth herein and Angel, at just eighteen years of age, tragically lost her life.

## COUNT I

### 42 U.S.C. §1983 — 14TH AMENDMENT SUBSTANTIVE DUE PROCESS VIOLATION
### All Plaintiffs Against the Police Officer Defendants

88.     All preceding allegations are incorporated by reference as if fully set forth herein.

89.     Count I is alleged by all Plaintiffs against the Police Officer Defendants.

90.     The Police Officer Defendants initiated an improper vehicle pursuit that lasted for more than two miles, at speeds exceeding 80 to 90 miles per hour on a busy road, which pursuit was initiated and continued based upon mere traffic violations—a non-functioning brake light and an illegal left turn on red light.

91.     This improper police pursuit of Jones also occurred during the very early morning hours when it was dark outside, at a time when other motorists that were travelling on the same and/or nearby roads were likely less alert, tired, and/or with less visibility than daylight hours.

92.     The improper police pursuit of Jones also was initiated and continued despite that the Police Officer Defendants' knew or should have known that there were young children and an infant in the vehicle being pursued, and further that two of these three minors (one of the children seated in a rear seat of the Escape and an infant seated on the lap of the front seat passenger) were unrestrained in the vehicle as they were not in proper child / infant car seats.

93.     The Police Officer Defendants knew or should have known that by conducting, continuing, and failing to terminate the improper pursuit of Jones, as well as by failing to intervene to terminate this improper pursuit, the pursuit was certain to cause physical and mental injury to others, including the children in the Escape and other bystanders, including Plaintiffs.  The Police Officer Defendants thus intentionally disregarded the risk of these injuries by prioritizing the effort

17

to apprehend the driver of the Escape for mere traffic violations.  This decision by the Police

Officer Defendants was despite the fact that their conduct could not possibly justify any

government interest, much less the apprehension of, a suspected traffic offender.

94.     The Police Officer Defendants' conduct constitutes a state-created danger and was

so egregious that it rises to a level that shocks the conscious.

95.     As a result of the above actions, the Police Officer Defendants caused Plaintiffs to

be deprived of life and/or liberty, and have violated Plaintiffs' clearly established Fourteenth

Amendment right under the United States Constitution to substantive due process of law.

## COUNT II

### 42 U.S.C. §1983 — MONELL LIABILITY
### All Plaintiffs Against the Municipal Defendants

96.     All preceding allegations are incorporated by reference as if fully set forth herein.

97.     Count II is alleged by all Plaintiffs against the Municipal Defendants.

98.     The Police Officer Defendants acted under the color of law, and under the authority

of one or more interrelated *de facto* policies, practices, and/or customs of the Municipal

Defendants' to violate Plaintiffs' rights as set forth herein.

99.     Prior to July 16, 2020, it was a *de facto* policy, practice, and/or custom of the

Municipal Defendants, through their respective police departments, chiefs of police, mayors, and

borough counsels, to inadequately supervise and train their police officers, including the Police

Officer Defendants, concerning adequate vehicle pursuit policies and practices, thereby failing to

adequately discourage constitutional violations on the part of their police officers. Upon

information and belief, the Municipal Defendants did not require appropriate in-service training

or re-training of police officers who were known to engage in improper, intentional, willful,

reckless, and/or negligent vehicle pursuits.

100.     It was the *de facto* policy, practice, and/or custom of the Municipal Defendants, through their respective police departments, chiefs of police, mayors, and borough councils, to inadequately supervise and train their police officers, including the Police Officer Defendants, to intervene and/or report constitutional violations and misconduct committed by their fellow police officers.

101.     The Municipal Defendants, acting through their respective police departments, chiefs of police, mayors, and borough councils, have adopted and continue to maintain a recognized and accepted policy, custom, and/or practice of systematically engaging in dangerous and improper vehicle pursuits, without regard to the model and accepted vehicle pursuit policies and guidelines, which conduct has resulted in subjecting other persons, including innocent bystanders like Plaintiffs, to unjustifiable risks of property damage, personal injury, and death.

102.     The Municipal Defendants, acting through their respective police departments, chiefs of police, mayors, and borough councils, were fully aware of the dangers posed by vehicle pursuits and the resultant need for proper training and supervision of their police officers, but the Municipal Defendants were deliberately indifferent to those risks and failed to properly train and supervise their police officers regarding those risks.

103.     As a result of the above-described practices, policies, and/or customs, the Municipal Defendants' respective police officers, including the Police Officer Defendants, believed that their actions would not be properly monitored by supervisory police officers and/or other employees of the Municipal Defendants, and that this improper conduct would not be investigated or sanctioned, but would be tolerated and condoned by the Municipal Defendants.

Case 2:22-cv-01695   Document 1   Filed 05/03/22   Page 20 of 30

104.    As a result of the above actions, the Municipal Defendants caused Plaintiffs to be deprived of life and/or liberty, and have therefore violated Plaintiffs' Fourteenth Amendment right under the United States Constitution to substantive due process of law.

## COUNT III

### PENNSYLVANIA STATE LAW — NEGLIGENCE
### All Plaintiffs Against the Police Officer Defendants

105.    All preceding allegations are incorporated by reference as if fully set forth herein.

106.    Count III is alleged by all Plaintiffs against the Police Officer Defendants.

107.    The negligence, carelessness, and/or recklessness of the Police Officer Defendants, acting alone, jointly, and/or in concert and conspiracy, acting at all times relevant hereto as police officers of Municipal Defendants' respective police departments, was the direct and proximate cause of the Collision and the injuries and damages sustained by Plaintiffs. This conduct consisted of, but was not limited to:

  a.  Engaging in a high-speed pursuit when the Police Officer Defendants knew or should have known that the potential for serious bodily injury outweighed any government interest;

  b.  Initiating the pursuit when the Police Officer Defendants knew or should have known that the potential for harm, danger, and/or serious bodily injury outweighed the seriousness of the traffic offenses that Officer Richers witnessed Jones commit;

  c.  Failing to consider roadway conditions and time of day when initiating and continuing the pursuit;

  d.  Failing to recognize and use alternative means to apprehend Jones;

  e.  Failing to appropriately coordinate the apprehension of Jones amongst all Police Officer Defendants and with other members of the Municipal Defendants' respective police departments;

  f.  Failing to appropriately coordinate, initiate, continue, and/or terminate an interjurisdictional pursuit;

g.  Failing to take reasonable action to increase the likelihood that MacDade Boulevard and any intersecting roads would be clear of traffic in the area of the pursuit;

h.  Failing to keep a proper lookout on the roadway for potential hazards to the vehicles that the Police Officer Defendants operated and to the subject of their pursuit;

i.  Driving at excessive speeds and by continuing the pursuit which encouraged Jones to continue fleeing in his respective vehicle (thereby prolonging the pursuit);

j.  Failing to use all auditory and visual alert systems, including vehicle horns, at the Police Officer Defendants' disposal to alert other vehicles nearby, including the vehicles that Plaintiffs were travelling in, of the pursuit;

k.  Failing to terminate the pursuit when the Police Officer Defendants knew or should have known that the potential for serious bodily injury outweighed any government interest;

l.  Failing to timely communicate facts about the nature and location of the pursuit to the Police Officer Defendants' respective police departments and supervising officers;

m.  Failing to follow, adhere to, and apply police department policies and guidelines regarding the initiation, continuance, and termination of a pursuit and safety during a pursuit;

n.  Failing to understand and/or follow the commands of the Police Officer Defendants' respective supervising officers concerning the pursuit and apprehension of Jones;

o.  Operating their police motor vehicles without due regard to the rights, safety, and position of surrounding vehicles, like those that Plaintiffs were travelling in; and,

p.  Violating the statutes of the Commonwealth of Pennsylvania governing the operation of motor vehicles on streets and highways, specifically, 75 Pa. C.S. §§ 3301, *et seq.*, and 3716.

108.  As a direct result of the negligent, careless, and/or reckless conduct of the Police Officer Defendants, each Plaintiff sustained damages, including those articulated herein.

## COUNT IV

**PENNSYLVANIA STATE LAW — RECKLESS DISREGARD OF SAFETY**
**All Plaintiffs Against the Police Officer Defendants**

109.  All preceding allegations are incorporated by reference as if fully set forth herein.

21

110. Count IV is alleged by all Plaintiffs against the Police Officer Defendants.

111. The Police Officer Defendants had knowledge of the extreme danger to which they subjected members of the public, including Plaintiffs, during the vehicle pursuit. They were aware of the inherent danger of a high-speed chase in that area. They were also aware that they were able to terminate the risk of harm by stopping or altering the pursuit.

112. The Police Officer Defendants intentionally failed to adhere to their duties as police officers with respect to public safety and vehicle pursuits, as described above, knowing or having reason to know that their acts and omissions created an unreasonable and substantial risk of harm to members of the public, including Plaintiffs.

113. The improper conduct of the Police Officer Defendants, as alleged herein, constituted the tort of reckless disregard of safety. *See*, §500m 2 Restatement of Torts, 2d.

114. As a result of the Police Officer Defendants conduct, Plaintiffs suffered damages, including those articulated herein.

115. The actions and conduct of the Police Officer Defendants exceeded the normal standards of decent conduct and were willful, malicious, oppressive, outrageous, and unjustifiable and thus compensatory and punitive damages are necessary and appropriate.

## COUNT V

### PENNSYLVANIA STATE LAW — NEGLIGENCE (VICARIOUS LIABILITY)
### All Plaintiffs Against the Municipal Defendants

116. All preceding allegations are incorporated by reference as if fully set forth herein.

117. Count V is alleged by all Plaintiffs against the Municipal Defendants.

118. The Police Officer Defendants were the agents, servants, workmen, and employees of the Municipal Defendants, and at all relevant times were engaged in the service and the

22

performance of their duties as police officers employed by or as agents of the Municipal

Defendants.

119.    On July 16, 2020, prior to and during the course of the pursuit, the Police Officer

Defendants were operating vehicles owned by the Municipal Defendants and had the Municipal

Defendants' permission to operate said vehicles.

120.    The negligence, carelessness, and/or recklessness of the Municipal Defendants,

acting alone, jointly, and/or in concert and conspiracy, themselves and through their agents,

including the Police Officer Defendants, and at all times relevant hereto acting within the scope of

their employment with or agency from the Municipal Defendants, was the direct and proximate

cause of the Collision and the injuries and damages sustained by Plaintiffs. That conduct consisted

of, but was not limited to:

    a. Engaging in a high-speed pursuit when the Police Officer Defendants knew or should have known that the potential for serious bodily injury outweighed any government interest;

    b. Initiating the pursuit when the Police Officer Defendants knew or should have known that the potential for harm, danger, and/or serious bodily injury outweighed the seriousness of the traffic offenses that Officer Richers witnessed Jones commit;

    c. Failing to consider roadway conditions and time of day when initiating and continuing the pursuit;

    d. Failing to recognize and use alternative means to apprehend Jones;

    e. Failing to appropriately coordinate the apprehension of Jones amongst all Police Officer Defendants and with other members of the Municipal Defendants' respective police departments;

    f. Failing to appropriately coordinate, initiate, continue, and/or terminate an interjurisdictional pursuit;

    g. Failing to take reasonable action to increase the likelihood that MacDade Boulevard and any intersecting roads would be clear of traffic in the area of the pursuit;

h. Failing to keep a proper lookout on the roadway for potential hazards to the vehicles that the Police Officer Defendants operated and to the subject of their pursuit;

i. Driving at excessive speeds and by continuing the pursuit which encouraged Jones to continue fleeing in his respective vehicle (thereby prolonging the pursuit);

j. Failing to use all auditory and visual alert systems, including vehicle horns, at the Police Officer Defendants' disposal to alert other vehicles nearby, including the vehicles that Plaintiffs were travelling in, of the pursuit;

k. Failing to terminate the pursuit when the Police Officer Defendants knew or should have known that the potential for serious bodily injury outweighed any government interest;

l. Failing to timely communicate facts about the nature and location of the pursuit to the Police Officer Defendants' respective police departments and supervising officers;

m. Failing to follow, adhere to, and apply police department policies and guidelines regarding the initiation, continuance, and termination of a pursuit and safety during a pursuit;

n. Failing to understand and/or follow the commands of the Police Officer Defendants' respective supervising officers concerning the pursuit and apprehension of Jones;

o. Operating their police motor vehicles without due regard to the rights, safety, and position of surrounding vehicles, like those that Plaintiffs were travelling in; and,

p. Violating the statutes of the Commonwealth of Pennsylvania governing the operation of motor vehicles on streets and highways, specifically, 75 Pa. C.S. §§ 3301, *et seq.*, and 3716.

121. The Municipal Defendants are liable for the negligent, careless and/or reckless acts of their agents, servants, workmen and/or employees, the Police Officer Defendants, as set forth herein pursuant to the doctrine of *respondeat superior* and are thus liable to Plaintiffs for damages, including those articulated herein.

Case 2:22-cv-01695   Document 1   Filed 05/03/22   Page 25 of 30

## COUNT VI

### PENNSYLVANIA STATE LAW — NEGLIGENCE (DIRECT LIABILITY)
### All Plaintiffs Against the Municipal Defendants

122.   All preceding allegations are incorporated by reference as if fully set forth herein.

123.   Count VI is alleged by all Plaintiffs against the Municipal Defendants.

124.   The negligence, carelessness, and/or recklessness of the Municipal Defendants, which was the direct and proximate cause of the incident and the injuries and damages sustained by Plaintiffs consists of, but is not limited to:

a. Failing to create, implement and/or enforce effective policies and guidelines concerning the initiation, continuation and termination of pursuits;

b. Failing to create, implement and/or enforce policies and guidelines concerning pursuits in accordance with 75 Pa. Con. Stat. § 6343(c) and/or that were in keeping with model policies endorsed by national or state organizations or associations of police chiefs or police officers;

c. Failing to effectively train, supervise and/or discipline police officers with respect to vehicle pursuit policies;

d. Failing to select and hire police officers that would competently adhere to vehicle pursuit policies;

e. Failing to discipline police officers who violated pursuit policies, thereby creating and fostering an environment in which police officers believed their violations of pursuit policies would be tolerated and/or condoned;

f. Permitting police officers to initiate pursuits when those officers knew or should have known that the potential for harm, danger and/or serious injury outweighed the seriousness of the suspected offense;

g. Failing to effectively intervene to terminate improper pursuits;

h. Failing to train and/or supervise police officers to consider roadway conditions and time when initiating and continuing a pursuit;

i. Failing to train police officers when it is appropriate to use alternative means in lieu of pursuit;

j. Failing to have the tools and equipment necessary for safe and effective pursuits;

25

    k.    Failing to train and/or supervise police officers regarding how to conduct a safe and effective interjurisdictional pursuit;

    l.    Failing to train, supervise and/or discipline police officers with respect to the dangers posed by driving at excessive speeds or taking actions that would cause a fleeing suspect to do the same;

    m.    Failing to train and/or discipline officers with respect to the effective use all auditory and visual alert systems at their disposal in police patrol vehicles; and

    n.    Failing to put an effective chain of command in place during the pursuit;

125.    As a direct result of the negligent, careless, and/or reckless conduct of the Municipal Defendants, Plaintiffs sustained damages, including those detailed herein.

**COUNT VII**

**PENNSYLVANIA STATE LAW – WRONGFUL DEATH (42 Pa. C.S.A. § 8301 *et seq.*)**
**Plaintiff Donahue, as Administratrix of the Estate of Angel McIntyre, Against All**
**Defendants**

126.    All preceding allegations are incorporated by reference as if fully set forth herein.

127.    Count VII is alleged by Plaintiff Christina Donahue, as Administratrix of the Estate of Angel McIntyre, against all Defendants.

128.    Plaintiff Donahue brings this action on behalf of herself and as representative of the wrongful death beneficiaries of Angel McIntyre, pursuant to the Pennsylvania Wrongful Death Act, 42 Pa. C.S.A. § 8301 *et seq.*, and claims all damages recoverable under the Pennsylvania Wrongful Death Act.

129.    The injuries sustained by Angel as set forth herein, including, but not limited to, her death, were directly and proximately caused by the intentional, willful, reckless, careless and/or negligent conduct of Defendants, as set forth herein.

130.    As a direct and proximate result of the intentional, willful, reckless, careless, and/or negligent conduct of all Defendants, Angel's wrongful death beneficiaries suffered, are suffering,

and will continue to suffer damages, injuries, and losses, including, but not limited to, a loss of financial support and contributions beneficiaries would have received from Angel, including monies which Angel would have provided for items such as clothing, food, shelter, medical care, education, entertainment, recreation, and gifts.

131.    As a direct and proximate result of the intentional, willful, reckless, careless and/or negligent conduct of Defendants, Angel's wrongful death beneficiaries have been, continue to be and will in the future be wrongfully deprived of sums of monies which Angel would have contributed to their support.

132.    As a direct and proximate result of intentional, willful, reckless, careless and/or negligent conduct of Defendants, Angel's wrongful death beneficiaries have been caused to suffer the aforesaid damages, for which Plaintiff Christina Donahue, as Administratrix of the Estate of Angel McIntyre, here makes claim.

## COUNT VIII

### PENNSYLVANIA STATE LAW — SURVIVAL ACT (42 Pa. C.S.A. § 8302 *et seq.*)
### Plaintiff Donahue, as Administratrix of the Estate of Angel McIntyre, Against All Defendants

133.    All preceding allegations are incorporated by reference as if fully set forth herein.

134.    Count VIII is alleged by Plaintiff Donahue, as Administratrix of the Estate of Angel McIntyre, against all Defendants.

135.    Plaintiff brings this action on behalf of the Estate of Angel McIntyre pursuant to the Survival Statute of the Commonwealth of Pennsylvania Act, 42 Pa. C.S.A. § 8302 *et seq.*, and claims all damages recoverable thereunder.

136.    The injuries sustained by Angel as set forth herein, including, but not limited to, her death, were proximately caused by the intentional, willful, reckless, careless, and/or negligent conduct of Defendants.

137.   As a direct and proximate result of the intentional, willful, reckless, careless, and/or negligent conduct of Defendants, Angel suffered extreme pain and suffering, extreme mental anguish, serious disabling and permanent injuries, including death, as described herein and, loss of earnings throughout her life expectancy, for which Plaintiff Donahue, as Administratrix of the Estate of Angel McIntyre, here makes claim.

### COUNT IX

### STATE LAW — NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### Plaintiff Kristyanna Against the Police Officer Defendants

138.   All preceding allegations are incorporated by reference as if fully set forth herein.

139.   Count IX is alleged by Plaintiff Kristyanna against the Police Officer Defendants.

140.   At the moment of the Collision, as described herein, Kristyanna was (1) a bystander about to enter the intersection where the Collision took place and thus in the zone of danger; (2) a witness to the collision that killed her sister, Angel; and (3) reasonably believed, as a result of the emotional shock from a contemporaneous observance of the Collision, that she might be injured as a result of the Collision.

141.   The negligence, carelessness, and/or recklessness of the Police Officer Defendants, acting alone, jointly, and/or in concert and conspiracy, as set forth herein, was the direct and proximate cause of the Collision.

142.   As a direct and proximate result of the negligence, carelessness, and/or recklessness of the Police Officer Defendants, acting alone, jointly, and/or in concert and conspiracy, Plaintiff sustained severe emotional and psychological injuries, with resultant physical manifestations of said injuries, and here makes claim.

## COUNT X

### STATE LAW — OUTRAGEOUS CONDUCT CAUSING SEVERE EMOTIONAL DISTRESS
**Plaintiff Kristyanna Against the Police Officer Defendants**

143.    All preceding allegations are incorporated by reference as if fully set forth herein.

144.    Count X is alleged by Plaintiff Kristyanna against the Police Officer Defendants.

145.    The Police Officer Defendants, acting alone, jointly, and/or in concert and conspiracy, by extreme and outrageous conduct, intentionally or recklessly caused severe emotional distress to Kristyanna.

146.    The acts and omissions of the Police Officer Defendants, as alleged in the preceding paragraphs, constitute the tort of Outrageous Conduct Causing Severe Emotional Distress, all to Kristyanna's great detriment and loss.

147.    As a result of the Police Officer Defendants' conduct, Kristyanna suffered physical injuries, pain and suffering, emotional distress, and related financial losses.

148.    The actions and conduct of the Police Officer Defendants exceeded the normal standards of decent conduct and were willful, oppressive, outrageous, and unjustifiable and thus compensatory and punitive damages are necessary and appropriate.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs Christina Donahue, as Administratrix of the Estate of Angel McIntyre, deceased, Matthew Munafo, and Kristyanna Dellavecchia, respectfully request that the Court enter judgment in their favor and against Defendants on all counts of the complaint, and award relief as follows:

      A.  Compensatory damages against the Defendants, jointly and severally, in an amount to be determined at trial;

      B.  Punitive damages against the individual Police Officer Defendants for

their conduct in an amount to be determined at trial, in order that such award will deter similar prohibited behavior by defendants and other law enforcement officers in the future;

C. Pre-judgment and post-judgment interest and recovery of Plaintiffs' costs, including reasonable attorneys' fees pursuant to 42 U.S.C. §1988 and 42 U.S.C. §1920, against Defendants, jointly and severally; and

D. Any and all other relief to which Plaintiffs may be entitled.

Respectfully Submitted,

Dated: May 3, 2022

_____

Adam J. Gomez
Steven A. Medina
**Grant & Eisenhofer P.A.**
123 Justison Street
Wilmington, DE 19801
302-622-7086
agomez@gelaw.com
smedina@gelaw.com

Irene R. Lax
**Grant & Eisenhofer P.A.**
485 Lexington Avenue, 29th Floor
New York, NY 10017
646-722-8501
ilax@gelaw.com

*Attorneys for Plaintiffs Christina Donahue, as Administratrix of the Estate of Angel McIntyre, deceased, Matthew Munafo, and Kristyanna Dellavecchia*

JS 44 (Rev. 10/20)                     **CIVIL COVER SHEET**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Christina Donahue, et al. | Borough of Collingdale, et al. |

| (b) County of Residence of First Listed Plaintiff  Delaware | County of Residence of First Listed Defendant |
|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)* |
| | NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED. |

| (c) Attorneys *(Firm Name, Address, and Telephone Number)* | Attorneys *(If Known)* |
|---|---|
| | |

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*                   Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Personal Injury Product Liability | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | ☐ 370 Other Fraud | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | **LABOR** | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| | | | | ☐ 863 DIWC/DIWW (405(g)) | |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☒ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

**V. ORIGIN** *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

| **VI. CAUSE OF ACTION** | Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*: |
|---|---|
| | Brief description of cause: |

| **VII. REQUESTED IN COMPLAINT:** | ☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P. | **DEMAND $** | CHECK YES only if demanded in complaint: |
|---|---|---|---|
| | | | **JURY DEMAND:** ☒ Yes ☐ No |

| **VIII. RELATED CASE(S) IF ANY** | *(See instructions):* | JUDGE | DOCKET NUMBER |
|---|---|---|---|

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|
| May 3, 2022 | /s/ Adam J. Gomez |

**FOR OFFICE USE ONLY**

| RECEIPT # | AMOUNT | APPLYING IFP | JUDGE | MAG. JUDGE |
|---|---|---|---|---|

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I.(a) **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

 (b) **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

 (c) **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II. **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. **(See Section III below; NOTE: federal question actions take precedence over diversity cases.)**

III. **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV. **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

V. **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

VI. **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

VII. **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII. **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____ See Attachmentt A _____

Address of Defendant: _____ See Attachment A _____

Place of Accident, Incident or Transaction: ___ Intersection of McDade Boulevard and West Oak Lane in Glenolden, PA 19036 ___

---

*RELATED CASE, IF ANY:*

Case Number: _____ Judge: _____ Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?    Yes ☐   No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?    Yes ☐   No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?    Yes ☐   No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?    Yes ☐   No ☑

I certify that, to my knowledge, the within case ☐ is / ☒ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 05/03/2022     _____     317145
                          *Attorney-at-Law / Pro Se Plaintiff*     *Attorney I.D. # (if applicable)*

---

**CIVIL:** (Place a √ in one category only)

*A. Federal Question Cases:*

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Patent
☐ 6. Labor-Management Relations
☑ 7. Civil Rights
☐ 8. Habeas Corpus
☐ 9. Securities Act(s) Cases
☐ 10. Social Security Review Cases
☐ 11. All other Federal Question Cases
*(Please specify):* _____

*B. Diversity Jurisdiction Cases:*

☐ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury *(Please specify):* _____
☐ 7. Products Liability
☐ 8. Products Liability – Asbestos
☐ 9. All other Diversity Cases
*(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I,   Adam J. Gomez  , counsel of record *or* pro se plaintiff, do hereby certify:

☑ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE: 05/03/2022     _____     317145
                          *Attorney-at-Law / Pro Se Plaintiff*     *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

## ATTACHMENT A

### Plaintiffs

| | |
|---|---|
| Christina Donahue, as Administratrix of the Estate of Angel McIntyre | 1 Stratfrod Rd, Glenolden, PA 19036 |
| Matthew Munafo | 329 Harrington Rd, Haverttown, PA 19083 |
| Kristyanna Dellavecchia | 1 Stratfrod Rd, Glenolden, PA 19036 |

### Defendants

| | |
|---|---|
| Borough of Collingdale | 800 MacDade Blvd, Collingdale, PA 19023 |
| Borough of Darby | 1020 Ridge Avenue, Darby, PA 19023 |
| Police Officer Colin Richers | 800 MacDade Blvd, Collingdale, PA 19023 |
| Police Officer Dante Lynch | 1020 Ridge Avenue, Darby, PA 19023 |
| Police Officer Jake Lyons | 1020 Ridge Avenue, Darby, PA 19023 |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

Christina Donahue, et al. : CIVIL ACTION

v. :

Borough of Collingdale, et al. : NO. 2:22-cv-01695

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

## SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255. ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits. ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2. ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos. ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.) ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks. (X)

| May 3, 2022 | Adam J. Gomez | Plaintiffs |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| 302-622-7000 | 302-622-7086 | agomez@gelaw.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02



### Civil Justice Expense and Delay Reduction Plan
### Section 1:03 – Assignment to a Management Track

(a)    The clerk of court will assign cases to tracks (a) through (d) based on the initial pleading.

(b)    In all cases not appropriate for assignment by the clerk of court to tracks (a) through (d), the plaintiff shall submit to the clerk of court and serve with the complaint on all defendants a case management track designation form specifying that the plaintiff believes the case requires Standard Management or Special Management. In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

(c)    The court may, on its own initiative or upon the request of any party, change the track assignment of any case at any time.

(d)    Nothing in this Plan is intended to abrogate or limit a judicial officer's authority in any case pending before that judicial officer, to direct pretrial and trial proceedings that are more stringent than those of the Plan and that are designed to accomplish cost and delay reduction.

(e)    Nothing in this Plan is intended to supersede Local Civil Rules 40.1 and 72.1, or the procedure for random assignment of Habeas Corpus and Social Security cases referred to magistrate judges of the court.

### SPECIAL MANAGEMENT CASE ASSIGNMENTS
### (See §1.02 (e) Management Track Definitions of the
### Civil Justice Expense and Delay Reduction Plan)

Special Management cases will usually include that class of cases commonly referred to as "complex litigation" as that term has been used in the Manuals for Complex Litigation. The first manual was prepared in 1969 and the Manual for Complex Litigation Second, MCL 2d was prepared in 1985. This term is intended to include cases that present unusual problems and require extraordinary treatment. See §0.1 of the first manual. Cases may require special or intense management by the court due to one or more of the following factors: (1) large number of parties; (2) large number of claims or defenses; (3) complex factual issues; (4) large volume of evidence; (5) problems locating or preserving evidence; (6) extensive discovery; (7) exceptionally long time needed to prepare for disposition; (8) decision needed within an exceptionally short time; and (9) need to decide preliminary issues before final disposition. It may include two or more related cases. Complex litigation typically includes such cases as antitrust cases; cases involving a large number of parties or an unincorporated association of large membership; cases involving requests for injunctive relief affecting the operation of large business entities; patent cases; copyright and trademark cases; common disaster cases such as those arising from aircraft crashes or marine disasters; actions brought by individual stockholders; stockholder's derivative and stockholder's representative actions; class actions or potential class actions; and other civil (and criminal) cases involving unusual multiplicity or complexity of factual issues. See §0.22 of the first Manual for Complex Litigation and Manual for Complex Litigation Second, Chapter 33.


American LegalNet, Inc.
www.FormsWorkFlow.com