**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| **CHRISTINA DONAHUE, *AS ADMINISTRATRIX OF THE ESTATE OF ANGEL MCINTYRE*, ET AL.**<br><br>**v.**<br><br>**BOROUGH OF COLLINGDALE, ET AL.** | **CIVIL ACTION**<br><br>**NO. 22-1695** |
|---|---|

**MEMORANDUM RE: MOTIONS TO DISMISS**

**Baylson, J.** **August 19, 2022**

Defendants have filed a Motion to Dismiss the Complaint in this civil rights/tort case, arising out of a tragic automobile collision, resulting in one death and serious injuries to others. As obvious from the Complaint, the Plaintiffs have not sued the individual who, according to police reports and other evidence, was driving the car recklessly, but have made allegations against various police officers and their employers who were allegedly legally responsible for the Plaintiffs' injuries, alleging violation of civil rights laws and protections.

## I. Alleged Facts

At approximately 12:40am on July 16, 2020, Angel McIntyre, Kristyanna Dellavecchia (Angel's sister), Matthew Munafo, and Christopher Campetti drove from Hog Island, where they had been spending the evening, to a nearby Wawa. Compl. (ECF 1) ¶ 14. Upon departing the Wawa to return to their residences, Angel rode in Matthew's vehicle and Kristyanna rode in Christopher's vehicle. Id. at ¶¶ 15-16.

At approximately 12:45am, Officer Colin Richers was on duty, uniformed in a police cruiser, near MacDade Boulevard and Chester Pike in Collingdale, Pennsylvania. Id. at ¶ 20. At this time, Officer Richers observed a 2002 Ford Escape with a broken left brake light. Id. at ¶ 21. Anthony Jones was driving the Escape and was accompanied by five passengers, including three

children. Id. at ¶¶ 21-24. Officer Richers activated his emergency lights to initiate a traffic stop. Id. at ¶ 25. Jones slowed down but continued driving, crossing into the Borough of Darby, and pulled into a parking lot. Id. at ¶ 26. Officer Richers approached the front driver window, saw the children present, and asked Jones to exit the vehicle. Id. at ¶¶ 27, 29. In response, Jones told Officer Richers that he had children in the car, and he began driving forward. Id. at ¶ 30. At this time, Officer Jake Lyons and Officer Dante Lynch arrived on scene in marked police vehicles. Id. at ¶ 31.

As Jones drove out of the parking lot, his vehicle hit the front end of Officer Lyons' vehicle before entering westbound on MacDade Boulevard. Id. at ¶ 32. Officer Lynch, who was aware of children in the Escape, followed the Escape with lights and sirens activated. Id. at ¶ 34. The Escape accelerated to a high rate of speed, and Officers Richers and Lyons, as well as John Does 1-10, joined Officer Lynch in a high-speed pursuit. Id. at ¶¶ 35-36.

Jones drove the Escape approximately one (1) mile, exceeding eighty (80) miles per hour, and ran a red light at the intersection of MacDade Boulevard and Felton Avenue in Darby. Id. at ¶ 41. This portion of MacDade Boulevard was a mixed-use residential and commercial area with a speed limit of 25 miles per hour. Id. at ¶ 44. The pursuit continued another mile, at which point Jones ran a red light at the intersection of MacDade Boulevard and West Oak Lane in Glenolden. Id. at ¶ 46. At approximately 12:58am, the escape drove through the intersection and crashed into the front passenger side of the vehicle in which Matthew and Angel were traveling. Id. at ¶¶ 47-48. A forensic crash unit concluded the Escape was traveling between eighty-four (84) and ninety-four (94) miles per hour at the moment of impact. Id. at ¶ 49.

Angel, who was sitting in the front passenger seat, died at the scene. Id. at ¶ 51. Matthew was ejected fifty (50) feet onto pavement and transferred to Chester Crozer Hospital in grave

condition. Id.at ¶¶ 48, 52. He suffered multiple injuries and complications, including a septum pellucidum hemorrhage, left skull base fracture, left sphenoid sinus fracture, right temporal bone fracture extending into temporomandibular joint, right clavicle fracture, right hemothorax, bilateral pulmonary contusions, a diffuse axonal injury of the brain, and abrasions and scarring all over his body. Id. at ¶ 53.

Kristyanna and Christopher, whose vehicle was directly behind Matthew's at the time of the crash, both witnessed the collision. Id. at ¶¶ 58-60. Kristyanna suffers from nightmares, anxiety, post-traumatic stress disorder, headaches, and other physical and mental conditions as a result. Id. at ¶¶ 62-64.

## II. Procedural History

Plaintiffs Christina Donahue, as Administratrix of the Estate of Angel McIntyre, deceased, Matthew Munafo, and Kristyanna Dellavecchia filed the instant action on May 3, 2022, naming the following as Defendants: the Borough of Collingdale; the Borough of Darby; Officer Richers, individually and as a police officer for Collingdale Police Department; Officer Lynch, individually and as a police officer for the Darby Police Department; Officer Lyons, individually and as a police officer for the Darby Police Department; and John Does 1-10, individually and as police officers for the Collingdale and Darby Police Departments.

Collingdale and Officers Richers (collectively, "Collingdale Defendants") moved to dismiss on May 19, 2022 (ECF 5), and Darby, as well as Officer Lyons and Lynch (collectively, "Darby Defendants") moved to dismiss on May 27, 2022 (ECF 8). Both sets of Defendants moved to dismiss pursuant to Rule 12(b)(6) and, in the alternative, moved to strike certain portions of the Complaint pursuant to Rule 12(f) in order to comply with Rule 8. Plaintiffs responded on June 2, 2022 (ECF 9) and June 10, 2022 (ECF 12), and they filed a supplemental response on June 13,

2022 (ECF 14). Defendants replied to the Collingdale Defendants' Motion on June 9, 2022 (ECF 11) and filed a reply to the supplemental response on June 20, 2022 (ECF 15).

## III. Legal Standard

### A. Rule 12(b)(6)

In considering a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts all factual allegations as true and views them in a light most favorable to the plaintiff. Doe v. Univ. of the Scis., 961 F.3d 203, 208 (3d Cir. 2020). To survive this motion, a plaintiff must include sufficient facts in the complaint that, accepted as true, "state a claim for relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Any legal claims asserted must be supported by these factual allegations. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A complaint is insufficient if it suggests only the "mere possibility of misconduct" or is a "[t]hreadbare recital[] of the elements of a cause of action, supported by mere conclusory statements." Iqbal, 556 U.S. at 678-79 (citing Twombly, 550 U.S. at 555).

### B. Rule 12(f)

Under Rule 12(f), a court "may strike from a pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Generally, a Rule 12(f) motion to strike is disfavored. United States v. Viola, No. 02-9014, 2003 WL 21545108, at *3 (E.D. Pa. July 7, 2003) (Kelly, J.). "An allegation is impertinent or immaterial if it ha[s] no possible relationship to the controversy . . . and scandalous if it reflect[s] cruelly upon the [other party's] moral character, use[s] repulsive language, or detract[s] from the dignity of the court." Lawrence v. City of Bethlehem, No. 97-1824, 1998 WL 964214, at *4 (E.D. Pa. Oct. 30, 1998) (Gawthrop, J.). They are "often not granted if there is an absence of a showing of prejudice to the moving party." Id.

**C. Rule 8**

Rule 8 requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief" in which "[e]ach allegation must be simple, concise, and direct." Fed. R. Civ. P. 8. "Taken together, Rules 8(a) and 8(d)(1) underscore the emphasis placed on clarity and brevity by the federal pleading rules." Folk v. Bureau of Prisons, No. 21-1543, 2021 WL 3521143, at *3 (3d Cir. Aug. 11, 2021) (NPO) (internal quotations and citation omitted). This requirement is meant to "give the adverse party fair notice of the claim asserted" but not place "an unjustified burden on the court and the part[ies] . . . to select the relevant material from a mass of verbiage." Id. (internal quotations omitted).

**IV. Parties Arguments**

**A. Fourteenth Amendment Substantive Due Process Claim (Count I)**

Plaintiffs assert a state-created danger theory to establish liability under the Fourteenth Amendment pursuant to § 1983. "That doctrine embodies the principle that the government has an obligation under the Fourteenth Amendment's Due Process Clause to protect individuals against dangers that the government itself creates." Sauers v. Borough of Nesquehoning, 905 F.3d 711, 717 (3d Cir. 2018). Plaintiffs are required to plead four elements to state a claim under this theory: (1) "[t]he harm ultimately caused was foreseeable and fairly direct"; (2) "a state actor acted with a degree of culpability that shocks the conscience"; (3) "a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general"; and (4) "a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all." Id.

With respect to the second element, courts classify incidents into three categories depending on the amount of time an officer has to make a decision to assess whether their behavior rises to a level that "shocks the conscience." Id. The first category—a hyper pressurized environment—requires showing an intent to cause harm. Id. The second category—hurried deliberation—requires demonstrating a conscious disregard of a great risk of serious harm. Id. The third category—unhurried judgements with time for careful deliberation—requires evidence of deliberate indifference. Id.

The Collingdale Defendants suggest that Plaintiffs' allegations related to the occupants of the fleeing vehicle are irrelevant to Plaintiffs' Fourteenth Amendment claim because they are not parties to the lawsuit. Collingdale Mot. 8. They argue that knowledge of children present in the fleeing vehicle is not sufficient to constitute a state created danger such that the officers and municipality could be held liable for the collision, as the Plaintiff suggests. Collingdale Reply Br. 2-3. Defendants also maintain that there are no alleged facts that indicate that Officer Richers was operating his car in a reckless manner that caused the collision. Collingdale Mot. 10.

Plaintiffs argue that Officer Richers' action should be measured under the "hurried deliberation" analysis. Resp. to Collingdale Mot. 10. Plaintiffs reason that the facts alleged—"a 90 mile-per-hour pursuit, at night, of a vehicle containing an unrestrained child and infant, on a road with 25 mile-per-hour speed limit, over traffic offenses"—"reveal the conscious disregard of a great risk of serious harm and thus are sufficient to . . . shock the conscience." Id. at 10-11. Plaintiffs further contend that Officer Richers' actions meet the heightened intent-to-harm standard, pointing to the allegations that Officer Richers continued a "needless, high-speed pursuit for no legitimate purpose." Id. at 11.

Plaintiffs stipulate to the dismissal of the § 1983 claims against Officer Richers in his official capacity to the extent that it is redundant of the Monell claim against the Borough of Collingdale. See Kentucky v. Graham, 473 U.S. 159, 166 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. . . . It is not a suit against the official personally, for the real party in interest is the entity.") (emphasis and internal citation omitted); see also Resp. to Collingdale Mot. 16; Collingdale Mot. 10-11.

**B. Monell Claim (Count II)**

A municipality as an entity may be sued where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Monell v. Dept. of Social Servs. of City of New York, 436 U.S. 658, 690 (1978). Absent "an unconstitutional policy, a municipality's failure to train its employees and officers can create an actionable violation of a party's constitutional rights under § 1983." Reitz v. Cnty. of Bucks, 125 F.3d 139, 145 (3d Cir. 1997). Liability under a failure-to-train theory requires showing that the absence of training is indicative of "deliberate indifference to the rights of persons with whom the [municipal employees] come into contact." Id. at 145. "The focus in this determination is on the adequacy of the training program in relation to the tasks the particular officers must perform and the connection between the identified deficiency in the municipality's training program and the ultimate injury." Id. at 145. The plaintiff must show "that the training deficiency actually caused the injury." Id.

Defendants argue that Plaintiffs' allegations as to municipal liability are conclusory and speculative. See Collingdale Mot. 15-17; Darby Mot. 17-18. Plaintiffs assert that they are entitled to discovery as to whether Defendants have established policies or practices that violate the relevant laws. See, e.g., Resp. to Collingdale Mot. 19-20.

**C. State Law Claims (Counts III – X)**

Pursuant to the Political Subdivision Tort Claims Act ("Tort Claims Act"), 42 Pa. C.S.A. § 8541 et seq., "no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." 42 Pa. C.S.A. § 8541. However, the statute carves out certain exceptions to immunity such that a local agency can be held liable. See 42 Pa. C.S.A. § 8542(a)-(b).

The motor vehicle liability exception provides that negligent operation of a motor vehicle would not be protected by official immunity, unless "the plaintiff was, during the course of the alleged negligence, in flight or fleeing apprehension or resisting arrest by a police officer or knowingly aided a group, one or more of whose members were in flight or fleeing apprehension or resisting arrest by a police officer." 42 Pa. C.S.A. § 8542(b)(1). Under Pennsylvania law, "operation of a vehicle reflects a continuum of activity," constituting "'a series of decisions and actions, taken together, which transport the individual from one place to another.'" Williams v. City of Phila. Off. of Sheriff, No. 17-2697, 2020 WL 315594, at *10 (E.D. Pa. Jan. 21, 2020) (Surrick, J.) (quoting Balentine v. Chester Water Auth., 191 A.3d 799, 810 (Pa. 2018)). These actions and decisions include "where and whether to park, where and whether to turn, whether to engage brake lights, whether to use appropriate signals, whether to turn lights on or off, and the like[.]" Id.

The statute also provides an exception for an employee exhibiting willful misconduct, where "the employee does not enjoy . . . immunity if 'it is judicially determined that the act of the employee caused the injury and that such act constituted a crime, actual fraud, actual malice or willful misconduct." M.U. v. Downingtown High Sch. East, 103 F. Supp. 3d 612, 630 (E.D. Pa. 2015) (Pappert, J.) (quoting 42 Pa. C.S.A. § 8550); see also Sullivan v. Warminster Twp., 765 F.

Supp. 2d 687, 707 (E.D. Pa. 2011) (Surrick, J.). In such circumstance, "[w]illful misconduct . . . does not provide an exception to the local agency's immunity," such that if the employee engaged in willful misconduct, he could be individually liable, but that liability would not then extend to the municipality. M.U., 103 F. Supp. 3d at 630. "'Willful misconduct' is a 'demanding level of fault,'" Sullivan, 765 F. Supp. 2d at 707 (quoting Sanford v. Stiles, 456 F.3d 298, 315 (3d Cir. 2006)), and, in this context, carries the same meaning as the term "intentional tort," see Bright v. Westmoreland Cnty., 443 F.3d 276, 287 (3d Cir. 2006). "The conduct of a police officer will only constitute willful misconduct if the officer committed misconduct which the perpetrator recognized as misconduct and which was carried out with the intention of achieving exactly that wrongful purpose." Sullivan, 765 F. Supp. 2d at 707 (internal quotations omitted).

Defendants generally argue that Plaintiffs state law claims are unrecognized, barred by immunity, or otherwise unsupported by conclusory or speculative facts. See, e.g., Collingdale Mot. 17, 23; Darby Mot. 6-12. Plaintiffs respond that immunity does not bar their state law claims and the Complaint contains sufficient facts to survive a Rule 12(b)(6) challenge and warrant discovery. See, e.g., Resp. to Darby Mot. 21-26.

**D. Qualified Immunity**

"The doctrine of qualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Peroza-Benitez v. Smith, 994 F.3d 157, 165 (3d Cir. 2021) (quoting Mullenix v. Luna, 577 U.S. 7, 11 (2015) (per curiam)). To determine whether a police officer is entitled to qualified immunity, courts are required to conduct a two-prong inquiry. Id. The first prong, a constitutional inquiry, requires the Court to ask: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional

right?" Id. (quoting Davenport v. Borough of Homestead, 870 F.3d 273, 280 (3d Cir. 2017)). The second prong requires the Court to consider "whether the right was clearly established, such that 'it would [have been] clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" Id. (citing Lamont v. New Jersey, 637 F.3d 177, 182 (3d Cir. 2011)).

Defendants generally argue that the officers are entitled to qualified immunity because there is no constitutional violation, and, even if there was, it was not clearly established. See Collingdale Mot.11-13; Darby Mot. 18-21. Defendants contend Plaintiffs do not allege that the police officers had the requisite intent to cause harm unrelated to the legitimate object of arrest, as required by City of Sacramento v. Lewis, 523 U.S. 833 (1998). See Collingdale Mot. 9; Darby Mot. 21. Plaintiffs counter the officers' conscious disregard of the great risk of harm is sufficient to defeat any entitlement of the police officers to qualified immunity, and that Plaintiffs have plead sufficient facts showing the police officers violated their constitutional rights, and that those rights were clearly established at the time of the accident. See, e.g., Resp. to Collingdale Mot. 15; Resp. to Darby Mot. 15-16.

**E. Motion to Strike under Rule 12(f); Violations of Rule 8**

Defendants argue that certain paragraphs should be stricken from the Complaint on the grounds that they contain unrelated allegations about the children in Jones' vehicle and/or or specific reports on vehicle pursuits or statistics. See Collingdale Br. 5. They also argue that several paragraphs of the Complaint contain no facts, and merely offer opinions and conclusions of law. See id. at 5-6. Defendants also suggest that the Complaint violates Rule 8 as "redundant, conclusory, and inclu[sive] of personal opinions about the Defendants' alleged knowledge and motivations and quote extraneous matter that is inappropriate to the case." Id. Plaintiffs respond that the Complaint contains no "redundant, immaterial, impertinent, or scandalous matter" and

otherwise causes no prejudice to Defendants.  See Resp. to Collingdale Mot. 26-29.  As to Defendants' Rule 8 arguments, Plaintiffs reason that the Complaint is concise considering the complexity of the matter.  Id. at 30.

## V.   Analysis

Having reviewed the allegations in detail, and the relevant case law, although Plaintiffs may have a heavy burden of proving their claims against the police officers who were engaged in the pursuit of Jones, they have stated claims under relevant legal principles and have satisfied the Iqbal/Twombly standard.  Additionally, the Court rejects Defendants' Rule 12(f) and Rule 8 arguments that there are, basically, "too many facts" as legally insufficient to warrant dismissal or even to require an amendment of the Complaint.

The parties will embark upon discovery and Defendants may resume their legal arguments at the close of discovery by a motion for summary judgment.

The Court urges the parties to conduct discovery that is fair but comprehensive in seeking documents and taking depositions that reflect the terrible tragedy of what happened on the night in question.

A Rule 16 pretrial conference will be scheduled.  An appropriate Order follows.