## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHRISTINA DONAHUE, AS ADMINISTRATRIX | : | |
| OF THE ESTATE OF ANGEL MCINTYRE, | : | |
| DECEASED, MATTHEW MUNAFO, AND | : | |
| KRISTYANNA DELLAVECCHIA | : | No. 22-1695 |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| BOROUGH OF COLLINGDALE, BOROUGH OF | : | |
| DARBY, BOROUGH OF COLLINGDALE POLICE | : | |
| OFFICER COLIN RICHERS, INDIVIDUALLY | : | |
| AND AS A POLICE OFFICER FOR COLLINGDALE | : | |
| POLICE DEPARTMENT, BOROUGH OF DARBY | : | |
| POLICE OFFICER DANTE LYNCH, | : | |
| INDIVIDUALLY AND AS A POLICE OFFICER FOR | : | |
| THE DARBY POLICE DEPARTMENT, BOROUGH | : | |
| OF DARBY POLICE OFFICER JAKE LYONS, | : | |
| INDIVIDUALLY AND AS A POLICE OFFICER FOR | : | |
| THE DARBY POLICE DEPARTMENT, AND JOHN | : | |
| DOES 1-10, INDIVIDUALLY AND AS POLICE | : | |
| OFFICERS FOR THE COLLINGDALE AND DARBY | : | |
| BOROUGHS POLICE DEPARTMENTS | : | |
| Defendants. | : | |

## ORDER

AND NOW, this        day of                    , 2023, upon consideration of the

Motion for Summary Judgment of the Borough of Collingdale and Officer Colin Richers and

Plaintiffs' response thereto, it is hereby **ORDERED** that Defendants' Motion is **GRANTED** and

all claims against Defendants, Borough of Collingdale and Officer Colin Richers, are dismissed

with prejudice.

**BY THE COURT:**

_____

**Baylson, J**

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CHRISTINA DONAHUE, AS ADMINISTRATRIX** | : | |
| **OF THE ESTATE OF ANGEL MCINTYRE,** | : | |
| **DECEASED, MATTHEW MUNAFO, AND** | : | |
| **KRISTYANNA DELLAVECCHIA** | : | **No. 22-1695** |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **BOROUGH OF COLLINGDALE, BOROUGH OF** | : | |
| **DARBY, BOROUGH OF COLLINGDALE POLICE** ` | : | |
| **OFFICER COLIN RICHERS, INDIVIDUALLY** | : | |
| **AND AS A POLICE OFFICER FOR COLLINGDALE** | : | |
| **POLICE DEPARTMENT, BOROUGH OF DARBY** | : | |
| **POLICE OFFICER DANTE LYNCH,** | : | |
| **INDIVIDUALLY AND AS A POLICE OFFICER FOR** | : | |
| **THE DARBY POLICE DEPARTMENT, BOROUGH** | : | |
| **OF DARBY POLICE OFFICER JAKE LYONS,** | : | |
| **INDIVIDUALLY AND AS A POLICE OFFICER FOR** | : | |
| **THE DARBY POLICE DEPARTMENT, AND JOHN** | : | |
| **DOES 1-10, INDIVIDUALLY AND AS POLICE** | : | |
| **OFFICERS FOR THE COLLINGDALE AND DARBY** | : | |
| **BOROUGHS POLICE DEPARTMENTS** | : | |
| **Defendants.** | : | |

---

**DEFENDANTS, BOROUGH OF COLLINGDALE AND OFFICER COLIN RICHERS'
MOTION FOR SUMMARY JUDGMENT PURSUANT TO RULE 56**

Defendants, Borough of Collingdale and Officer Colin Richers, by and through their counsel, hereby file this Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56.

Pursuant to Local Rule 7.1(c) Defendants incorporate by reference the attached Statement of Undisputed Facts and Memorandum of Law as though fully set forth at length.

Oral Argument on the Motion for Summary Judgment is respectfully requested.

**Wherefore,** the Movants respectfully request that this Honorable Court grant their Motion for Summary Judgment.

Respectfully submitted,

**_/s/ Suzanne McDonough_**

**Suzanne McDonough, Esquire**
**Holsten & Associates**
Attorney I.D. No.: 29394
115 N. Jackson Street
Media, PA 19063
(610) 566-7183
Attorneys for Defendants, Borough of Collingdale
and Officer Colin Richers

Date: October 30, 2023

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CHRISTINA DONAHUE, AS ADMINISTRATRIX** | : | |
| **OF THE ESTATE OF ANGEL MCINTYRE,** | : | |
| **DECEASED, MATTHEW MUNAFO, AND** | : | |
| **KRISTYANNA DELLAVECCHIA** | : | **No. 22-1695** |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **BOROUGH OF COLLINGDALE, BOROUGH OF** | : | |
| **DARBY, BOROUGH OF COLLINGDALE POLICE `** | : | |
| **OFFICER COLIN RICHERS, INDIVIDUALLY** | : | |
| **AND AS A POLICE OFFICER FOR COLLINGDALE** | : | |
| **POLICE DEPARTMENT, BOROUGH OF DARBY** | : | |
| **POLICE OFFICER DANTE LYNCH,** | : | |
| **INDIVIDUALLY AND AS A POLICE OFFICER FOR** | : | |
| **THE DARBY POLICE DEPARTMENT, BOROUGH** | : | |
| **OF DARBY POLICE OFFICER JAKE LYONS,** | : | |
| **INDIVIDUALLY AND AS A POLICE OFFICER FOR** | : | |
| **THE DARBY POLICE DEPARTMENT, AND JOHN** | : | |
| **DOES 1-10, INDIVIDUALLY AND AS POLICE** | : | |
| **OFFICERS FOR THE COLLINGDALE AND DARBY** | : | |
| **BOROUGHS POLICE DEPARTMENTS** | : | |
| **Defendants.** | : | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**
**OF DEFENDANTS, BOROUGH OF COLLINGDALE AND**
**OFFICER COLIN RICHERS**

Defendants, Borough of Collingdale and Officer Colin Richers, by and through their

counsel, hereby file this Memorandum of Law in Support of their Motion for Summary

Judgment pursuant to Federal Rule of Civil Procedure 56.

**I.      INTRODUCTION AND PROCEDURAL BACKGROUND**

On May 3, 2022, plaintiffs Christina Donahue, As Administratrix of the Estate of Angel

McIntyre, Deceased, Matthew Munafo and Kristyanna Dellavecchia filed their Complaint

against the Borough of Collingdale, Police Officer Colin Richers, Borough of Darby, Darby

Officer Dante Lynch and Darby Officer Jake Lyons. (Doc. 1). [1]  On May 19, 2022, the Borough

of Collingdale and Richers filed a Motion to dismiss all claims (Doc. 5), and on May 27, 2022,

the Borough of Darby, Lynch and Lyons filed their Motion to Dismiss all claims. (Docket #8).

Following responses by plaintiffs and defendants, this Court entered an Order and filed an

Opinion denying the Motions to Dismiss of defendants. (Doc. 16, 17).  On August 31, 2022, the

Borough of Collingdale and Colin Richers filed an Answer to the Complaint with Affirmative

defenses, including qualified immunity and municipal government immunity for state law

claims.  (Doc. 18).  The Borough of Darby, Lynch and Lyons filed their Answer to the

Complaint with Affirmative defenses, including qualified immunity and immunity from state law

claims. (Doc. 20).

Discovery concluded on September 29, 2023 pursuant to the Court's Amended

Scheduling Order of July 26, 2023. (Doc. 54).  At the close of discovery, plaintiffs have been

unable to produce evidence to substantiate any of the federal or state law claims made in their

Complaint against the Borough or the individual defendant Richers for violations of their federal

Constitutional rights or for the state law claims, and indeed, the defendants have produced

evidence to plaintiffs that defeats all claims made despite the tragic circumstances of this case.

This Motion is timely filed and the matter is ripe for disposition on summary judgment.

## II.   <u>STATEMENT OF FACTS</u>

Defendant incorporates by reference the attached Statement of Material Facts, hereinafter

referred to as (SUMF).

## III.   <u>ARGUMENT</u>

### A.   **LEGAL STANDARD**

Federal Rule of Civil Procedure 56(c) provides for summary judgment where the

---

[1] There were 10 John Doe defendants but at the end of discovery no substitutions were requested or made.

pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-252 (1986).  An issue is genuine only if the evidence is such that a reasonable jury could find for the non-moving party. Id. at 251.  Although the moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of material fact disputes, to successfully oppose the motion for summary judgment, the non-moving party must go beyond the pleadings and show, through affidavits, depositions or admissions, that there is a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The non-moving party cannot defeat summary judgment merely be relying on allegations contained in his or her pleadings or by reasserting those allegations in summary judgment papers. Lujan v. Nat'l Wildlife Fed., 497 U.S. 871, 888 (1990); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Berckeley Inv. Grp., Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006). Rather, "a party opposing summary judgment must present affirmative evidence—whether direct or circumstantial—to defeat summary judgment, and may not rely simply on the assertion that a reasonable jury could discredit the opponent's account." Estate of Smith v. Marasco, 318 F.3d 497, 514 (3d Cir. 2003) (emphasis in original).  The Third Circuit states that "in considering a motion for summary judgment the court should believe uncontradicted testimony unless it is inherently implausible even if the testimony is that of an interested witness." Lauren W. v. DeFlaminis, 480 F.3d 259, 271 (3d Cir. 2007); in accord Volek v. Redevelopment Auth. of Fayette, 24 F.Supp.3d 473, 476 (W.D. Pa 2014) ("The Third Circuit instructs district courts to believe uncontradicted testimony unless it is inherently implausible even if the testimony is that of an interested witness.") (internal quotations omitted).

### A. PLAINTIFFS FAIL TO STATE A CAUSE OF ACTION IN COUNT I AGAINST OFFICER RICHERS FOR A 14TH AMENDMENT SUBSTANTIVE DUE PROCESS VIOLATION UNDER THE THEORY OF A STATE CREATED DANGER

In Count I, Plaintiffs charge Officer Richers in his individual capacity of violating constitutional rights of the Plaintiffs under 42 U.S.C. §1983. Plaintiffs Complaint survived a motion to dismiss because the Court found that it contained enough allegations that, if true, could "shock the conscience." However, now that discovery is complete, it is clear that Officer Richers' police vehicle video captures the entire incident at issue in this lawsuit and demonstrates that contrary to the Complaint, there was no conduct of the Officer that is shocking to the conscience or any deliberately indifferent conduct that could constitute a violation of Plaintiffs' constitutional rights.

Both Richers and the fleeing motorist agree that the initial stop of the motorist was not a pursuit. (SUMF 5,6,8,56-57;85-86). The video of that stop, and the subsequent stop at the McDonald's drive through, illustrate beyond any doubt that when Jones struck the occupied Darby police van occupied by Officer Lyons and then fled from Richers at a high rate of speed from McDonalds onto MacDade Blvd that this is where the pursuit began. Not only was Jones at this point a fleeing felon under 75 P.S. § 3733 a2(iii), he had also committed a misdemeanor under 75 P.S. § 3743 by leaving the scene of an accident involving damage to an attended vehicle. Moreover, because the occupied vehicle was a Police vehicle occupied by Officer Lyons, Jones also was chargeable with aggravated assault on a police officer under 18 P.S.§ 2702 (3) as the conduct in ramming the police vehicle evidenced an attempt to cause bodily injury to a Police Officer regardless of whether any actual bodily injury occurred. Any or all of these crimes justified the pursuit.

In this case, Plaintiffs attempt to craft a rule of law that Officers are vicariously liable for unconscionable behavior of a fleeing motorist and their excessive rate of speed. Specifically, Plaintiffs claim that Richers violated Plaintiffs' substantive due process rights under a "state-created danger" theory of liability.

There was no constitutional violation in this case as it is well settled in Supreme Court precedent that "high-speed chases with no intent to harm suspects physically or to worsen their legal plight do not give rise to liability under the Fourteenth Amendment, redressable by action under §1983." Cnty. of Sacramento v. Lewis, 523 U.S. 833, 854 (1998).  A year later, the Third Circuit similarly held that "[t]he critical factor in determining whether Fourteenth Amendment liability for a high-speed chase may be imposed is whether the officer's conduct can be found to shock the conscience, for which the evidence must show intent to harm the suspect physically."  Davis v. Twp. of Hillside, 190 F.3d 167, 171 (3d Cir. 1999) (emphasis added).

The Third Circuit applies a four-part test for determining whether a plaintiff has raised a viable state-created danger claim, i.e., a municipal entity may be held liable for the constitutional violations of its employees if: (1) the harm suffered was foreseeable and fairly direct; (2) the individual acted with "a degree of culpability that shocks the conscience"; (3) some relationship existed between the government and the plaintiff which made the plaintiff a foreseeable victim, not just a member of the general public; and (4) the affirmative use of authority in some way created the danger or made others more vulnerable than if the government actor had not acted. Johnson v. City of Phila., 975 F.3d 394, 400,403 (3d Cir. 2020) (citing Sauers v. Borough of Nesquehoning, 905 F.3d 711, 717 (3d Cir. 2018).  In this case, the Plaintiffs must demonstrate that the conduct of the Officer was "so egregious, so outrageous that it may fairly be said to

shock the contemporary conscience."  Cty. Of Sacramento v. Lewis, supra. At 847 n. 8 (1998)[2].

Given the circumstances of the "high-speed automobile chase aimed at apprehending a suspected

offender" plaintiffs must show "a purpose to cause harm unrelated to the legitimate object of

arrest." Id. At 836.

     The Court of Appeals for the Third Circuit, applying Lewis, has upheld denials of

substantive due process claims brought by an innocent bystander injured during a police

vehicular pursuit.  Davis v. Township of Hillside, 190 F.3d 167 (3d Cir. 1999); Fagan v. City of

Vineland, 22 F.3d 1296, 1299-1300, 1307-08 (3d Cir. 1994) (en banc)(majority opinion utilizes

the shocks the conscience standard). In Davis, a stolen Acura fled with marked police vehicles in

pursuit and ended with a police car bumped into the rear of the fleeing vehicle where it spun out

of control and struck another vehicle then propelled into plaintiff and seriously injuring him.

The Third Circuit held that the Officers conduct did not shock the conscience reasoning that "the

officers were faced with lawless behavior – light from their investigation for which they were not

to blame. Davis v. Township of Hillside, at 171.  Davis also noted that law enforcement had

done nothing to cause the high-speed driving and that the intent of police was to do their job and

not to cause injury. Id.   The Supreme Court repeatedly has held that the decision to engage in

flight and ignore police warnings to stop causing risk to innocent bystanders' results, not from

the pursuit but from the fleeing suspect intentionally placing himself and others in danger by

unlawfully engaging in reckless flight.  Small v. Lower Paxton Twp., 2023 U.S. Dist. LEXIS

124829; 2023 WL 4631575 (M.D. Pa. 2023)[3].

     At the end of discovery, there is not one scintilla of evidence of record that Officer

Richers had any intent or purpose to cause this unrelated harm, and there are no facts that could

---

[2] The pursuit in Lewis involved 1.3 miles and 70 seconds at 8:30 in the evening and involved the Officer striking the vehicle.
[3] Case dismissed on Motion to Dismiss and appeal filed August, 2023.

support such a theory.  "[T]he level of culpability required to shock the conscience increases as the time state actors have to deliberate decreases." Sanford v. Stiles, 456 F.3d 298, 306 (3d Cir. 2006)). "[A]lthough intent to cause harm must be found in a 'hyperpressurized environment,' where officials are afforded the luxury of a greater degree of deliberation and have time to make 'unhurried judgments,' deliberate indifference is sufficient to support an allegation of culpability." Id. (emphasis in original) (quoting Sanford, 456 F.3d at 306).  ... In between these two extremes lies an intermediate standard: "[W]here the circumstances require a state actor to make something less exigent than a 'split-second' decision but more urgent than an 'unhurried judgment,' i.e., a state actor is required to act 'in a matter of hours or minutes,' a court must consider whether a defendant disregarded a 'great risk of serious harm rather than a substantial risk.'" Id. (quoting Sanford, 456 F.3d at 306); see Johnson v. City of Philadelphia, 975 F.3d 394, 401 (3d Cir. 2020).

In this case, Officer Richers had seconds to consider whether to pursue Jones from McDonalds where Jones had struck the occupied police vehicle and fled at a high rate of speed, clearly endangering all around him. In the split second(s) visible on the video, Officer Richers had no time to deliberate when he entered onto McDade Boulevard behind Officer Lynch from Darby Borough to become the secondary vehicle in the pursuit.  There is no evidence that Officer Richers failed to utilize his lights and sirens, and the video of the entire incident demonstrates beyond any doubt that Officer Richers operated his vehicle properly and in accordance with Pennsylvania law governing emergency vehicle operators and the pursuit policy of the Borough.  He did not operate his vehicle in any way that caused the collision of the criminal fleeing the police with the innocent motorist and passenger in the Munafo vehicle resulting in an unspeakable tragedy. Richers believed that Jones presented a danger to human life

or the potential for serious injury based on the speed from which he took off at striking Officer

Lyons vehicle and then speeding out of McDonalds.  (SUMF 111). The pursuit in this case was

for 90 seconds and 1.5 miles from McDonalds to the site of the accident. (SUMF 262-263)  No

police vehicle or its operation was involved in the accident  (SUMF263-264). When Jones was

1000 feet before the site of the accident at Oak and McDade, the police vehicles were a good

distance behind him and Richers vehicle was estimated to be  1000 feet from the Jones vehicle at

the time of the accident. (SUMF 265-266)  Borrowing from a  sports metaphor, this would be

nearly three football fields away.

In  pursuing  the  fleeing  suspect,  Police  vehicles  operating  with  lights  and  sirens  are

entitled under Pennsylvania law to exercise special privileges to exceed speed limits, disregard

regulations governing direction of movement, proceed through traffic lights and stop signs.  75

P.S. 3105.  Officer Richers exercised  such special privileges during this pursuit with due care

and appropriately under the statute.

Even under the most liberal standard that could conceivably be utilized under the <u>Sauer</u>

decision, plaintiffs do not state a cause of action for an unlawful unconstitutional police chase,

and to hold otherwise would prevent police from ever pursing fleeing suspects should they drive

at high speeds and dangerously away from the police.  Suggesting that Officer Richers had a

duty to terminate the pursuit, become invisible and permit the fleeing felon to barrel down the

highway is not supported by existing law in this jurisdiction based upon the circumstances of this

case.

### B.  <u>OFFICER RICHERS IS ENTITLED TO QUALIFIED IMMUNITY AS A MATTER OF LAW</u>

Viewing all the evidence in this case, Officer Richers did not commit a constitutional

violation, but even assuming that he did, he would be entitled to qualified immunity.  As this

Court enunciated in <u>Grant v. City of Philadelphia</u>, 637 F.Supp.3d 247 (2022), "Police officers, embodying the authority of the state, are liable under § 1983 when they violate someone's constitutional rights, unless they are protected by qualified immunity." <u>Peroza-Benitez,</u> 994 F.3d at 165. "[Q]ualified immunity protects all but the plainly incompetent or those who knowingly violate the law." <u>City of Tahlequah, Oklahoma, et al. v. Bond</u>, ___ U.S. ___, 142 S. Ct. 9, 11, 211 L.Ed.2d 170 (2021) (quoting <u>Malley v. Briggs,</u> 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)). That analysis involves a two-step inquiry: (1) whether, "[t]aken in the light most favorable to the party asserting the injury, ... the facts alleged show the officer's conduct violated a constitutional right," <u>Davenport v. Borough of Homestead,</u> 870 F.3d 273, 280 (3d Cir. 2017), and (2) "whether the right was clearly established, such that it would [have been] clear to a reasonable officer that his conduct was unlawful in the situation he confronted," <u>Lamont v. New Jersey</u>, 637 F.3d 177, 182 (3d Cir. 2011) (internal quotations omitted).

The Court must "define the right allegedly violated at the appropriate level of specificity[.]" <u>Grant v. City of Phila</u>., supra  (quoting <u>Sharp v. Johnson,</u> 669 F.3d 144, 159 (3d Cir. 2012)), with a requirement that framing the right must be "in light of the specific context of the case, not as a broad general proposition." <u>Id.</u> (quoting <u>Saucier v. Katz,</u> 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)).  Also in <u>Grant</u>, this Court indicated that the Court must ask "whether that right was `clearly established' at the time of its alleged violation, i.e., whether the right was `sufficiently clear that a reasonable official would understand that what he is doing violated that right.'" <u>Id.</u> (quoting Saucier, 533 U.S. at 202, 121 S.Ct. 2151). "This is an `objective (albeit fact-specific) question,' where `[an officer]'s subjective beliefs ... are irrelevant.'" <u>Id.</u> (quoting <u>Anderson v. Creighton</u>, 483 U.S. 635, 641, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). That objective test requires the Court to "first look[] to factually analogous Supreme Court

precedent, as well as binding opinions from [the Third Circuit]," and then the Court may consider whether there is a "robust consensus of cases of persuasive authority in the Courts of Appeals." Id. (internal quotation marks and citation omitted). Finally, the Court "may ... take into account district court cases, from within the Third Circuit or elsewhere." Sharp v. Johnson, supra at 165-66.  It is a high bar as this Court cautioned plaintiffs in the Opinion on the Motion to Dismiss and requires that "existing precedent" place the "question beyond debate" so that it is clear that every reasonable official would have understood that what he is doing violates that right.  Anderson v. Creighton, 483 U.S. 635, 640 (1987); Mullenix v. Luna, 577 U.S. 7, 136 S.Ct. 305, 308 (2015).

Under the record facts and applicable law, Officer Richers is entitled to qualified immunity for any mistakes in judgment or miscalculations that may have been involved in this case even if a constitutional violation were to be found.

The Third Circuit in Sauers v. Borough of Nesquehoning, 905 F.3d 711 (3d Cir. 2018), provided little guidance to Police Officers involved in police pursuits in general, but specifically only addresses situations where there are unhurried decisions and a dangerous pursuit initiated by an Officer, not the suspect, and where the operation of the police vehicle was itself reckless and caused by the police vehicle involved in the accident.  The Court did not, and could not, change the controlling law of Cnty. of Sacramento v. Lewis, 523 U.S. 833, 854 (1998), applicable to this case that requires conscious shocking behavior and an intent to harm on the part of the Officer even when viewed under the Sauers rationale.  [4]

---

[4] In a case similar to Sauers in the 8th Circuit Court of appeals a State Trooper pursued a motorist who he observed travelling at a high rate of speed and without the Trooper activating his lights and sirens.  The Trooper travelled at more than 110 miles an hour for 8 miles ultimately colliding with the vehicle of an innocent motorist, Cassandra Braun, who was tragically killed.  In Braun, the 8th Circuit unlike the 3rd in Sauers found that the Troopers conduct did not amount to "conscience-shocking "behavior and he lacked the requisite intent to harm. Braun v. Burke, 983 F.3d 999, 1001 (8th Cir. 2020); allocator denied by Supreme Court October 4, 2021.

In the Sauers case, an outlier when examining federal appellate decisions, and completely different than the present case, the Sauer offender was not even fleeing from the police at the time of the offensive pursuit at any speed much less at a dangerously high rate of speed.  On the contrary, it was the Officer in Sauers who was inexplicably operating his vehicle at speeds over 100 mph just to try to catch up with a summary offender who was not within his sight and who did not even know that he was being pursued by the Officer, and it was that Officers actual driving and impact with the innocent motorist that was at issue in that case.

In sharp contrast, in this case, unlike in Sauers, the motorist initially stopped but then engaged in bizarre and active flight from the McDonald's parking lot after hitting a police cruiser and fleeing at a high speed onto MacDade Boulevard.  Neither the Collingdale Officer, nor any other, unlike in Sauers, operated a police vehicle in a manner that demonstrated a conscious disregard of a great risk of serious harm, and no police vehicle was involved in the tragic accident in this case.  The facts and situation involved in Sauers are totally inapposite, and no reasonable police officer would have believed that his/her pursuit of a fleeing motorist such as Jones who was operating his vehicle at the dangerous speed was an unlawful pursuit.  In Sauers, the Court stated that the level of culpability required to shock the conscience when an officer has time for hurried deliberation is "a conscious disregard of a great risk of serious harm."  905 F.3d at 717 n.6 (citing Sanford v. Stiles, 456 F.3d 298, 310 (3d Cir. 2006).  In this case, there is no evidence that Officer Richers consciously disregarded such a risk in the moments prior to following the fleeing motorist onto MacDade Boulevard.

Absent existing precedent that places "the statutory or constitutional question beyond debate," James v. N.J. State Police, 957 F.3d 165, 169 (3d Cir. 2020) (citing Dist. of Columbia v. Wesby, 138 S. Ct. 577, 589 (2018)), there can be no finding of liability on the part of the Officer.

Indeed, the right must be defined with a "high 'degree of specificity'" to be clearly established. Wesby, Supra at 590 (quoting Mullenix v. Luna, 577 U.S. 7, 13 (2015) (per curiam)).   The Supreme Court has issued several decisions in the past few years warning courts against defining clearly established law at a high level of generality.   Brosseau v. Haugen, 543 U.S. 194 (2004); Mullenix v. Luna, 136 S. Ct. 305 (2015).   Thus, only controlling precedent in the relevant jurisdiction can place a constitutional question beyond debate.   Wilson v. Layne, 526 U.S. 603, 617 (1999).   In this case, conscious shocking behavior and an intent to harm must be manifested, and no facts in this case would support denying qualified immunity to Officer Richers.

C. **MUNICIPAL LIABILITY CLAIMS – COUNT II**

There is no viable municipal liability claim in this case cognizable at the conclusion of discovery under any theory set forth by plaintiffs.

**1. Pursuit policy – General Order 4.2.0**

The pursuit policy for the Borough of Collingdale adopted by Borough Council in October of 2019 passes constitutional muster, is in the nature of a restrictive pursuit policy, and does not allow for pursuits for summary offenses. (SUMF 223; Exhibit K.)   Plaintiffs' Complaint theorize that the Borough either did not have an adequate or proper pursuit policy or, if it did, that it was disregarded and violations condoned.   At the close of discovery, plaintiffs must concede that this is not the case.   Discovery established  that the pursuit policy in Collingdale was Amended in 2019 under the new Chief of Police, Kenneth Felker, and put into effect in October of 2019 after being adopted by Borough Council approximately nine months before the subject accident. The pursuit policy passes constitutional muster on its face and could not be said to have been a causative factor in the tragic accident.   Jewell v. Ridley Township, 497 Fed.

Appx. 182 (3d Cir. 2012).   There is no evidence of record that violations of the policy were disregarded and violations condoned.

### 2.   Municipal policy or custom

A municipality may only be held liable under § 1983 if the plaintiff identifies a municipal "policy" or "custom" that was the "moving force" behind the injury. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978); see also Bd. of Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 400, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997).   Here, the pursuit policy as written or applied was not a moving force behind the injury.   Indeed, there would be no cause of action even with proof that a pursuit policy is not followed.   Koreny v. Smith, 2018 U.S. Dist. LEXIS 34841, 2018 WL 1141513 (W.D. Pa. 2018) (allegations of policies not being following in a police chase does not state a municipal liability claim as a matter of law.), Conti, J.

Knowledge and acquiescence by policymakers is required for lodging a Monell claim based on policy or custom, and requires proof to "link the alleged offending policies or customs to anyone . . . who had policy-making authority." Rees v. Office of Children and Youth, 473 Fed. App'x 139, 143 (3d Cir. 2012).   As a matter of Pennsylvania state law, a Borough Police Chief is not a final policymaker. Kocher v. Larksville Borough, 926 F. Supp. 2d 579, 606 & n.8 (M.D. Pa. 2013); see also 8 Pa. Cons. Stat. Ann. § 1123.1 (providing that a borough "mayor shall have full charge and control of the chief of police and the police force," and "shall direct the time during which, the place where and the manner in which the chief of police and the police force perform the duties of their rank"); Hoffman v. Borough of Macungie, 63 A.3d 461, 469-70 (Pa. Cmwlth. 2013).   Chief Felker is supervised by the Mayor pursuant to the Borough Code, drafted the policy at issue in 2019 after he became Police Chief for submission to the Solicitor, union

and Borough Council for their consideration and approval in October of 2019. (SUMF 216,217, 221).  As a matter of law, he is not a policymaker for the Borough and Courts are barred from "assuming that municipal policymaking authority lies somewhere other than where the applicable law purports to put it." City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988).

While there is case precedent suggesting that a plaintiff may utilize "multiple incidents" implicating a particular unconstitutional custom for a custom and practice case. See Harris v. City of Philadelphia, 171 F. Supp.3d 395, 401-02 (E.D. Pa. 2016) (finding a custom where there were "multiple incidents" of police officers using reckless and excessive force in their use of batons), there is no such evidence of unconstitutional customs in this case.  However, in the City of Philadelphia cases, plaintiffs have utilized DOJ investigative reports to further a claim of custom and practice. Thomas v. Cumberland Cty. , 749 F.3d 217, 225 (3d Cir.2014); See also Berry v. City of Philadelphia , 188 F.Supp.3d 464, 2016 WL 2939502 (E.D.Pa. May 20, 2016) (denying the City's motion for summary judgment, concluding that the DOJ Report presented sufficient evidence such that a reasonable jury could find that the City had a custom of failing to train its police officers on the use of deadly force).  Here plaintiff is unable to demonstrate such investigations or findings.

Plaintiff could also attempt to establish custom evidence by conducting a statistical analysis of lawsuits against a municipality for a violation of a particular constitutional right. See Simpson v. Ferry, 202 F. Supp. 3d 444, 452 (E.D. Pa. 2016) (permitting a Monell claim to proceed following a review of the plaintiff's statistical analysis about the number of lawsuits brought against the Philadelphia Police Department for use of excessive force).  At the end of discovery in this case, plaintiffs are unable to site to even one prior lawsuit or even a prior claim concerning a police pursuit.  Even where there is evidence that there have

14

been dozens of past pursuits even at high speeds, this could not demonstrate unconstitutionality

of any pursuit.  See Black v. Twp. Of S. Orange, 2014 U.S. LEXIS 134042; 2014 WL 4755506

(D.N.J. 2014) (60 vehicle pursuits with 17 accidents and injuries between 2008 and 2009). [5]

The Black Court  held that the fact that Orange Police Department officers were involved in sixty

vehicular pursuits resulting in seventeen accidents and injuries to innocent citizens in one year is

insufficient for a claim to proceed where there is no evidence that any of these pursuits/accidents

were the result of a constitutional violation on the part of the officers involved.

### 3.  Failure to train as custom or practice

Failure to train is also another avenue utilized by plaintiffs in an effort to establish

custom or practice.  However, "A pattern of similar constitutional violations by untrained

employees is 'ordinarily necessary' to demonstrate deliberate indifference for ... failure to

train." Connick v. Thompson , 563 U.S. 51, 62, 131 S.Ct. 1350, 1360, 179 L.Ed.2d 417 (2011)

(quoting Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown , 520 U.S. 397, 409, 117 S.Ct.

1382, 137  L.Ed.2d  626 (1997)  ).  The  Third  Circuit  requires  a  plaintiff  to  show  that  a

municipality has "contemporaneous knowledge of the offending incident or knowledge of a prior

pattern of similar incidents and circumstances under which the supervisor's actions or inaction

could  be  found  to  have  communicated  a  message  of  approval  to  the  offending

subordinate." Rosembert v. Borough of E. Lansdowne , 2016 WL 161592, at *9 (E.D.Pa. Jan. 14,

---

[5] Under Pennsylvania law a high speed chase as used in the fleeing and eluding statute 75 P.S.
3733(1)2((2)(iii) was not designed to be construed literally and is a term of art in that high speed
pursuits do not necessarily involve extreme speeds.  In fact, a speed of 35 mph has been
considered a high speed under the statute as the felony fleeing and eluding was intended for the
protection of law enforcement personnel and the public from dangerous chases, regardless
of the actual speed employed.  In re R.C.Y., 27 A.23d 227 (Pa. Super. 2011).  Felony eluding by
speeding away at 50 mph and side-swiping a vehicle.  Commonwealth v. Evans., 2014 Pa. Dist.
& Cnty. Dec. LEXIS 56 (Pa. County Court 3-5-14).   .

2016) quoting <u>Montgomery v. De Simone</u> , 159 F.3d 120, 127 (3d Cir. 1998).  Plaintiffs, at the completion of discovery, have been unable to produce any evidence to meet this burden.

Officers Richers and McCauley were both familiar with, and understood, the Collingdale pursuit policy and the factors to be weighed in their decision- making and had been trained on vehicle pursuits at the police academy.  To establish municipal liability under §1983 based on a failure-to-train theory, a plaintiff "must identify a failure to provide specific training that has a causal nexus with [his] injuries and must demonstrate that the absence of that specific training can reasonably be said to reflect a deliberate indifference to whether the alleged constitutional deprivations occurred." <u>Gilles v. Davis</u>, 427 F.3d 197, 207 n.7 (3d Cir. 2005) (quoting <u>Reitz v. Cnty. of Bucks</u>, 125 F.3d 139, 145 (3d Cir. 1997)). "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." <u>Connick</u>, 131 S. Ct. at 1360 (citation omitted). The alleged failure to train must be causally related to the constitutional injury claimed or it is deficient.  *See* <u>Bradshaw v. Twp. of Middleton</u>, 145 F. App'x 763, 768 (3d Cir. 2005) (affirming the dismissal of a §1983 failure-to-train claim where plaintiffs failed to "identify any examples of specific training that the Township failed to provide," and it therefore could not "be said that the need for more or additional training [was] so obvious as to constitute deliberate indifference on the part of the Township"); <u>Pahler v. City of Wilkes-Barre</u>, 31 F. App'x 69, 72 (3d Cir. 2002) (affirming the dismissal of a §1983 failure-to-train claim where the plaintiff "ma[de] no allegation that establishe[d] his injuries were ca[u]sed by the defendants' deliberately indifferent failure to train the City's officers"); See also <u>Grazier ex rel. White v. City of Philadelphia,</u> 328 F.3d 120,125 (3rd Cir. 2003)(failure to train must be a deliberate or conscious choice such that one

16

could call it a policy or custom.  <u>City of Canton</u>, 489 U.S. 1t 388-89; <u>Grazier v. City of Philadelphia</u>, supra at 124.

In <u>Grazier</u>, the Court noted that it would be insufficient to prove that the injury may have been averted if an officer had better or more training.  Rather, the Court noted, it was necessary for liability to be premised upon an *identified deficiency* in the training program closely related to the ultimate injury.  <u>Id</u>. Causation requires more than demonstrating that had employees been better trained or more training was available that it would have reduced the risk of a constitutional injury. <u>Thomas v. Cumberland County,</u> 749 F.3d 217, 226 (3d Cir. 2014) citing <u>Colburn v. Upper Darby Twp.,</u> 946 F.2d 1017, 1130 (3rd Cir. 1991). In <u>Carswell v. Borough of Homestead</u>, 381 F.3d 235, 244 (3d Cir.2004), the Third Circuit held that in a failure to train claim a plaintiff is obligated to identify a municipal policy or custom that amounts to deliberate indifference, which typically requires proof of a pattern of underlying constitutional violations, **and** must also demonstrate that the inadequate training caused a constitutional violation. <u>See</u> <u>also</u> <u>Small v. City of Philadelphia</u> 2007 WL 674629, 9 (E.D.Pa.).  This needs to be a pattern of similar federal constitutional violations in order to demonstrate deliberate indifference  <u>Connick v. Thompson</u>, 563 U.S. 51, 62, 131 S. Ct. 1350 (2011).   There is no factual predicate in this case that would meet this test following completion of discovery.

Even where a plaintiff has been able to present evidence of shortcomings of Officers who may have improperly administered an otherwise sound training program, this is insufficient to state a constitutional claim.  See <u>Simmons v. City of Philadelphia</u>, 947 F.2d 1042, 1060 (3d Cir. 1991) ("[D]eliberately indifferent failure to train is not established by (1) presenting evidence of the shortcomings of an individual; (2) proving that an otherwise sound training program was negligently administered, or (3) showing, without more, that better training would

have enabled an officer to avoid the injury-causing conduct.")  Even with proof of pursuits before 2019 or thereafter and before the accident where accidents or injuries may have occurred would not establish a failure to train without proof that any such accidents were the result of a constitutional violation on the part of the officers involved.  See Black v. Twp. Of S. Orange, 2014 U.S. LEXIS 134042; 2014 WL 4755506 (D.N.J. 2014) (60 vehicle pursuits with 17 accidents and injuries).  Nor could such be assumed to be attributable to a failure to train, supervise or discipline.

In Pennsylvania, all Municipal Police are trained and certified under the Municipal Police Officer Education and Training Commission ("MPOETC").  See 37 Pa. Code §203.11(a)(1)-(11).  This training that requires graduation from an accredited police academy is followed by yearly mandatory training by the Commonwealth Commission. See Id. §203.13(b)(1); Id. §203.13(c)(1); Id. §203.52.  Plaintiffs did not articulate any particular training claimed to be constitutionally required that was lacking in Collingdale.  Even where Officers do not remember details of their training but are generally familiar with the pursuit policy, there is no viable failure to train claim. Jewell v. Ridley Twp., 497 Fed. Appx. 182 (3d Cir. 2012). Moreover, specialized pursuit training is not required in police pursuits beyond that which is provided in the Police Academy.  Fulkerson v. City of Lancaster, 801 F. Supp. 1476 (E.D. 1992).  Providing the Boroughs police pursuit policy to Officers and instructing them to read it is sufficient and cannot be characterized as a failure to train. McNeill v. Borough of Folcroft, 2014 U.S. Dust, Lexis 159531; 2014, 2014 WL 5880125 (E.D. Pa. 2014) Bartle, J.  Even if the municipality could be liable where no Officer is liable in a police pursuit situation where constitutional rights were violated, in this case there is no unconstitutional failure on the part of the municipality and no

18

deliberate indifference that could support such a stand-alone claim as contemplated by <u>Fagan v. City of Vineland</u>, 22 F.3d 1283, 1291-92 (3d Cir. 1994).

Therefore, all federal constitutional claims made by all plaintiffs against Officer Richers and the Borough of Collingdale should be dismissed including that of Kristyanna Dellavecchia who was not involved in the accident but was a relative and bystander.[6]

### D. STATE LAW CLAIMS SHOULD ARE BARRED BY GOVERNMENTAL IMMUNITY – COUNT III AND COUNT IV

**1. Negligence claims**

Under the governing law of the Commonwealth for state law claims, the Political Subdivision Tort Claims Act ("Tort Claims Act"), 42 Pa.C.S. §§8541-8542, a local governmental agency is generally immune from liability in tort for damages caused by its acts or the acts of its officials and employees.  42 Pa.C.S. §8541.  The Legislature has waived this grant of immunity only when two distinct conditions are satisfied: (1) the damages would be recoverable under statutory or common law against a person unprotected by governmental immunity; and (2) the negligent act of the local agency or its employees which caused the injury falls within one of enumerated exceptions to immunity.  42 Pa.C.S. §8542(a).5 *See generally* <u>White v. School District of Philadelphia</u>, 718 A.2d 778, 779 (Pa. 1998).  For purposes of governmental immunity, the term "negligent acts" does not include "acts or conduct which constitutes a crime, actual fraud, actual malice or willful misconduct."  42 Pa.C.S. §8542(a)(2). [7]

---

[6] Kristyanna Dellavecchia asserts federal constitutional claims in Count I and II but has no viable claims as she was not involved in the accident and even though she is the sister of the decedent, her constitutional rights were not violated and she is unable to bring a cause of action on the basis of another person's rights.  <u>O;Malley v. Brierly</u>, 477 F.2d785 (3d Cir. 1973)

[7]  The recognized exceptions are following: (1) vehicle liability; (2) the care, custody, or control of personal property; (3) the care, custody, or control of real property in the possession of the local agency; (4) trees, traffic controls and street lighting; (5) utility service facilities; (6) streets; (7) sidewalks; and (8) the care, custody, or control of animals. 42 Pa.C.S. §8542(b)(1)-(8).

The allegations state law claims of negligence by all plaintiffs involve the pursuit itself by Officer Richers and an alleged municipal liability claim as well.  As set forth in the Complaint in paragraph 107 as to Richers, plaintiffs claim that he:

a. Engaging in a high-speed pursuit when the Police Officer Defendants knew or should have known that the potential for serious bodily injury outweighed any government interest;

b. Initiating the pursuit when the Police Officer Defendants knew or should have known that the potential for harm, danger, and/or serious bodily injury outweighed the seriousness of the traffic offenses that Officer Richers witnessed Jones commit;

c. Failing to consider roadway conditions and time of day when initiating and continuing the pursuit;

d. Failing to recognize and use alternative means to apprehend Jones;

e. Failing to appropriately coordinate the apprehension of Jones amongst all Police Officer Defendants and with other members of the Municipal Defendants' respective police departments;

f. Failing to appropriately coordinate, initiate, continue, and/or terminate an interjurisdictional pursuit;

g. Failing to take reasonable action to increase the likelihood that MacDade Boulevard and any intersecting roads would be clear of traffic in the area of the pursuit;

h. Failing to keep a proper lookout on the roadway for potential hazards to the vehicles that the Police Officer Defendants operated and to the subject of their pursuit;

i. Driving at excessive speeds and by continuing the pursuit which encouraged Jones to continue fleeing in his respective vehicle (thereby prolonging the pursuit);

J. Failing to use all auditory and visual alert systems, including vehicle horns, at the Police Officer Defendants' disposal to alert other vehicles nearby, including the vehicles that Plaintiffs were travelling in, of the pursuit;

k. Failing to terminate the pursuit when the Police Officer Defendants knew or should have known that the potential for serious bodily injury outweighed any government interest;

1. Failing to timely communicate facts about the nature and location of the pursuit to the Police Officer Defendants' respective police departments and supervising

officers;

m.  Failing to follow, adhere to, and apply police department policies and guidelines regarding the initiation, continuance, and termination of a pursuit and safety during a pursuit;

n.  Failing to understand and/or follow the commands of the Police Officer Defendants' respective supervising officers concerning the pursuit and apprehension of Jones;

o.  Operating their police motor vehicles without due regard to the rights, safety, and position of surrounding vehicles, like those that Plaintiffs were travelling in; and,

p.  Violating the statutes of the Commonwealth of Pennsylvania governing the operation of motor vehicles on streets and highways, specifically, 75 Pa. C.S. §§ 3301, *et seq.,* and 3716.

At the end of discovery, it is clear that plaintiffs' claims have no support in the evidentiary record.  All of the negligence claims in this case involve negligent decision making and none involve the operation of a motor vehicle or negligence operation outside of the privileges extended to Emergency Vehicle Operators in Pennsylvania.  There is no averment that Officer Richers was not using lights and sirens, that he did not have his patrol vehicle under control or that he used any type of police maneuver to cause an accident or that he lacked permission to pursue the offender.  There is also no evidence that he violated any local or state law or the policies or directives of the Borough. Jewell v. Ridley Twp., 497 Fed. Appx. 182 (3d Cir. 2012), (Affirming summary judgment for Ridley Township on state negligence claim finding that the pursuit was appropriate and Officers were not negligent despite catastrophic injury to an innocent automobile passenger injured by the fleeing offender's vehicle.)  Similarly, in Marcelle v. City of Allentown, 2010 U.S. Dist Lexis 31649, at *3738 (E.D. Pa. March 31, 2010) (granting summary judgment to police officer on a state law negligence claim where his conduct during pursuit complied with 75 P.S. 3105.) Therefore, Officer Richers is immune from this negligence action.

21

These same allegations against the Officer are made against the municipality in Count V (vicarious liability) which is not a separate cause of action and fails for the same reasons. The Political Subdivision Tort Claims Act does not permit claims for municipal liability akin to Monell type liability claims such as failures or deficiencies in policies, practices, training and supervision and such fail to state a cause of action against the governmental entity as a matter of law. Pennsylvania appellate courts have consistently rejected arguments that claims involving negligent supervision, failure to supervise or negligent policies and procedures fall within any exception to local government immunity. See Mascaro v. Youth Study Ctr., 514 Pa. 351, 523 A.2d 1118 (1987); Farber v. Pennsbury Sch. Dist., 131 Pa. Commw. 642, 571 A.2d 546 (1990).

Further, Richers would be entitled to the defense of official immunity from suit because his actions were within the course and scope of his employment as a Police Officer. The Tort Claims Act grants employee's immunity from suit for their official acts. See 42 Pa. C.S. § 8546.

§ 8546. Defense of official immunity provides:

In any action brought against an employee of a local agency for damages on account of an injury to a person or property based upon claims arising from, or reasonably related to, the office or the performance of the duties of the employee, the employee may assert on his own behalf, or the local agency may assert on his behalf:
(1) Defenses which are available at common law to the employee.
(2) The defense that the conduct of the employee which gave rise to the claim was authorized or required by law, or that he in good faith reasonably believed the conduct was authorized or required by law.
(3) The defense that the act of the employee which gave rise to the claim was within the policymaking discretion granted to the employee by law. For purposes of this subsection, all acts of members of the governing body of a local agency or of the chief executive officer thereof are deemed to be within the policymaking discretion granted to such person by law.

The only exception to official immunity would be in §8550 of the Judicial Code governing actions where willful misconduct of a local agency's employee is asserted. That section states:

22

In any action against a local agency or employee thereof for damages on account of an injury caused by the act of the employee in which it is judicially determined that the act of the employee caused the injury and that such act constituted a crime, actual fraud, actual malice or willful misconduct, the provisions of sections 8545 (relating to official liability generally), 8546 (relating to defense of official immunity), 8548 (relating to indemnity) and 8549 (relating to limitation on damages) shall not apply.

Under 42 Pa.C.S. §8550, "willful misconduct" is construed to mean "willful misconduct aforethought" and is synonymous with "intentional tort." Orange Stones Co. v. City of Reading, 87 A.3d 1014, 1023 (Pa. Cmwlth. 2014) (citations omitted).  It is well-settled that where a plaintiff has averred willful misconduct on the part of local agency employees, section 8542(a)(2) of the Tort Claims Act, 42 Pa.C.S. §8542(a)(2), bars recovery from the local agency because liability may be imposed on a local agency only for negligent acts.

In order to overcome the defense of governmental immunity, a plaintiffs claims must sound in negligence and must fall within one of the eight enumerated exceptions to local agency immunity set forth in §8542(b) of the Tort Claims Act, 42 Pa.C.S. §8542(b). Orange Stones, supra at 1022 (emphasis added) (citations omitted).  In this case, there is no factual pattern that could conceivably suggest that the Officer was engaged in intentional or willful misconduct and the negligence action should be dismissed.  There is also no municipal liability claim cognizable under the Tort Claims Act. If the Pennsylvania legislature intended to abolish police pursuits or restrict them, then the legislature should act to amend the Motor Vehicle Code to so reflect because the Code reflects the opposite in 75 P.S. 3105.[8] The immunity protection to individual

---

[8] The legislation authorizing police pursuits is found in Title 75 which states:

75 Pa. C.S. § 3105.

 "(a) General rule. -- The driver of an emergency vehicle, when responding to an emergency call or when in the pursuit of an actual or suspected violator of the law ... may exercise the privileges set forth in this section, but subject to the conditions stated in this section.
(b) Exercise of special privileges. -- The driver of an emergency vehicle may:

Officers is important as they should not be sued simply because a motorist flees police at either a traffic stop or after commission of a crime.  Allegations that the police vehicle exceeded the speed limits, did not stop for red lights or stop signs or  ignored the direction of traffic could not state a cause of action as such is permitted when operating an emergency vehicle with lights and sirens.

Therefore, both the employee and the municipality are entitled to immunity from liability in this where there was no negligent operation of the vehicle and where the employee is entitled to official immunity which turn on legal issues that are to be determined by the Court.  See Rivera v. Hobson, 2018 U.S. Dist. LEXIS 175418, 2018 WL 4935435 (E. D. Pa. 2018), Kearney, J.

### E.  RECKLESS DISREGARD OF SAFETY – COUNT IV

As a matter of law, under Pennsylvania law, recklessness is not a separate tort, and there is no tort recognized under the Restatement (Second) of Torts § 500 for reckless regard for safety as is alleged in Count IV of the Complaint.  See Archibald v. Kemble, 971 A.2d 513, 518-19 (Pa. Super. Ct. 2009), allocatur denied, 989 A.2d 914 (2010).   Recklessness has never been

---

(1) Park or stand, irrespective of the provisions of this part.
(2) Proceed past a red signal indication or stop sign, but only after slowing down as may be necessary for safe operation…
(3) Exceed the maximum speed limits so long as the driver does not endanger life or property…
(4) Disregard regulations governing direction of movement, overtaking vehicles or turning in specified directions.
(c) Audible and visual signals required.-The privileges granted in this section to an emergency vehicle shall apply only when the vehicle is making use of an audible signal and visual signals meeting the requirements and standards set forth in regulations adopted by the department.
***
(e) Exercise of care.-This section does not relieve the driver of an emergency vehicle from the duty to drive with due regard for the safety of all persons…"

considered as a separate tort.   See <u>Archibald v. Kemble,</u> supra. ("[The trial judge] erred in concluding that [the plaintiff's cause of action [a recklessness claim] was not subsumed within the negligence count pled in their Complaint."); <u>M.U. v. Downingtown High Sch. East,</u> 103 F. Supp. 3d 612, 629 (E.D. Pa. 2015).   Nor does the immunity statute recognize such claims as a separate cause of action.   42 P.S. §8541, et seq.   Under the Restatement, Courts utilize the theory in determining issues of wanton and willful misconduct but not as a separate tort.   See <u>Archibald v. Kemble</u>, supra.

### F.  COUNTS VII AND VIII FOR WRONGFUL DEATH AND SURVIVAL ARE NOT SEPARATE CAUSES OF ACTION

"Wrongful death and survival act claims are not substantive causes of action; rather, they provide a means of recovery for unlawful conduct that results in death." <u>Sullivan v. Warminster Twp.</u>, 2010 WL 2164520, at *6 (E.D. Pa. May 27, 2010); see 42 Pa. Cons. Stat. Ann. § 8301(a) ("An action may be brought . . . to recover damages for the death of an individual caused by the wrongful act or neglect or unlawful violence or negligence of another if no recovery for the same damages claimed in the wrongful death action was obtained by the injured individual during his lifetime and any prior actions for the same injuries are consolidated with the wrongful death claim so as to avoid a duplicate recovery"); 42 Pa. Cons. Stat. Ann. § 8302 ("All causes of action or proceedings, real or personal, shall survive the death of the plaintiff or of the defendant, or the death of one or more joint plaintiffs or defendants.").   Therefore, as the statutory claims are not causes of action, the separate Counts pled by Plaintiffs should be dismissed as the allegations are only pertinent to damages recoverable under the statutes.

### G. COUNT IX CLAIMS OF KRISTYANNA DELLAVECCCHIA FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS AND IN COUNT X FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS ARE BARRED BY THE TORT CLAIMS ACT

Plaintiff Kristyanna Dellavecchia's claims for negligent and intentional infliction of emotional distress are not cognizable under the Tort Claims Act. There are no facts at the conclusion of discovery that could support the negligence or intentional tort claims against Officer Richers and no facts that would invalidate his defense of official immunity.

#### 1. Negligence claim

Ms. Dellavecchia, unlike her sister, was fortunately not a victim of Jones in the motor vehicle accident, and her claims do not fall within any of the narrow exceptions to the Tort Claims Act involving vehicle operation. There is no factual basis for any claim of willful misconduct under §8550 of the Act and negligence claims must be dismissed.

#### 2. Intentional Infliction of Emotional Distress

To state a claim under Pennsylvania law for intentional infliction of emotional distress, a plaintiff must demonstrate "intentional outrageous or extreme conduct by the defendants, which causes severe emotional distress to the plaintiff." Reedy v. Evanson, 615 F.3d 197, 231 (3d Cir. 2010) (quoting Swisher v. Pitz, 868 A.2d 1228, 1230 (Pa. Super. Ct. 2005)). Liability on an intentional infliction of emotional distress claim "has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Id. at 231-232 (quoting Field v. Phila. Elec. Co., 388 Pa. Super. 400, 428 (Pa. Super. Ct. 1989)). In this case, there is no evidence that could conceivably met the burden of proof necessary to state a cause of action against Officer Richers as plaintiff's evidence is only that the Officer was involved in a police pursuit that ended with the police some distance away when the fleeing

26

motorist tragically struck the vehicle in which plaintiff's sister was a passenger resulting in her unfortunate death. Consequently this claim must be dismissed.

## IV. <u>CONCLUSION</u>

  For all the foregoing reasons, Defendants Borough of Collingdale and Colin Richers request that this Court enter summary judgment in their favor and dismiss the case with prejudice.

       Respectfully submitted,
       **HOLSTEN ASSOCIATES, P.C.**

       */s/ Suzanne McDonough*

**Date:** __**10-30-23**_____    _____

       **SUZANNE MCDONOUGH, ESQUIRE**
       **Attorney for Defendants**

**<u>CERTIFICATE OF SERVICE</u>**

I, Suzanne McDonough, Esquire, counsel for Defendants, Borough of Collingdale and

Colin Richers, state that a true and correct copy of the within **Motion for Summary Judgment**

**with Memorandum of Law in Support thereof with Exhibits and Statement of Undisputed**

**Facts was** served upon the following individual electronically this 30th day of October, 2023.

> **ADAM GOMEZ, ESQ.**
> **STEVEN A. MEDINA, ESQ.**
> IRENE LAX, ESQ.
> **GRANT & EISENHOFER PA**
> 123 S. JUSTISON STREET
> 6TH FLOOR
> WILMINGTON, DE 19801
>
> **CYNTHIA B. MORGAN**
> **RUBIN FORTUNATO & HARBISON PC**
> 10 SOUTH LEOPARD ROAD
> PAOLI, PA 19301
>
> **ELIZABETH A. BAILEY**
> **Saltz, Mongeluzzi & Bendesky**
> One Liberty Place, 52 Floor
> 1650 Market Street
> Philadelphia, PA 19103
>
> Attorney for Plaintiffs
>
> Robert DiDomenicis, Esq.
> Holsten Associates, P.C.
> 115 N. Jackson Street
> Media, PA 19063
> Attorney for Darby Borough defendants

Respectfully submitted,
**HOLSTEN & ASSOCIATES**

*/s/ Suzanne McDonough*
_____

**Suzanne McDonough, ESQUIRE**
**Attorney ID No. 29394**
**115 N. Jackson Street**
**Media, PA  19063**
**(610) 566-7183**
**Attorney for above-named moving Defendants**
**Borough of Collingdale and Officer Colin Richers**